EXHIBIT 1

CONFORMED ORIGINAL

THOMPSON HINE LLP

PARTNERSHIP AGREEMENT

November 15, 2017

CONFORMED ORIGINAL

## TABLE OF CONTENTS

1. Name ...................................................................................................................................... 1

2. Purpose ................................................................................................................................. 1

3. Limited Liability Partnership ............................................................................................... 1

4. Partners ................................................................................................................................ 1
   4.1 General Partners ............................................................................................................ 1
      (a) Admission ............................................................................................................. 1
      (b) Capital and Net Income Percentages ................................................................... 1
      (c) Roster .................................................................................................................... 1
   4.2 Income Partners ............................................................................................................ 1
      (a) Admission ............................................................................................................. 1
      (b) Letter Agreement ................................................................................................. 2
      (c) Roster .................................................................................................................... 2
   4.3 Mandatory Participation in Qualified Plan ................................................................. 2

5. Financial Matters ................................................................................................................. 2
   5.1 Compensation for Personal Services ............................................................................ 2
   5.2 Net Income and Loss .................................................................................................... 2
      (a) Participations of Income Partners ....................................................................... 2
      (b) Participation of General Partners in Net Income for General Partners ................ 2
      (c) Losses ................................................................................................................... 2
   5.3 Drawings ...................................................................................................................... 3
      (a) Income Partners ................................................................................................... 3
      (b) General Partners .................................................................................................. 3
   5.4 Annual Readjustment of Percentage Interests ............................................................ 3
   5.5 Firm Capital .................................................................................................................. 3
   5.6 Fiscal Year .................................................................................................................... 3
   5.7 Amortization and Expense of Improvements .............................................................. 4
   5.8 Expenses ....................................................................................................................... 4
   5.9 Monthly Statements ..................................................................................................... 4

6. Participation of General Partners in Management ............................................................... 4
   6.1 Specific Questions ........................................................................................................ 4
   6.2 Voting by General Partners .......................................................................................... 4
   6.3 Special Rule for Voting by Percentage Interest Early in a Year .................................. 4
   6.4 Regular Partnership Meetings ...................................................................................... 5
   6.5 Special Partnership Meetings ....................................................................................... 5

7. Executive Committee ........................................................................................................... 5
   7.1 Number of Members .................................................................................................... 5
   7.2 Duties ........................................................................................................................... 5
   7.3 Normal Term of Office ................................................................................................. 5
   7.4 Nomination and Election .............................................................................................. 6
      (a) Nomination .......................................................................................................... 6
      (b) Election ................................................................................................................ 6

7.5  Mandatory Limitations on Service ................................................................. 6
   (a)  Age Limitation ............................................................................................ 6
   (b)  Three Consecutive Terms .......................................................................... 6
   (c)  If No Other Change in Four Years ........................................................... 6
7.6  Removal and Resignation ................................................................................. 6
7.7  Filling Vacancies ............................................................................................... 6

8.  Managing Partner .................................................................................................... 7
8.1  Duties and Authority ........................................................................................ 7
   (a)  Firm Leadership Positions ......................................................................... 7
   (b)  Firm Administrative Personnel and Personal Service Contracts with Former
       Partners ....................................................................................................... 7
8.2  Normal Term of Office ...................................................................................... 7
8.3  Selection ............................................................................................................. 7
   (a)  Nomination ................................................................................................. 7
   (b)  Election ....................................................................................................... 7
8.4  Vacancy .............................................................................................................. 7
8.5  Interim Managing Partner ................................................................................ 8
8.6  Age Limitation ................................................................................................... 8
8.7  Removal and Resignation ................................................................................. 8
8.8  Policy or Contract ............................................................................................. 8

9.  Death of a General Partner ..................................................................................... 8
9.1  General ............................................................................................................... 8
9.2  Successor in Interest ......................................................................................... 9

10.  Retirement of a General Partner ........................................................................... 9
10.1  Date of Retirement ......................................................................................... 9
10.2  Elections Regarding Date of Retirement ...................................................... 9
   (a)  Retirement Election, Generally ................................................................. 9
   (b)  Normal Retirement Election ...................................................................... 9
   (c)  Election to Continue as a General Partner with Consent of the Executive
       Committee ................................................................................................... 9
10.3  Transition Plan for Retiring General Partner .............................................. 10
10.4  Office Services and Facilities for Retired Partners ...................................... 10

11.  Retirement Benefits ................................................................................................ 10
11.1  General ............................................................................................................ 10
   (a)  Vested Partners .......................................................................................... 10
11.2  The 1986 Plan ................................................................................................. 11
   (a)  Participation ............................................................................................... 11
   (b)  Benefits Under One Plan Only .................................................................. 11
   (c)  Normal Retirement Amounts ..................................................................... 11
   (d)  Early Retirement Benefit Amounts ............................................................ 12
   (e)  Payment of Benefits ................................................................................... 12
   (f)  Optional Methods of Payment ................................................................... 12
      (i)  Joint and Survivor Annuity ................................................................. 12
      (ii)  Lifetime Annuity with Ten Year Only Survivor Feature ................... 12
      (iii)  Joint and Survivor Annuity With Ten Year Step-Down Feature ..... 12
   (g)  Accrual of Benefits .................................................................................... 13
   (h)  Effect of Disability on Years of Service .................................................... 13

(i) Pre-Retirement Election by Extending Schedule A Partner ........................ 13
11.3 The 1993 Plan ............................................................................................. 14
  (a) Eligibility ................................................................................................. 14
  (b) Election and Amount of Benefit ............................................................ 14
  (c) Accrual of Benefit .................................................................................. 15
  (d) Prior Service Credit ............................................................................... 15
  (e) Time of Payment .................................................................................... 15
  (f) 1993 Participants Who Began Receiving Benefits Before 2018 ............. 16
  (g) Effect of Disability on Years of Service ................................................. 17
11.4 Limitations on Benefits ............................................................................... 17
  (a) Limitation on Aggregate Benefit Payments ........................................... 17
    (i) Aggregate Payments with respect to Vested Partners, 1986 Participants, and 1993
        Participants ....................................................................................... 17
    (ii) Payments with respect to 1986 Participants and 1993 Participants ..... 17
    (iii) Application of Limitations ................................................................ 17
  (b) Noncompetition ...................................................................................... 18
  (c) Additional Limitations on Retirement Benefits ...................................... 18

12. Special Provision regarding Retirement Benefits for Grandfathered Income Partners ..... 18

13. Withdrawal, Change in Status, or Termination of a Partner .............................. 19
13.1 Withdrawal of a Partner. ............................................................................. 19
13.2 Change in Status of General Partner to Income Partner ............................ 19
  (a) Upon Individual Agreement with the Executive Committee .................. 19
  (b) Upon Recommendation of the Executive Committee and Majority Vote of
      Remaining General Partners ................................................................. 19
13.3 Termination as to any Partner Upon Vote of Three-Fourths of Remaining General Partners ..... 19
13.4 Termination of General Partner Upon Recommendation of Executive Committee and Majority
     Vote of Remaining General Partners ............................................................ 19
13.5 Termination as to an Income Partner by Executive Committee ................. 19
  (a) Letter Agreement to Control. ................................................................. 20
  (b) General Partner Vote to Terminate Grandfathered Income Partner ...... 20
13.6 Payments Upon Change in Status from General Partner to Income Partner ......... 20
13.7 Payments Upon Withdrawal or Termination of a Partner .......................... 20
  (a) General Partner ..................................................................................... 20
  (b) Income Partner ...................................................................................... 21

14. Indemnification ................................................................................................. 22
14.1 Generally .................................................................................................... 22
14.2 Administrative Partners .............................................................................. 22
14.3 Scope and Procedures ................................................................................ 22
14.4 Condition to Indemnification Obligation ................................................... 22
14.5 Exception to Indemnification Obligation ................................................... 23
14.6 Firm Employees ......................................................................................... 23

15. Obligations with respect to Former Partners and with respect to Indemnification to be Satisfied
    Solely from Firm Assets ................................................................................... 23

16. Modification and Termination .......................................................................... 23
16.1 Continuation of Partnership ....................................................................... 23
16.2 Modification ............................................................................................... 23

*16.3  Note on Restatements*..................................................................................................23
*16.4  Limitation*..............................................................................................................24
*16.5  Termination*...........................................................................................................24

*17.  Arbitration*...............................................................................................................24

*18.  Successors*...............................................................................................................24

*19.  Waiver of Right to Contribution*.............................................................................24

*20.  Ohio Law Applicable*..............................................................................................24

*21.  Execution*.................................................................................................................24

*22.  Definitions*...............................................................................................................25
*22.1  4.25% Limit*...........................................................................................................25
*22.2  10% Limit*..............................................................................................................25
*22.3  1986 Participant*....................................................................................................25
*22.4  1986 Plan*..............................................................................................................25
*22.5  1993 Participant*....................................................................................................25
*22.6  1993 Plan*..............................................................................................................25
*22.7  Actual Retirement Date*.........................................................................................25
*22.8  Administrative Partner*..........................................................................................25
*22.9  Age 65 Retirement Date*........................................................................................25
*22.10  Agreement*............................................................................................................25
*22.11  Assigned Offset Value*.........................................................................................25
*22.12  Decedent*..............................................................................................................25
*22.13  Early Retirement Benefit Period*.........................................................................25
*22.14  Expense Guidelines*.............................................................................................25
*22.15  Final Average Share*............................................................................................25
*22.16  Firm*.....................................................................................................................26
*22.17  Firm Capital*........................................................................................................26
*22.18  First Stage Retirement Benefit*............................................................................26
*22.19  Former Managing Partner Policy*........................................................................26
*22.20  Grandfathered Income Partner*............................................................................26
*22.21  Letter Agreement*.................................................................................................26
*22.22  Net Income*..........................................................................................................26
*22.23  Net Income for General Partners*.........................................................................26
*22.24  Normal Retirement Date*......................................................................................26
*22.25  Participation*........................................................................................................26
*22.26  Partner*.................................................................................................................26
*22.27  Pro Rata Target Amount*......................................................................................26
*22.28  Qualified Plan*.....................................................................................................26
*22.29  Regular Members*.................................................................................................26
*22.30  Restatement Date*.................................................................................................26
*22.31  Retirement Plan Distributions*.............................................................................26
*22.32  Retirement Plan Net Income*...............................................................................27
*22.33  Schedule A Partners*............................................................................................27
*22.34  Second Stage Retirement Benefit*........................................................................27
*22.35  Separation Date*...................................................................................................27
*22.36  Shortfall Year*......................................................................................................27

22.37  *Standard Retirement Benefit Period* ....................................................................................... 27
22.38  *Successor in Interest* .............................................................................................................. 27
22.39  *Surplus Year* ........................................................................................................................... 27
22.40  *Vested Partners* ...................................................................................................................... 27

THOMPSON HINE LLP
PARTNERSHIP AGREEMENT

This Partnership Agreement is entered into at Cleveland, Ohio, as of the 15th day of November, 2017 (the "Restatement Date"), by and among the individuals whose names are set forth at the end of this Agreement.

The undersigned, all of whom are and have been partners of Thompson Hine LLP, desiring to amend and restate the Firm's partnership agreement in its entirety, agree to continue to engage in the practice of law as a registered limited liability partnership under the following terms and conditions (certain capitalized terms are defined at Section 22, the last numbered section of this Agreement):

**1. Name.** The name of the Firm is **Thompson Hine LLP**.

**2. Purpose.** The purpose of the Firm is to engage in the general practice of law and to conduct all types of business incident thereto.

**3. Limited Liability Partnership.** The Firm will continue to operate as a limited liability partnership registered under Ohio law. Each member of the Executive Committee is hereby authorized to execute and cause to be filed from time to time on behalf of the Firm such documents as may be appropriate for filing under Chapter 1775 of the Ohio Revised Code in connection with the continuing status of the Firm as a registered limited liability partnership.

**4. Partners.** The members of the Firm will consist of General Partners and Income Partners (collectively "Partners" and individually a "Partner").

**4.1 General Partners**.

(a) **Admission.** An individual may become a General Partner only as of January 1 of any year and only by the affirmative vote of three-fourths in interest of all General Partners.

(b) **Capital and Net Income Percentages.** General Partners will contribute capital to the Firm and participate in Net Income for General Partners in accordance with their respective percentage interests as determined pursuant to this Agreement.

(c) **Roster.** All of the General Partners of the Firm as of the Restatement Date are listed on the attached Exhibit A. The Executive Committee will cause appropriate administrative personnel of the Firm to maintain records (including a periodically updated Exhibit A to this Agreement) reflecting additions to and deletions from the class of General Partners as those additions and deletions occur from time to time after the Restatement Date.

**4.2 Income Partners**.

(a) **Admission.** An individual may become an Income Partner as of any prospective date by admission to the Firm upon the affirmative vote of three-fourths in interest of all General Partners. In addition, an individual who has been a General Partner may cease to be such and become instead an Income Partner pursuant to an agreement between the individual and the Executive Committee as provided in Section 13.2(a) or pursuant to the requisite vote of all other General Partners as provided in Section 13.2(b).

1                                                     As of November 15, 2017

(b) **Letter Agreement.**  The relationship between each Income Partner and the Firm will be governed by this Agreement and the written agreement between the Income Partner and the Firm as in effect from time to time (the Income Partner's "Letter Agreement").  The original Letter Agreement of each Income Partner to be admitted to the Firm by vote of the General Partners, other than any Income Partner admitted while employed by the Firm, will be circulated among the General Partners in advance of that vote.  Any Letter Agreement may be amended from time to time in any manner not inconsistent with the remainder of this Agreement as the Income Partner and the Executive Committee may agree.

(c) **Roster.**  All of the Income Partners of the Firm as of the Restatement Date are listed on the attached Exhibit B.  The Executive Committee will cause appropriate administrative personnel of the Firm to maintain records (including a periodically updated Exhibit B to this Agreement) reflecting additions to and deletions from the class of Income Partners as those additions and deletions occur from time to time after the Restatement Date.

**4.3  Mandatory Participation in Qualified Plan.**  Each General Partner and each Income Partner who is a citizen of the United States and who has satisfied the requirements for initial participation in the Thompson Hine LLP Retirement Plan (as in effect from time to time or any successor thereto, the "Qualified Plan") must, as a condition of his or her partnership status, participate in that portion of the Qualified Plan that provides for the contribution and allocation of Employer Contributions (as defined in the Qualified Plan).  Partners who are not citizens of the United States will participate (or not) in the Thompson Hine LLP Retirement Plan as determined by the Executive Committee.

## 5. Financial Matters.

**5.1  Compensation for Personal Services**.  Each Partner must disclose to the Firm all compensation received, directly or indirectly, by the Partner for personal services rendered while the Partner is a Partner of the Firm.  Except as may otherwise be agreed between any Partner and the Executive Committee in a particular case, all compensation so received by any Partner will constitute property of the Firm and must be turned over to the Firm by the Partner.

**5.2  Net Income and Loss.**

(a) **Participations of Income Partners.**  The participation of each Income Partner in Net Income for any year (each Income Partner's "Participation" for that year) will be the amount specified in the Income Partner's Letter Agreement as in effect from time to time plus such additional amount, if any, that the Executive Committee may determine to allocate from time to time to one or more particular Income Partners based upon the interests of the Firm as a whole, except that, if the Net Income remaining available for distribution to Income Partners at any point in time during a year is less than the aggregate amount then distributable to all Income Partners against their respective Participations (recognizing that currently available Net Income is distributable to Income Partners in preference to Retirement Plan Distributions and Net Income for General Partners), the Executive Committee may reduce the respective Participations of the Income Partners for that year proportionately.

(b) **Participation of General Partners in Net Income for General Partners.**  The participation of each General Partner in Net Income for any year will be his or her percentage interest in Net Income for General Partners for that year, adjusted pro rata as may be appropriate to take into account departures of individual General Partners during the course of the year.

(c) **Losses**.  The General Partners will share in the losses of the Firm in proportion to their percentage interests, except that no General Partner will be liable for any loss or liability with respect

to which (and to the extent to which) he or she is not liable by virtue of Chapter 1775 of the Ohio Revised Code and the status of the Firm as a registered limited liability partnership.

**5.3  Drawings**.

(a) **Income Partners.**  Except as may be otherwise provided in any Income Partner's Letter Agreement, the Participations of Income Partners will be paid periodically throughout the course of each year in accordance with a plan of distribution of Participations to be adopted and amended from time to time by the Executive Committee.

(b) **General Partners.**  Distributions against the General Partners' respective percentage interests in Net Income for General Partners will be made periodically throughout the course of each year to all General Partners in accordance with a plan of drawings to be adopted and amended from time to time by the Executive Committee.  Any portion of Net Income for General Partners not distributed during the course of the year will be distributed to the General Partners as soon as practicable after the close of each year, except that the Firm may retain such portion of Net Income for General Partners as the Executive Committee may from time to time determine is appropriate (not greater than 5% of the anticipated amount of Net Income for General Partners for the year) for such period of time as the Executive Committee may specify (but not beyond April 15 of the immediately succeeding year).

**5.4  Annual Readjustment of Percentage Interests.**  Each General Partner will have a single percentage interest each year in Net Income for General Partners and in the Firm's Capital.  Effective on January 1 of each year, the Executive Committee will determine and recommend to the General Partners the percentage interest of each General Partner in Net Income for General Partners and in the Firm's Capital for that year.  Before presenting the Executive Committee's final recommendations, members of the Executive Committee will discuss the proposed percentage interests with each General Partner who specifically requests such a meeting.  The final recommendations of the Executive Committee will be presented in writing to all General Partners and will be automatically approved unless a majority of the General Partners indicate dissent from those recommendations within ten days after submission.  If a majority dissents, new recommendations will be similarly presented until majority approval is obtained.

**5.5  Firm Capital**.  The capital committed by the General Partners to the Firm ("Firm Capital") will be such amount as may be established from time to time by the General Partners.  The interest of each General Partner in Firm Capital as of any date will be equal to the net amount contributed by that General Partner to Firm Capital through that date, adjusted to take into account any additions to Firm Capital created by conversion of any Firm assets to Firm Capital that may be effected by the Executive Committee and any losses of the Firm that are satisfied out of Firm Capital.  Each new General Partner will contribute his or her portion of Firm Capital to the Firm by April 1 of the year in which he or she becomes a General Partner.  Each continuing General Partner whose percentage interest is changed in an annual readjustment will either make an additional contribution to or receive a distribution from Firm Capital either (a) by such date in April of the year in which the readjustment is effective as the Executive Committee may select or (b) by such other date or dates as may be authorized by the General Partners in connection with the establishment from time to time of the amount of Firm Capital.  No interest will be paid on Firm Capital.  For the avoidance of doubt, no part of the interest that the Firm maintains in Attorneys' Liability Assurance Society will constitute part of Firm Capital unless and until the Executive Committee determines to convert all or part of that interest into Firm Capital.

**5.6  Fiscal Year.**  The fiscal year of the Firm will coincide with the calendar year and, unless the context clearly requires otherwise (such as for example, in the case of the four year terms of members of the Executive Committee specified in Section 7.3 or the 10 year term commencing on the death of a retired Partner specified in Section 11.2(f)(ii)), each reference to a "year" in this Agreement is to be read accordingly.

As of November 15, 2017

**5.7  Amortization and Expense of Improvements.**  In the determination of Net Income, all purchases, including furniture, fixtures, and equipment, and all leasehold improvements will be capitalized or deducted as expense as the Executive Committee may determine, and there will be deducted as amortization of each capitalized improvement in each year such amount of amortization as the Executive Committee may determine, all to the end that the Firm's internal reporting and its Federal income tax returns will, to the extent practicable, be identical.  For the avoidance of doubt, the General Partners acknowledge that their respective percentage interests in Firm Capital are not necessarily the same as their respective capital accounts for Federal income tax purposes.

**5.8  Expenses**.  Expenses incurred by Partners in the operation of the Firm will be paid by the Firm pursuant to guidelines and policies ("Expense Guidelines") published by the Executive Committee from time to time.  Reimbursement for expenses will be made to any Partner incurring the expense, provided that the expense comes within the applicable Expense Guideline (which may include a requirement for advance approval of the expense by the Executive Committee or its designee) and the Partner properly accounts for the expense.  Partners are also expected to incur certain expenses in furtherance of the Firm's business, such as entertainment at home or elsewhere, automobile for use when needed on Firm business, availability of home facilities for meetings with clients or others, and membership in clubs for entertainment of clients, conference meetings, and contacts with new and prospective clients, that may not be fully reimbursed by the Firm under the Expense Guidelines.  To the extent any business expense incurred in furtherance of the Firm's business is not reimbursed by the Firm under the Expense Guidelines, that expense must be borne by the Partner who incurs it.

**5.9  Monthly Statements.**  Monthly statements of the financial condition and operation of the Firm will be distributed to all Partners.

**6.  Participation of General Partners in Management.**  All matters incident to the operation of the Firm will be under the control and direction of the General Partners.

**6.1  Specific Questions.**  Any General Partner may at any time request that the Executive Committee consider and act upon any specific question.

**6.2  Voting by General Partners.**  Voting on any matters under this Agreement will be limited to General Partners.  Except where this Agreement specifically requires a greater proportion, any action on which the General Partners are required to vote may be taken at a duly called partnership meeting by the vote of a majority of those General Partners who are entitled to vote and are present, either in person (including by telephone or other electronic means) or by proxy, at the meeting.  Income Partners will not be entitled to vote on any matters under this Agreement.

**6.3  Special Rule for Voting by Percentage Interest Early in a Year.**  If any matter is duly brought before the General Partners for a vote by interest at a time when the respective percentage interests of General Partners for the then current year have not yet been finally determined (because the annual readjustment process specified in Section 5.4 has not yet then been completed), the percentage interests of each General Partner will be determined, solely for purposes of that vote, as follows:

(a)  Each continuing General Partner will be assigned a tentative percentage interest equal to his or her percentage interest for the immediately preceding year.

(b)  Each new General Partner will be assigned a tentative percentage interest equal to the lowest percentage interest assigned to any continuing General Partner.

(c)  The percentage interests for the immediately preceding year of individuals who were General Partners at any time during that year but are not General Partners at the time of the vote will be disregarded.

(d)  All of the tentative percentage interests specified in Sections 6.3(a) and 6.3(b) will be added together and each General Partner will have that percentage interest, for purposes of the vote only, that bears the same relationship to 100% as his or her tentative percentage interest so specified bears to the sum of all the tentative percentage interests so specified.

**6.4  Regular Partnership Meetings.**  The Executive Committee will establish from time to time the schedule of regular partnership meetings, including at least an annual meeting of all Partners and such other meetings of Partners as the Executive Committee may deem appropriate from time to time.  Notice of each regular partnership meeting will be given to all Partners at least ten days in advance of the meeting.  The Managing Partner (or, in his or her absence, a Regular Member of the Executive Committee designated by the Managing Partner or the Executive Committee) will preside at each partnership meeting.

**6.5  Special Partnership Meetings.**  Special meetings of the Partners will be called by the Executive Committee within 15 days after a request for a special meeting by the Managing Partner, by Regular Members comprising 50% or more of the total number of Regular Members of the Executive Committee, or by General Partners comprising 25% or more of the total number of General Partners.  Notice of each special partnership meeting will be given to all Partners at least three days in advance of the meeting.

**7.  Executive Committee.**

**7.1  Number of Members.**  There will be an Executive Committee consisting of such number of General Partners, not less than five nor more than nine, as may be fixed by the General Partners from time to time.  The Managing Partner will always be one of the members of the Executive Committee.  The members of the Executive Committee other than the Managing Partner are referred to as "Regular Members."

**7.2  Duties**.  The Executive Committee is a policy and supervisory committee, as distinguished from an operating committee, responsible for the general functioning and overall management of the Firm.  The Executive Committee will make recommendations to the Partners on all matters requiring partnership approval, act upon and establish Firm policies not requiring partnership approval, advise and supervise the Managing Partner, and provide for the ongoing long-range planning for the Firm.  The Executive Committee will recommend the percentage participation of General Partners in Net Income for General Partners and Firm Capital as provided in Section 5.4.  It will also consult with the Managing Partner regarding the establishment of such committees as may be deemed by the Managing Partner to be necessary or convenient for the execution of specific functions, duties, and operations within the Firm.  The actions of the Executive Committee will be subject to the powers of the General Partners set forth in this Agreement.

**7.3  Normal Term of Office.**  The normal term of office for Regular Members of the Executive Committee will be four years, beginning and ending on the date of a regular biennial election of Regular Members to be held in April of each even numbered year.  The terms of Regular Members will be staggered so that the terms of approximately one half of the Regular Members of the Executive Committee expire at the time of each regular biennial election.  The Executive Committee will have the authority to shorten (but not lengthen) the term for which a Regular Member may be elected at any election (regular or special) in order to accomplish that goal.

As of November 15, 2017

**7.4  Nomination and Election.**

(a) **Nomination.**  Nominees for election as Regular Members of the Executive Committee (whether at a biennial election, to fill a vacancy, or otherwise) will be recommended to the partnership by the Executive Committee.  The Executive Committee will give advance notice (approximately 45 days) of the date on which an election of a Regular Member is to take place so that each Partner will have the opportunity to express to the members of the Executive Committee his or her recommendations for nominees.  Notice of the Executive Committee's nominees will be given to all Partners at least 15 days before the scheduled date of the election.  Any General Partner may make additional nominations before any election by giving written notice of his or her nominee or nominees to the Secretary of the Firm at least nine days before the scheduled date of the election.  The Secretary of the Firm will distribute written notice of all additional nominees, together with the name of each General Partner making any additional nomination, to all Partners at least seven days before the scheduled date of the election.

(b) **Election.**  Election of a Regular Member to the Executive Committee (whether at a biennial election, to fill a vacancy, or otherwise) will require a majority vote (both per capita and by interest) of the General Partners.  The vote of the General Partners in electing a Regular Member of the Executive Committee will be by secret ballot.

**7.5  Mandatory Limitations on Service.**

(a) **Age Limitation.**  A General Partner, upon attaining the age of 68 years, will no longer be eligible to serve or to continue to serve on the Executive Committee.

(b) **Three Consecutive Terms.**  After serving three consecutive terms as a Regular Member an individual must cease to serve as a Regular Member and will not be eligible to again be a Regular Member until the next election (whether a biennial election, to fill a vacancy, or otherwise) occurring after the expiration of his or her term.  Any partial term resulting from the filling of a vacancy or otherwise will count as a term if the partial term is greater than two years.

(c) **If No Other Change in Four Years.**  If, as of the date set for a biennial election of Regular Members, there will have been no change in the composition of the Regular Members of the Executive Committee since the second preceding biennial election (conducted approximately four years earlier), at least one of the nominees of the Executive Committee for election as a Regular Member must be a General Partner who is not then an incumbent member of the Executive Committee.

**7.6  Removal and Resignation.**  A Regular Member will in all events cease to be a member of the Executive Committee effective upon the first date on which he or she ceases to be a General Partner, is removed from the Committee (with or without cause) by a vote of at least a majority of all of the members of the Executive Committee or by a vote of a majority (both per capita and by interest) of the General Partners, or resigns.  Any vote of the General Partners on removal of a Regular Member of the Executive Committee will be by secret ballot.

**7.7  Filling Vacancies.**  Any vacancy that may occur from time to time in the class of Regular Members of the Executive Committee will be filled within 120 days following the occurrence of the vacancy for the unexpired term; except that the requirement to fill the vacancy may be waived by the Executive Committee if (a) the unexpired term, at the time the vacancy occurs, is less than six months, or (b) there are at least six remaining Regular Members then in office.

As of November 15, 2017

**8. Managing Partner.**

**8.1  Duties and Authority.**  The Managing Partner will serve as the Chief Executive Officer of the Firm, chairman of the Executive Committee, and (except as provided in Section 6.5 in the case of his or her absence from the meeting) as chairman of all partnership meetings.  His or her actions will be subject to the powers of the Executive Committee and the General Partners as set forth in this Agreement.  The Managing Partner will be responsible for implementing policy decisions approved by the Executive Committee, overseeing the administrative functions and day-to-day affairs and operations of the Firm, and making recommendations to the Executive Committee on policy issues (other than his or her own removal).  The Managing Partner will be expected to devote to Firm business whatever time is necessary to manage properly the affairs of the Firm.

(a)  **Firm Leadership Positions.**  The Managing Partner, with the approval of the Executive Committee, will appoint Partners to such leadership positions within the Firm as may from time to time be deemed by the Managing Partner and the Executive Committee to be most conducive to the effective management of the Firm, including, by way of examples, Partners in Charge of specific offices, Practice Group Leaders, and Firm Secretary.

(b)  **Firm Administrative Personnel and Personal Service Contracts with Former Partners.**  The Managing Partner will have the power:  (i) to hire professional administrative personnel to assist in the management of the Firm and to fix their respective duties and compensation from time to time; (ii) to employ professional assistance, such as accountants and architects, and such other persons as are deemed to be necessary or desirable in the operation of the Firm; and (iii) to enter into such other contracts for personal services, including contracts with retired Partners of the Firm in an "Of Counsel" or other capacity, as are deemed to be necessary or desirable in the operation of the Firm.

**8.2  Normal Term of Office.**  The Managing Partner will be elected for a term of office of four years with no limitation on being re-elected, subject to the age limitation specified in Section 8.6 and to removal or resignation as specified in Section 8.7.

**8.3  Selection.**

(a)  **Nomination.**  The Executive Committee will give advance notice (approximately 45 days) of the date on which an election of a Managing Partner is to take place so that each Partner will have the opportunity to express to the members of the Executive Committee his or her recommendations for the nominee.  Notice of the Executive Committee's nominee for Managing Partner will be given to all Partners at least 30 days before the scheduled date of the election.  Any General Partner may make an additional nomination for Managing Partner by giving written notice of his or her nominee to the Secretary of the Firm at least nine days before the scheduled date of the election.  The Secretary of the Firm will distribute written notice of all additional nominees, together with the name of each General Partner making any additional nomination, to all Partners at least seven days before the scheduled date of the election.

(b)  **Election.**  Election of the Managing Partner will require a majority vote (both per capita and by interest) of the General Partners.  The vote of the General Partners in electing the Managing Partner will be by secret ballot.

**8.4  Vacancy.**  If the office of Managing Partner becomes vacant for any reason, the vacancy will be filled as soon as practicable and in any event within 90 days.

As of November 15, 2017

**8.5  Interim Managing Partner.**  Upon the death or incapacity of a Managing Partner the Executive Committee will designate a General Partner to assume the duties and responsibilities of the Managing Partner on an interim basis with the title of Interim Managing Partner.

(a)  An Interim Managing Partner who assumes that status upon the death of a Managing Partner will continue to have the duties and responsibilities of Managing Partner until a successor to the deceased Managing Partner has been elected pursuant to Section 8.3.

(b)  An Interim Managing Partner who assumes that status upon the incapacity of an incumbent Managing Partner will continue to have the duties and responsibilities of Managing Partner until the incumbent Managing Partner is no longer incapacitated or until a successor to the incapacitated Managing Partner has been elected pursuant to Section 8.3.

In connection with any election of a successor to a deceased or incapacitated Managing Partner, the Executive Committee may choose to name the Interim Managing Partner or any other General Partner as the nominee of the Executive Committee as contemplated in Section 8.3(a).  Determinations as to whether a Managing Partner has become incapacitated, whether an incapacitated Managing Partner should be removed, and whether a Managing Partner remains incapacitated will be made by the Regular Members of the Executive Committee.

**8.6  Age Limitation.**  A General Partner, upon attaining the age of 68 years, will no longer be eligible to serve or to continue to serve as the Managing Partner.

**8.7  Removal and Resignation.**  The Managing Partner may be removed (with or without cause) at any time by the affirmative vote of a majority of all of the Regular Members of the Executive Committee or by a majority vote (both per capita and by interest) of the General Partners.  Any vote of the General Partners on removal of the Managing Partner will be by secret ballot and may be conducted with or without a meeting, as the Executive Committee may determine in each instance.  The Managing Partner may resign at any time as Managing Partner and will, in all events, cease to be the Managing Partner if he or she is no longer a General Partner.

**8.8  Policy or Contract.**  The policy regarding expectations that the Firm will have of former Managing Partners and the determination of their percentage interests in Net Profit for General Partners following service as Managing Partner that was adopted by the Executive Committee on October 21, 2005 (the "Former Managing Partner Policy") will remain in effect according to its terms unless and until modified by the Executive Committee.  If the Executive Committee determines that it is in the best interests of the Firm to enter into an employment, severance, or other contract with any Managing Partner, that contract and any amendment thereof will be subject to the approval of a majority in interest of the General Partners.

**9.  Death of a General Partner.**

**9.1  General.**  In the event of the death of a General Partner (a "Decedent"), the Firm will pay to the Decedent's Successor in Interest:

(a)  The Decedent's share of Firm Capital determined as of the Decedent's date of death.

(b)  As the Decedent's share of Net Income through the Decedent's date of death, the portion of the Net Income for General Partners for the year in which the death occurs (that the Decedent would have received had he or she not died during the year) that the number of months of the year in which the Decedent was alive (including the month in which his or her death occurs) bears to 12.

As of November 15, 2017

Upon payment of the amounts specified in Sections 9.1(a) and 9.1(b), neither the Decedent nor his or her Successor in Interest will have any further claim upon the Partnership with respect to the interest held by the Decedent in the Firm before his or her death, including, without limitation, any interest in billed and unbilled matters.

**9.2  Successor in Interest.**  For purposes of this Agreement, the "Successor in Interest" of a Decedent will be such person or persons, including a trust or the Decedent's estate, as the Decedent has designated by written notice to the Firm before the Decedent's death.  Written notice to the Executive Committee or to the Firm's staff personnel in charge of Human Resources will be deemed to be written notice to the Firm.  In the absence of any such written designation, the Decedent's Successor in Interest (a) for purposes of payment of the Decedent's share of Firm Capital pursuant to Section 9.1(a) will be the Decedent's estate, and (b) for purposes of payment of the Decedent's share of Net Income through the Decedent's date of death pursuant to Section 9.1(b)  will be the Decedent's surviving spouse or, if the Decedent is not survived by a spouse, the Decedent's estate.

**10.  Retirement of a General Partner.**

**10.1  Date of Retirement.**  A General Partner may retire on or after the December 31 coincident with or immediately following his or her 60th birthday.  Unless permitted to continue as a General Partner pursuant to a determination made in accordance with Section 10.2(c), each General Partner who has not earlier retired must retire on his or her Normal Retirement Date.  A General Partner who has not earlier retired must, in all events, retire on the December 31 next following his or her 72nd birthday.  Upon the retirement of a General Partner, he or she will be entitled to his or her interest in Firm Capital, determined as of the date of the retirement.  In addition, if a General Partner's Actual Retirement Date is other than the last day of a calendar year, he or she will be entitled to, in full satisfaction of his or her share of Net Income for General Partners for that part of the year ending on his or her Actual Retirement Date, an amount calculated under Section 13.7(a)(ii), but substituting "Actual Retirement Date" for "Separation Date" each place the latter term appears in that section.

**10.2  Elections Regarding Date of Retirement.**

(a)  **Retirement Election, Generally.**  A General Partner may, upon not less than six months' written notice to the Executive Committee or such lesser written notice as the Executive Committee may approve, elect to retire on any date that is (i) selected by the General Partner and specified in the notice, and (ii) on or after the December 31 coincident with or immediately following his or her 60th birthday.

(b)  **Normal Retirement Election.**  A General Partner intending to retire on his or her Normal Retirement Date must notify the Executive Committee of his or her election to so retire by not later than the July 1 next preceding his or her Normal Retirement Date or by such later date as the Executive Committee may approve.  A General Partner who, by such July 1 or approved later date, if any, has neither so notified the Executive Committee of an election to retire nor notified the Executive Committee (pursuant to Section 10.2(c)) of his or her desire to continue as a General Partner beyond his or her Normal Retirement Date will be deemed to have elected to retire on his or her Normal Retirement Date.

(c)  **Election to Continue as a General Partner with Consent of the Executive Committee.**  A General Partner may continue as a General Partner beyond his or her Normal Retirement Date only as provided in this Section 10.2(c).  A General Partner who desires to continue as a General Partner pursuant to this Section 10.2(c) must, at least six months (or such shorter period as the Executive Committee may approve) before the date on which he or she would be required to retire absent a favorable determination under this Section 10.2(c), notify the Executive Committee of his or her desire

As of November 15, 2017

to continue in the practice of law with the Firm as a General Partner for an additional year and, promptly after giving such notice, must prepare and submit to the Executive Committee a written plan for the General Partner's future activities with the Firm.  Taking into account the activities plan and the best interests of the Firm, the Executive Committee will determine whether the General Partner may continue as a General Partner for an additional year (or such shorter period as the Executive Committee may approve) or must retire and will so advise the General Partner.  If the determination of the Executive Committee is that the General Partner must retire, the General Partner may request review of the determination by the General Partners, and a reversal of the determination will require the affirmative vote of three-fourths of all General Partners.  A General Partner's retirement date may be postponed beyond his or her Normal Retirement Date on a recurring basis pursuant to this Section 10.2(c) (not beyond the December 31 following the General Partner's 72nd birthday), but each postponement will require a separate notice by the General Partner to the Executive Committee and will be subject to a separate determination of the Executive Committee, subject to review by the General Partners, as provided above in this Section 10.2(c)

**10.3  Transition Plan for Retiring General Partner.**  A General Partner who elects to or is required to retire must, not later than six months (or such shorter period as the Executive Committee may approve) before his or her retirement, prepare and submit to the Executive Committee a written transition plan for turning his or her client and Firm responsibilities over to other lawyers in the Firm.  Following approval of the transition plan by the Executive Committee, the retiring General Partner will be expected to spend the necessary amount of time before his or her retirement in carrying out the transition plan and to keep the Executive Committee appropriately advised of his or her activities and progress in doing so.

**10.4  Office Services and Facilities for Retired Partners.**  There will be provided to retired General Partners of the Firm at no cost limited office services, office or desk space on a shared basis with the other retired General Partners, and secretarial assistance on a shared or "pool" basis.  Private office space and more extensive secretarial and other services will be provided to retired General Partners who so desire on a reimbursement of cost basis, to the extent that they can reasonably be provided consistent with satisfaction of the needs of lawyers actively practicing with the Firm for office space and other office facilities.

**11.  Retirement Benefits.**

**11.1  General.**  The Firm maintains two separate unfunded retirement plans for General Partners.  The Firm's original unfunded retirement plan, adopted in 1986 (the "1986 Plan"), was modified in 1993 and, as so modified, is set forth in Section 11.2.  The Firm's second unfunded retirement plan, adopted in 1993 (the "1993 Plan"), is set forth in Section 11.3.  Certain limitations applicable to benefits under either or both of the 1986 Plan and the 1993 Plan are set forth in Section 11.4.

(a)  **Vested Partners.**  As of the date in 1993 on which the 1986 Plan was amended, (A) two General Partners (Taras Modney and David C. Stradley) had already retired under circumstances entitling them to benefits under the 1986 Plan, and (B) ten other General Partners (John H. Gherlein, William D. Ginn, Alan L. Hyde, Robert L. Larson, John F. McClatchey, George C. McConnaughey, Leonard S. Meranus, Thomas O. Murphy, David C. Prugh, and Charles M. Weeks (together with Messrs. Modney and Stradley, the "Vested Partners")) had either (x) attained age 65 or (y) given timely notice to the Executive Committee of their intention to retire as of December 31, 1993.  In connection with the amendment of the 1986 Plan, the Firm sought from each of Messrs. Gherlein, Ginn, Hyde, Larson, McClatchey, McConnaughey, Meranus, Murphy, Prugh, and Weeks (and received from each of them other than Mr. Murphy) written consents regarding modification of the amounts to be paid to each of them under the 1986 Plan.  Benefits under the 1986 Plan with respect to each of Messrs. Modney, Murphy, and Stradley will be paid by the Firm as provided in the 1986 Plan

as in effect before the 1993 amendments thereof.  Benefits under the 1986 Plan with respect to each of the other Vested Partners will be paid by the Firm as provided in the 1986 Plan as in effect before the 1993 amendments thereof and taking into account, with respect to each such Vested Partner, the modifications agreed to by that Vested Partner in his written consent.

**11.2  The 1986 Plan.**

   (a)  **Participation.**  The class of General Partners eligible to receive benefits under the 1986 Plan was closed upon modification of the plan in 1993 and eligibility to participate in the 1986 Plan has, since 1993, been limited to (x) Vested Partners and (y) those other individuals (the "Schedule A Partners") whose names were set forth on the original Schedule A to this Agreement.  The version of Schedule A attached to this Agreement as of the Restatement Date:

      (i)  is effective as of that date;

      (ii)  includes the names of Vested Partners and other retired General Partners as to whom the Firm is currently paying retirement benefits as well as the names of current General Partners who are eligible to elect to receive benefits under the 1986 Plan in the future; and

      (iii)  has been amended by deleting the names of those individuals who were on the original version of Schedule A but as to whom no benefits remain to be paid under the 1986 Plan (whether because the former Vested Partner or Schedule A Partner and his or her spouse, if applicable, have died and therefore no further benefits remain to be paid or because the former Schedule A Partner died before retirement, terminated his or her General Partner status other than by retirement, or elected to receive benefits under the 1993 Plan rather than under the 1986 Plan).

The Executive Committee will cause appropriate administrative personnel of the Firm to maintain an up to date version of Schedule A that, from time to time after the Restatement Date, continues to reflect both the names of retired General Partners as to whom the Firm is currently paying retirement benefits and the names of current General Partners who are eligible to elect to receive benefits under the 1986 Plan in the future and is periodically amended by deleting the names of those individuals who were on the original version of Schedule A but as to whom no further benefits will become payable under the 1986 Plan.

   (b)  **Benefits Under One Plan Only.**  A Schedule A Partner may elect to receive, after retirement, the benefits, if any, to which he or she is entitled under the 1986 Plan or the benefits, if any, to which he or she is entitled under the 1993 Plan but will not be entitled to receive benefits under both such plans.  Each Schedule A Partner must deliver, by not later than his or her Actual Retirement Date, a written notice to the Executive Committee electing to receive benefits under one or the other of the 1986 Plan and the 1993 Plan.  A Schedule A Partner who elects to receive retirement benefits under the 1986 Plan is hereinafter sometimes referred to as a "1986 Participant."

   (c)  **Normal Retirement Amounts.**  Subject to the limitations and other provisions contained in the other subsections of this Section 11.2 and in Section 11.4, a 1986 Participant retiring on or after his or her Age 65 Retirement Date will be entitled to receive from the Firm a retirement benefit, payable from and after his or her Actual Retirement Date and for the remainder of his or her life only (the 1986 Participant's "Standard Retirement Benefit Period").  This retirement benefit will be (i) a First Stage Retirement Benefit during that part, if any, of the 1986 Participant's Standard Retirement Benefit Period that falls within the first seven years immediately following the 1986 Participant's Age 65 Retirement Date and (ii) a Second Stage Retirement Benefit during that part, if any, of the 1986 Participant's Standard Retirement Benefit Period that falls after seven full years have passed following the 1986 Participant's Age 65 Retirement Date.

As of November 15, 2017

(d)  **Early Retirement Benefit Amounts.**  Subject to the limitations and other provisions contained in the other subsections of this Section 11.2 and in Section 11.4, a 1986 Participant retiring before his or her Age 65 Retirement Date will be entitled to receive from the Firm a retirement benefit, payable from and after the 1986 Participant's Actual Retirement Date and for the remainder of his or her life only (the 1986 Participant's "Early Retirement Benefit Period").  This retirement benefit will be (i) a First Stage Retirement Benefit during that part of the 1986 Participant's Early Retirement Benefit Period that falls within the first seven years immediately following the 1986 Participant's Actual Retirement Date and (ii) a Second Stage Retirement Benefit during that part, if any, of the 1986 Participant's Early Retirement Benefit Period that falls after seven full years have passed following the 1986 Participant's Actual Retirement Date.  Any retirement benefit payable under Section 11.2(d)(i) or Section 11.2(d)(ii) will be determined in each instance as if the 1986 Participant's Actual Retirement Date had been his or her Age 65 Retirement Date and reduced by three percent for each of up to three years elapsing between that Actual Retirement Date and his or her Age 65 Retirement Date and by six percent for each additional year in excess of three elapsing between such dates.

(e)  **Payment of Benefits.**  Retirement benefit payments will be made monthly to all 1986 Participants entitled to retirement benefits hereunder.  If retirement payments made on account of any 1986 Participant during a year exceed the retirement benefit to which the 1986 Participant is entitled for that year, the 1986 Participant (or his or her beneficiary under any optional method of payment) must reimburse the Firm in the amount of the excess promptly after the close of the year.

(f)  **Optional Methods of Payment.**  Each 1986 Participant, at any time before his or her Actual Retirement Date, may elect, in lieu of the benefit for his or her life only described in Section 11.2(c) or Section 11.2(d), as the case may be, the payment of an actuarially equivalent retirement benefit in one of the following forms:

(i)  **Joint and Survivor Annuity.**  Under this optional form of benefit, the 1986 Participant may elect to receive an annual benefit for life.  After his or her death an annual benefit will continue to his or her surviving spouse for life.  The annual benefit payable to the surviving spouse will be equal to two-thirds of the annual benefit that would be payable to the 1986 Participant under this optional form if he or she were then living.

(ii)  **Lifetime Annuity with Ten Year Only Survivor Feature.**  Under this optional form of benefit, the 1986 Participant may elect to receive an annual benefit for life.  If he or she dies within the ten-year period immediately following his or her retirement date, annual payments will continue to his or her surviving spouse for the balance of that ten-year period or until the spouse dies, if earlier.  The annual benefit payable to the surviving spouse, if any, will be equal to the annual benefit that would be payable to the 1986 Participant under this optional form if he or she were then living.

(iii)  **Joint and Survivor Annuity With Ten Year Step-Down Feature.**  Under this optional form of benefit, the 1986 Participant may elect to receive an annual benefit for life.  After his or her death an annual benefit will continue to his or her surviving spouse for life.  If the 1986 Participant dies within the ten-year period immediately following his or her retirement date, annual payments will continue to the surviving spouse for the balance of that ten-year period or until the spouse dies, if earlier, equal to the annual benefit that would be payable to the 1986 Participant under this optional form if he or she were then living.  If the 1986 Participant dies after that ten-year period has elapsed, or if the surviving spouse survives to the end of that period, the annual benefit payable to the surviving spouse thereafter will be equal to two-thirds of the annual benefit that would be payable to the 1986 Participant Partner under this optional form if he or she were then living.

As of November 15, 2017

So long as retirement benefits are payable with respect to any 1986 Participant under an optional method of payment (both during the life of the 1986 Participant and thereafter), the amount of those retirement benefits will be based upon a First Stage Retirement Benefit throughout the period, if any, during which the 1986 Participant, if he or she survived and had not elected an optional method of payment, would have been entitled to a First Stage Retirement Benefit, and will be based upon a Second Stage Retirement Benefit throughout the period during which the 1986 Participant, if he or she had survived and had not elected an optional method of payment, would have been entitled to a Second Stage Retirement.  For purposes of this Section 11.2(f), the spouse of a 1986 Participant means his or her spouse on the date the 1986 Participant is entitled to commencement of retirement benefit payments.  Actuarial equivalencies will be determined by the Executive Committee, based upon the advice of an actuary, taking into account the age and sex of the 1986 Participant and his or her spouse.  An election under this Section 11.2(f) may not be changed following commencement of retirement benefit payments.  If a 1986 Participant or his or her surviving spouse survives during only a portion of a year, the annual benefit otherwise payable will be prorated accordingly, regardless of whether an optional form of benefit has been elected.

(g)  **Accrual of Benefits.**  If a 1986 Participant has completed less than 25 years of service with the Firm before his or her retirement, any retirement benefit under the 1986 Plan will be reduced by four percent for each year by which the number of the 1986 Participant's full years of service with the Firm is less than 25.  The date on which each of the Schedule A Partners commenced service with the Firm for purposes of the 1986 Plan (taking into account, where applicable, credit given pursuant to agreements between the Firm and the Schedule A Partner made in connection with the Schedule A Partner's commencement of service with the Firm) is set forth opposite that Schedule A Partner's name on Schedule A.  In the case of a Schedule A Partner who rejoins the Firm following a period of service in some other activity deemed to be beneficial to the Schedule A Partner and the Firm, the Executive Committee may determine at the time the Partner rejoins the Firm that some or all service in connection with such activity will be deemed to constitute service with the Firm for purposes of the 1986 Plan.  Years of service with the Firm will be determined by the Executive Committee based upon Schedule A and the records of the Firm.

(h)  **Effect of Disability on Years of Service.**  A Schedule A Partner who becomes and, at his or her Age 65 Retirement Date, continues to be, disabled, for purposes of the long-term disability insurance program maintained by the Firm, will be deemed to have retired on the Schedule A Partner's Age 65 Retirement Date, but his or her years of service with the Firm will be deemed to have ended on the December 31 coinciding with or immediately following the date on which the Schedule A Partner became disabled.

(i)  **Pre-Retirement Election by Extending Schedule A Partner.**  Any Schedule A Partner who continues as a General Partner beyond his or her Age 65 Retirement Date will be entitled to make, at any time before his or her Actual Retirement Date, a written election (i) to receive benefits under the 1986 Plan (thereby precluding the receipt of any benefits under the 1993 Plan), and (ii) to select an optional method of payment described in Section 11.2(f).  Once made by a General Partner, such an election will be irrevocable unless his or her spouse dies before the General Partner's retirement.  Any such election will become effective upon the General Partner's retirement or upon the General Partner's death on or after his or her Age 65 Retirement Date and before his or her retirement.  Retirement benefit payments with respect to an electing General Partner who dies on or after his or her Age 65 Retirement Date and before his or her retirement will be made in accordance with the option elected as if the deceased General Partner had retired on the December 31 preceding the date of his or her death, except that no retirement benefits will be payable with respect to any period before the deceased General Partner's death.  If a Schedule A Partner dies on or after his or her Age 65 Retirement Date and before his or her retirement without having made the written election referred to

As of November 15, 2017

in this Section 11.2(i), no amounts will be paid with respect to him or her under either the 1986 Plan or the 1993 Plan.

**11.3   The 1993 Plan.**

(a)   **Eligibility.**  Any General Partner who:

(i)  either (A) retired before December 31, 2011 under circumstances entitling him or her to a retirement benefit under the 1993 Plan, or (B) was either a General Partner or an Income Partner as of December 31, 2011; and

(ii)  has attained age 60 or more and ceases to be a General Partner (except by reason of removal for cause or death) after having been a General Partner with the Firm for at least 12 years;

will be eligible for a retirement benefit under the 1993 Plan.  For the avoidance of doubt, an individual who retires after December 31, 2011 will be eligible for benefits under the 1993 Plan in accordance with the terms set forth in the remainder of this Section 11.3 only if that individual was, as of December 31, 2011, either a General Partner or an Income Partner.  The Executive Committee may, in its sole discretion, reduce the attained age requirement for any particular General Partner from age 60 to age 55 upon request of that General Partner.  No General Partner will be eligible for a retirement benefit under the 1993 Plan until after he or she has been a General Partner of the Firm (including time as a general partner of any of the predecessor Firms listed in Section 11.3(d)) for at least 12 years.  A General Partner who is eligible for a retirement benefit under the 1993 Plan (and who, if he or she is a Schedule A Partner, elects to receive retirement benefits under the 1993 Plan) is hereinafter sometimes referred to as a "1993 Participant."

(b)   **Election and Amount of Benefit.**  Each 1993 Participant who has not received any payment under the 1993 Plan before January 1, 2018 will be entitled to elect, by notice given to the Executive Committee not later than December 31 of the year immediately before the calendar year in which he or she is to receive the first monthly payment under the 1993 Plan, whether to receive benefits under the 1993 Plan pursuant to Option 1, or pursuant to Option 2, as each of those terms are defined below. Any such election (a "1993 Plan Payment Election"), once made, will be irrevocable. Any such 1993 Participant who fails to make a timely 1993 Plan Payment Election will be conclusively deemed to have elected to receive payments under the 1993 Plan pursuant to Option 1. Subject to the limitations and other provisions contained in the succeeding subsections of this Section 11.3 and in Section 11.4:

(i) A 1993 Participant who elects to receive payments under the 1993 Plan pursuant to Option 1 will be entitled to receive monthly payments continuing over five years (i.e.: 60 consecutive monthly payments) that are equal on an annual basis to the lesser of $50,000 or 25% of the 1993 Participant's Final Average Share (these amounts paid in this manner being "Option 1").  For ease of reference, the amount equal to the lesser of $50,000 or 25% of a 1993 Participant's Final Average Share is sometimes referred to as that 1993 Participant's "Base Annual Benefit."

(ii) A 1993 Participant who elects to receive payments under the 1993 Plan pursuant to Option 2 will be entitled to receive the following amounts at the following times (these payments, to be received at these times, being "Option 2"):

(A) Equal monthly payments over four years (i.e.: 48 consecutive monthly payments) that are in the same amounts and payable at the same times as the first 48 monthly payments that the 1993 Participant would have received if he or she had elected to receive payments under the 1993 Plan pursuant to Option 1; *plus, thereafter*

As of November 15, 2017

(B) Equal monthly payments over one year (i.e.: 12 consecutive monthly payments, the first of which will be made one month after the last of the 48 monthly payments referenced in (A) above) that, in the aggregate, are equal to the excess of (x) the 1993 Participant's Base Annual Benefit, over (y) the Assigned Offset Value of the 1993 Participant's Lifetime Payments (such excess, the "1993 Participant's Reduced Fifth Year Payment"); *plus, thereafter*

(C)  Equal annual payments of $1,000 each (the "Lifetime Payments"), the first of which will be made one month after the last of the 12 monthly payments referenced in (B) above and continuing thereafter on each anniversary of that first $1,000 annual payment for the rest of the 1993 Participant's life (with no such payment made on any such anniversary if the 1993 Participant dies before that anniversary); *plus, thereafter*

(D) A lump sum amount, payable to the estate of the 1993 Participant not later than 90 days after his or her death, equal to the amount, if any, determined by subtracting from (x) the 1993 Participant's Base Annual Benefit, (y) the sum of (I) the 1993 Participant's Reduced Fifth Year Payment, plus (II) the aggregate amount of all Lifetime Payments made to the 1993 Participant during his or her lifetime.  For the avoidance of doubt, if the sum of the 1993 Participant's Reduced Fifth Year Payment plus the aggregate amount of the Lifetime Payments made to the 1993 Participant during his or her lifetime is equal to or greater than the 1993 Participant's Base Annual Benefit, no amount will be payable pursuant to this (D) (and neither will the Firm be entitled to receive any amount from the 1993 Participant's estate with respect to the 1993 Plan).

(c)  **Accrual of Benefit.**  If a 1993 Participant has completed less than 25 years of service with the Firm before his or her retirement, any retirement benefit under the 1993 Plan will be reduced by four percent for each year by which the number of the 1993 Participant's full years of service with the Firm is less than 25.

(d)  **Prior Service Credit.**  For purposes of the 1993 Plan, service (as a general partner and otherwise, as the case may be) with Paxton & Seasongood, Smith and Schnacke, Gould & Wilkie, LLP, and Kaufman & Cumberland Co. L.P.A. will be treated as service (as a general partner and otherwise, as the case may be) with the Firm.  The date on which each individual who is a General Partner as of December 31, 2006 commenced service with the Firm for purposes of the 1993 Plan (taking into account, where applicable, credit given for service other than with the Firm before the Restatement Date pursuant to any agreements between the Firm and the individual made in connection with his or her commencement or recommencement of service with the Firm) is set forth opposite that individual's name on Schedule B to this Agreement.  The Executive Committee, in its sole discretion and on a case by case basis, may determine that any individual with prior legal experience before joining the Firm (or who rejoined or rejoins the Firm following a period of service in some other activity deemed to be beneficial to the individual and the Firm) may be given full or partial credit for such prior or interim service for purposes of the 25 year accrual of benefits provided for in Section 11.3(c).  The Executive Committee may not grant any such General Partner credit for such prior or interim service for purposes of the requirement that an individual be a General Partner for 12 years before being eligible for a benefit under the 1993 Plan.  Years of service with the Firm will be determined by the Executive Committee based upon Schedule B and the records of the Firm.

(e)  **Time of Payment.**  Except (x) where the Executive Committee, acting in its sole discretion, determines to make the payments earlier than otherwise required by the remainder of this Section 11.3(e) or (y) as otherwise provided in a subsection of this Section 11.3(e), the benefit under Option 1 will be payable in 60 monthly payments over five years commencing 90 days after the date on which the 1993 Participant ceases to be an active lawyer with the Firm (but not earlier than January 1 of the year immediately following the year in which the 1993 Participant makes, or is

deemed to have made, the election permitted by Section 11.3(b)), and the benefit under Option 2 will be payable as specified in 11.3(b)(ii), with the first of the 48 monthly payments referenced in 11.3(b)(ii)(A) being made 90 days after the date on which the 1993 Participant ceases to be an active lawyer with the Firm (but not earlier than January 1 of the year immediately following the year in which the 1993 Participant makes, or is deemed to have made, the election permitted by Section 11.3(b)).

(i) If a 1993 Participant who elected Option 1 dies after becoming entitled to a benefit under the 1993 Plan and before all 60 monthly payments have been made, the remaining monthly payments will be made to the 1993 Participant's estate at the same times and in the same amounts as if the 1993 Participant survived until all 60 monthly payments had been made to him or her.  No interest will be paid on or with respect to any such monthly payments whenever made and no further payments, beyond those specified in this Section 11.3(e)(i), will be made under the 1993 Plan to or with respect to the 1993 Participant.

(ii) If a 1993 Participant who elected Option 2 dies after becoming entitled to a benefit under the 1993 Plan and before the 49th monthly payment (i.e., the first monthly payment of the 1993 Participant's Reduced Fifth Year Payment) has been made, monthly payments will be made to the 1993 Participant's estate at the same times and in the same amounts as if the 1993 Participant had elected Option 1 and had survived until all 60 monthly payments payable pursuant to Option 1 had been made to him or her.  No interest will be paid on or with respect to any such monthly payments whenever made and no further payments, beyond those specified in this Section 11.3(e)(ii), will be made under the 1993 Plan to or with respect to the 1993 Participant.

(iii)  If a 1993 Participant who elected Option 2 dies after receiving at least 49 monthly payments (i.e., after having received the first monthly payment of the 1993 Participant's Reduced Fifth Year Payment) but before receiving the 60th monthly payment (i.e., before having received the entire 1993 Reduced Fifth Year Payment), equal consecutive monthly payments will be made to the 1993 Participant's estate until the 1993 Participant and his or her estate have received a total of 60 monthly payments.  The amount of each such monthly payment to the 1993 Participant's estate will be set so that the sum of (A) all monthly payments of the 1993 Participant's Reduced Fifth Year Payment made to the 1993 Participant before his or her death, plus (B) the sum of the monthly payments to be made to his or her estate following the 1993 Participant's death equals the 1993 Participant's Base Annual Benefit.  No interest will be paid on or with respect to any such monthly payments whenever made and no further payments, beyond those specified in this Section 11.3(e)(iii), will be made to or with respect to the 1993 Participant.

(iv)  The Executive Committee may suspend any 1993 Plan payments to which a 1993 Participant is otherwise entitled for any period during which that 1993 Participant is compensated by the Firm for the provision of services to or on behalf of the Firm, to the extent permitted under Section 409A of the Internal Revenue Code of 1986, as amended.

(f)  **1993 Participants Who Began Receiving Benefits Before 2018.**  Unless he or she timely makes the election permitted by this Section 11.3(f), any 1993 Participant who began receiving monthly payments under the 1993 Plan before January 1, 2018 and has not received 60 such monthly payments by that date, will continue to receive monthly payments in the same amounts and at the same times as was provided under the terms of the 1993 Plan before its amendment to allow 1993 Participants to elect to receive benefits under Option 1 or Option 2.  Any such 1993 Participant who had received fewer than 49 monthly payments of benefits under the 1993 Plan by December 31, 2017 will be entitled to make a one-time election to receive the remainder of his or her benefits under the 1993 Plan under Option 2, with the result that the monthly payments to any such electing 1993

As of November 15, 2017

Participant will continue at their prior rate until he or she has received 48 monthly payments, after which the 1993 Participant and his or her estate will receive payments in the amounts and at the times specified in Sections 11.3(b)(ii)(B), 11.3(b)(ii)(C), and 11.3(b)(ii)(D). The election permitted by this Section 11.3(f) will be timely only if made by the 1993 Participant by written notice to the Executive Committee given not later than December 31, 2017.

(g) **Effect of Disability on Years of Service.** A 1993 Participant who becomes and, at his or her Age 65 Retirement Date, continues to be, disabled, for purposes of the long-term disability insurance program maintained by the Firm, will be deemed to have retired on the 1993 Participant's Age 65 Retirement Date, but his or her years of service with the Firm will be deemed to have ended on the December 31 coinciding with or immediately following the date on which the 1993 Participant became disabled.

**11.4 Limitations on Benefits.**

(a) **Limitation on Aggregate Benefit Payments**

(i) **Aggregate Payments with respect to Vested Partners, 1986 Participants, and 1993 Participants.** The aggregate amount of all retirement benefits payable by the Firm for any year (whether with respect to Vested Partners, to 1986 Participants, to 1993 Participants, or to any combination thereof) will be limited to 10% of Retirement Plan Net Income for that year.

(ii) **Payments with respect to 1986 Participants and 1993 Participants.** The aggregate amount of retirement benefits payable by the Firm for any year with respect to 1986 Participants and 1993 Participants will be limited to 4.25% of Retirement Plan Net Income for that year.

(iii) **Application of Limitations.** In determining whether either or both of the limitations set forth in Section 11.4(a)(i) and Section 11.4(a)(ii) (respectively, the "10% Limit" and the "4.25% Limit"), apply to limit retirement benefits in any year and, if so, in applying either or both of those limits, the following rules will apply:

(A) If the aggregate amount of all benefits that would be payable absent the limits set forth in this Section 11.4(a) exceeds the 10% Limit, the retirement benefit otherwise payable to or with respect to each retired General Partner (whether a Vested Partner, a 1986 Participant, or a 1993 Participant) for that year will be reduced on a pro rata basis to the extent necessary to meet the 10% Limit.

(B) If the aggregate amount of all retirement benefits that would be payable to or with respect to all 1986 Participants and 1993 Participants exceeds the 4.25% Limit either (I) absent the limits set forth in this Section 11.4(a), or (II) after the application of the 10% Limit but before the application of the 4.25% Limit, the retirement benefit otherwise payable to or with respect to each 1986 Participant and to or with respect to each 1993 Participant for that year will be reduced on a pro rata basis to the extent necessary to meet the 4.25% Limit.

(C) The amounts of any reductions determined under either of Section 11.4(a)(i) and Section 11.4(a)(ii) , in any year (a "Shortfall Year") will be paid, without interest, to the affected retired General Partners and/or their surviving spouses, but only if then living, out of Retirement Plan Net Income from future years in which the aggregate amount of retirement benefits payable (disregarding this Section 11.4(a)(iii)(C)) is less than the applicable limitation (a "Surplus Year"). The amounts to be paid under this Section 11.4(a)(iii)(C) with respect to any Surplus Year will be determined by recalculating the amounts payable for each Shortfall Year in order of time, applying the entire surplus available first to the earliest Shortfall Year,

As of November 15, 2017

and then applying any remaining surplus to each subsequent Shortfall Year in order until the surplus is exhausted or the shortfall is made up.  Amounts payable out of Retirement Plan Net Income from any Surplus Year will be paid to the surviving General Partners and/or their surviving spouses after the end of the Surplus Year and by not later than March 15 of the year immediately following the Surplus Year.  Any surplus carried back to any particular Shortfall Year will be paid out to the surviving retired General Partners and/or their surviving spouses in such manner that, to the extent possible given the amount of surplus carried back, the payments to the surviving General Partners and/or their surviving spouses put those individuals in the same position with respect to aggregate retirement benefits received with respect to the Shortfall Year that they would have been in if there had been no shortfall in the Shortfall Year.  All calculations required by this Section 11.4(a)(iii)(C) will be made without reference to the time value of money.

(b)  **Noncompetition.**  The receipt of any retirement benefit from the Firm is conditioned upon abstention from activities that are deemed by the Executive Committee to be competitive with the Firm's law practice, including wrongful disclosure of information concerning the business of the Firm and its clients.  In determining whether an activity is competitive with the Firm's law practice, the Executive Committee will consider the nature of the activity as it relates to services provided in the ordinary course of the Firm's law practice, the scope of the activity, the geographic location of the activity, the extent to which the activity involves any client having a pre-existing relationship with the Firm, and the parties with whom a retired General Partner associates in connection with the activity.  This condition is not intended to prevent a retired General Partner from engaging in the practice of law, so long as the retired Partner does not take Firm clients with him or her, compete with the Firm in seeking to attract client business, or practice in a way that tends to disparage or discredit the Firm. A determination by the Executive Committee in a particular instance that a retired General Partner's activities are competitive will be reviewable by the General Partners upon a request by the retired Partner, and a reversal of the determination will require the affirmative vote of three-fourths of all General Partners.

(c)  **Additional Limitations on Retirement Benefits.**  The retirement benefits provided for in this Section 11 will remain subject at all times to modification or cancellation in accordance with the provisions of Section 16.2.  Benefits will be paid solely from the general assets of the Firm which will at all times remain subject to the claims of general creditors of the Firm.  Such benefits may not be assigned or transferred and any attempt to do so will be null and void.

**12.  Special Provision regarding Retirement Benefits for Grandfathered Income Partners.**  For purposes of this Agreement, a "Grandfathered Income Partner" is an Income Partner who was a General Partner as of December 31, 2001, thereafter became an Income Partner, and has continued as an Income Partner without interruption from the date he or she first became an Income Partner.  If a Grandfathered Income Partner continues as an Income Partner until the date of his or her retirement with the consent of the Executive Committee, upon that retirement, the Grandfathered Income Partner will be entitled to retirement benefits under the 1986 Plan or the 1993 Plan to the same extent, with the same right to make elections between and under those two plans, and subject to the same limitations on the obligation of the Firm to make retirement payments as if (a) the Grandfathered Income Partner had continued as a General Partner through the date of his or her retirement, and (y) the share of Net Income of the Firm received by the Grandfathered Income Partner as an Income Partner had instead been received as a General Partner's share of Net Income for General Partners.

As of November 15, 2017

**13.  Withdrawal, Change in Status, or Termination of a Partner.**

**13.1  Withdrawal of a Partner.**  Any Partner may withdraw at any time from the Firm by a notice in writing delivered to the Managing Partner or to any two or more Regular Members of the Executive Committee.

**13.2  Change in Status of General Partner to Income Partner.**

   (a)  **Upon Individual Agreement with the Executive Committee.**  Any General Partner and the Executive Committee may agree at any time that the General Partner's status in the Firm will be changed from General Partner to Income Partner and that the terms and conditions of the Partner's participation in the Firm as an Income Partner will be as set forth in a Letter Agreement between the Partner and the Firm in such form and with such effective date as may be approved by the Executive Committee, all without any vote of the General Partners.

   (b)  **Upon Recommendation of the Executive Committee and Majority Vote of Remaining General Partners.**  The status of any General Partner in the Firm may be changed from General Partner to Income Partner at any time, either with or without cause, upon the recommendation of at least 70 percent of the members of the Executive Committee and the confirming vote of a majority in interest of the remaining General Partners taken after written notice of the recommendation, accompanied by the proposed Letter Agreement between the Firm and the Partner, has been circulated to all General Partners.  Except as may otherwise be agreed by the Executive Committee and the General Partner whose status is being changed, the change in status from General Partner to Income Partner pursuant to this Section 13.2(b) will be effective on such date as may be recommended by the Executive Committee and specified by the General Partners in their confirming vote, which date will not be earlier than three months after the date of the confirming vote.  If the General Partner whose status is being changed pursuant to this Section 13.2(b) declines to execute the Proposed Letter Agreement within 30 days after the confirming vote, he or she will be deemed to have withdrawn from the Firm on the date as of which the proposed Letter Agreement would have otherwise become effective.

**13.3  Termination as to any Partner Upon Vote of Three-Fourths of Remaining General Partners.**  The membership of any Partner in the Firm may be terminated at any time, either with or without cause, by a vote of three-fourths in interest of all of the remaining General Partners, in the case of termination of a General Partner, or three-fourths in interest of all of the General Partners, in the case of termination of an Income Partner, effective either immediately upon conclusion of the vote to terminate or at such later time as may be specified in connection with the obtaining of that vote.

**13.4  Termination of General Partner Upon Recommendation of Executive Committee and Majority Vote of Remaining General Partners.**  The membership of any General Partner in the Firm may be terminated, either with or without cause, upon the recommendation of at least 70 percent of the members of the Executive Committee and the confirming vote of a majority in interest of the remaining General Partners taken after written notice of the recommendation has been circulated to all General Partners.  Except as may otherwise be agreed by the Executive Committee and the General Partner who is being terminated, any termination pursuant to this Section 13.4 will be effective on such date as may be recommended by the Executive Committee and specified by the General Partners in their confirming vote, which date will not be earlier than six months after the date of the confirming vote.

**13.5  Termination as to an Income Partner by Executive Committee.**  Except as otherwise provided in Section 13.5(a) or Section 13.5(b), the membership in the Firm of any Income Partner may be terminated at any time, either with or without cause, by action of the Executive Committee.

As of November 15, 2017

(a)  **Letter Agreement to Control.**  The ability of the Executive Committee to terminate an Income Partner's membership in the Firm will be subject to such restrictions, if any, as may be contained in the Income Partner's Letter Agreement.

(b)  **General Partner Vote to Terminate Grandfathered Income Partner.**  Termination of a Grandfathered Income Partner's membership in the Firm pursuant to this Section 13.5, if effected without the consent of the Income Partner, will require the recommendation of at least 70 percent of the members of the Executive Committee and the confirming vote of a majority in interest of the General Partners taken after written notice of the recommendation has been circulated to all General Partners and will be effective on such date as may be recommended by the Executive Committee and specified by the General Partners in their confirming vote, which date will not be earlier than six months after the date of the confirming vote.

**13.6  Payments Upon Change in Status from General Partner to Income Partner.**  When an individual's status is changed from General Partner to Income Partner:

(a)  The Firm will repay the individual's share of Firm Capital, determined as of the effective date of the change in status, without interest, by the later of (i) the effective date of the change in status and (ii) the date that is 30 days after the execution by the individual of the Letter Agreement regarding his or her Income Partner status.

(b)  The Firm will pay to the individual, in full satisfaction of his or her share of Net Income for General Partners for that part of the year, if any, that precedes the effective date of the change in status, an amount equal to:

(i)  the budgeted amount of the individual's interest in Net Income for General Partners for the year in which the change in status occurs multiplied by a fraction, the numerator of which is the number of days in that part of the year ending on the effective date of the change in status and the denominator of which is the number of days in the entire year; minus

(ii)  all amounts previously distributed to the individual against his or her share of Net Income for General Partners for the year.

Payments pursuant to this Section 13.6(b) will be made to the individual not later than 30 days after the effective date of the change in status.

(c)  The Firm will not be obligated to pay any other amount to the individual, either in payment for his or her interest in the billed and unbilled matters of the Firm (including matters involving contingent fees) or otherwise, unless and except to the extent that the Executive Committee determines, based upon its judgment as to the best interests of the Firm as a whole, that an additional amount should be paid.

**13.7  Payments Upon Withdrawal or Termination of a Partner.**

(a)  **General Partner.**  When a General Partner ceases to be a General Partner for any reason other than death, retirement, or change in status to Income Partner (provision for each of which is made elsewhere in this Agreement) the provisions of this Section 13.7(a) will govern the Firm's obligation to make payments to that separated General Partner from and after the date on which the separated General Partner so ceases to be a General Partner (the "Separation Date").  The Firm may offset any amounts owed by the separated General Partner to the Firm against the Firm's obligation to make payments to the separated General Partner under this Section 13.7(a).

(i)  The Firm will repay the separated General Partner's share of Firm Capital, determined as of the Separation Date, in three equal installments, each without interest, to be made, respectively, not later than six, 12, and 18 months after the Separation Date or at such earlier time or times as the Executive Committee may determine in any particular instance.

(ii)  The Firm will pay to the separated General Partner, in full satisfaction of his or her share of Net Income for General Partners for that part of the year ending on the Separation Date, an amount equal to:

    (A)  either (1) the budgeted amount of the separated General Partner's interest in Net Income for General Partners for the year in which the termination occurs multiplied by a fraction, the numerator of which is the number of days in that part of the year ending on the Separation Date and the denominator of which is the number of days in the entire year (the "Pro Rata Target Amount") or (2) if the last sentence of this Section 13.7(a)(ii) is applicable, such other amounts as may be determined by the Executive Committee pursuant to that sentence; minus

    (B)  all amounts previously distributed to the separated General Partner against his or her share of Net Income for General Partners for the year; minus

    (C)  such further deduction, if any, as may be determined by the Executive Committee to be appropriate based upon the failure, if any, of the individual to fulfill his or her obligations as a General Partner through the Separation Date.

Except as provided in the last sentence of this Section 13.7(a)(ii), payments pursuant to this Section 13.7(a)(ii) will be made to the separated General Partner within 30 days of the Separation Date.  If the Separation Date is after June 30 of a year and the Firm's most recent internal projections as of the Separation Date forecast Net Income for General Partners for that year at less than 100% of budget, the Executive Committee may reduce the initial amount that would otherwise be calculated pursuant to Section 13.7(a)(ii)(A) by twice the percentage amount of the projected shortfall, in which event the Firm will make an initial payment to the terminated General Partner based on that reduced amount and will also make a final payment to the terminated General Partner, by not later than April 15 of the following year, that, when added to the initial payment, will result in the aggregate amount paid pursuant to Section 13.7(a)(ii) being equal to (x) the Pro Rata Target Amount multiplied by (I) the percentage of Net Income for General Partners budget actually attained by the Firm for the entire year or (II) 100%, whichever is less, minus (y) the amounts, if any, specified in Sections 13.7(a)(ii)(B) and 13.7(a)(ii)(C).

(iii)  The Firm will not be obligated to pay any other amount to the separated General Partner, either in payment for his or her interest in the billed and unbilled matters of the Firm (including matters involving contingent fees) or otherwise, unless and except to the extent that the Executive Committee determines, based upon its judgment as to the best interests of the Firm as a whole, that an additional amount should be paid

(b)  **Income Partner.**  When an Income Partner ceases to be a member of the Firm for any reason, unless, and except to the extent that, (i) the Income Partner's Letter Agreement provides otherwise, or (ii) the Executive Committee determines, based upon its judgment as to the best interests of the Firm as a whole, that an additional amount should be paid, the Income Partner will be entitled only to:

    (A)  his or her Participation for the year in which he or she ceases to be an Income Partner multiplied by a fraction, the numerator of which is the number of days in that part of the year ending on the date on which he or she ceases to be an Income Partner and the denominator of which is the number of days in the entire year; minus

As of November 15, 2017

(B)  all amounts previously distributed against his or her Participation for that year.

The Firm will be entitled to offset its obligation to make payments under this Section 13.7(b) against any amounts owed by the Income Partner to the Firm.  Subject to that right of offset, payments to a terminated Income Partner under this Section 13.7(b) will be made within 30 days of the effective date of the termination.

## 14.  Indemnification.

**14.1  Generally.**  Except as otherwise provided in Section 14.4 or Section 14.5, the Firm will indemnify each Partner and each former Partner with respect to any actual or alleged Firm debt, obligation, or liability of, or chargeable to, the Firm or the indemnified Partner, whether arising in tort, contract, or otherwise, to the extent the debt, obligation, and/or liability occurs, is incurred, or is assumed (or is alleged to have occurred, been incurred, or been assumed) in the course of the Firm's business while the Partner or former Partner was a Partner with the Firm or earlier while the Partner or former Partner practiced law with the Firm in an associate or of counsel status before becoming a Partner.

**14.2  Administrative Partners.**  Without limiting or expanding the generality of the indemnification obligation specified in Section 14.1, except as otherwise provided in Section 14.4 or Section 14.5, the Firm will indemnify each Partner and each former Partner who has or had management, supervisory, or administrative duties with respect to the Firm and its business, whether as the Managing Partner, as a Regular Member of the Executive Committee, or by virtue of the assignment of management, supervisory, or administrative duties to the Partner by the Managing Partner or the Executive Committee, including, for example, as a Practice Group Leader or Partner-in-Charge (any "Administrative Partner"), with respect to any actual or alleged Firm debt, obligation, or liability of, or chargeable to, the Firm or the indemnified Administrative Partner that arises out of the Administrative Partner's actual or alleged acts or omissions in connection with or arising out of the Administrative Partner's management, supervisory, or administrative duties.

**14.3  Scope and Procedures.**  The Firm will provide indemnification to Partners and Administrative Partners as provided in Section 14.1 and Section 14.2 to the fullest extent that a corporation is permitted to provide indemnification to an officer or director of a corporation under the Ohio General Corporation Law, as amended from time to time, including the advancement of expenses (including attorney's fees) incurred by the Partner or Administrative Partner in defending any civil, criminal, administrative, or investigative action, suit, or proceeding, upon receipt of an undertaking by or on behalf of the Partner or Administrative Partner to repay the amounts advanced if it ultimately is determined that he or she is not entitled to be indemnified by the Firm.  The procedures set forth in those statutory provisions (applied as though the Firm were an Ohio corporation and the Partner whose right to indemnification is at issue were a director of that corporation) will govern any particular request for indemnification and therefore, for purposes of determining whether and when any indemnification will be made (which determination is controlled, in the case of an Ohio corporation, by Section 1701.13(E)(4) of the Ohio Revised Code) (a) the Firm will be treated as the "corporation," (b) the Managing Partner and the Regular Members of the Executive Committee will be treated as "directors," (c) all of the General Partners will be treated as "shareholders."

**14.4  Condition to Indemnification Obligation.**  Except to the extent that any Firm debt, obligation, or liability is paid or reimbursed under a policy of insurance carried by the Firm and the payment and reimbursement from the insurer is made without regard to the criteria specified in the remainder of this Section 14.4, it will be a condition to the Firm's obligation to indemnify a Partner pursuant to this Section 14 that the Partner have acted in good faith and in a manner the Partner reasonably believed to be in or not opposed to the best interests of the Firm and, with respect to any action or proceeding involving criminal conduct, the Partner had no reasonable cause to believe his or her conduct was illegal.

As of November 15, 2017

**14.5  Exception to Indemnification Obligation.**  Except for those instances in which the Executive Committee has expressly advised a Partner or former Partner that indemnification will be provided for such acts or omissions (for example by delivery of a letter to a Partner approving the assumption by the Partner of a particular status with respect to a particular enterprise related to the Firm's business), the Firm will have no obligation to indemnify any Partner or former Partner for acts or omissions by the Partner or former Partner in his or her capacity as a director, trustee, executor, officer, employee, member, manager, or agent of another corporation, domestic or foreign, nonprofit or for profit, a limited liability company, or a partnership, joint venture, trust, estate, or other enterprise whether or not the status as director, trustee, officer, employee, member, manager, or agent is or was related to the Firm's business.

**14.6  Firm Employees.**  The Firm may indemnify employees and former employees of the Firm with respect to any Firm debt, obligation, or liability of, or chargeable to, the Firm or the indemnified employee, whether arising in tort, contract, or otherwise, to the extent the debt, obligation, and/or liability occurs, is incurred, or is assumed in the course of the Firm's business.  Whether and to what extent the Firm chooses to indemnify an employee or former employee pursuant to this Section 14.6 will be determined, from time to time, by the Executive Committee.  No employee or former employee will be entitled to indemnification under this Section 14.6 unless and until the Executive Committee has affirmatively determined that indemnification is appropriate in the circumstances.

**15.  Obligations with respect to Former Partners and with respect to Indemnification to be Satisfied Solely from Firm Assets.**  No Partner of the Firm will have any personal liability for the payment of any sum to or with respect to any individual who ceases to be a Partner of the Firm due to death, retirement, withdrawal, or termination or for the payment of any indemnification pursuant to Section 14 , and all such obligations, including, without limitation, any obligation to return any former General Partner's Firm Capital, to pay retirement benefits to or with respect to a retired General Partner, or to pay any such indemnification, will be paid solely from the general assets of the Firm.

**16.  Modification and Termination.**

**16.1  Continuation of Partnership.**  Notwithstanding the death, withdrawal, or termination of a Partner or the admission of new Partners, the partnership will not terminate but will continue until terminated or modified as hereinafter provided.

**16.2  Modification.**  Except as provided in Section 16.4, this Agreement may be modified by the vote of three-fourths in interest of all General Partners.  Any modification approved by the vote of three-fourths in interest of all General Partners will be evidenced by a written instrument to be signed by all of the General Partners and all of the Income Partners.  Any Partner declining to execute any amendment to or restatement of this Agreement reflecting an approved modification within such reasonable period of time after the vote approving the modification as may be specified by the Executive Committee will be deemed to have withdrawn from the Firm on the date as of which the modification becomes effective.

**16.3  Note on Restatements.**  This Agreement was substantially amended and restated in its entirety effective December 8, 2007.  The only substantive change from that restatement to the December 5, 2008 restatement of this Agreement was an amendment to Section 4.3.  The only substantive changes from the December 5, 2008 restatement of this Agreement to the October 28, 2011 restatement were made to redefine Normal Retirement Age as, in general, the December 31 coincident with or immediately following a General Partner's 68th birthday, to provide for voluntary retirements by General Partners other than on the last day of a calendar year, to change the age limit on services as a member of the Executive Committee or as Managing Partner from age 65 to age 68, to close participation in the 1993 Plan, and to make other conforming changes.  The only substantive changes from the October 28, 2011 restatement to the November 15, 2017 restatement were to remove all references to Continuing Participations to eliminate, prospectively, any future obligation the Firm might otherwise have had to pay any amounts as

As of November 15, 2017

Continuing Participations with respect to any individual who was either a General Partner or a Grandfathered Income Partner as of the date of that restatement and to provide to 1993 Participants an election as to how to receive payments under the 1993 Plan.

**16.4  Limitation.**  No modification of Section 11 that would reduce the amount or alter the provisions for payment of retirement benefits thereunder will be made applicable to any General Partner or retired General Partner without his or her prior written consent (or that of his or her surviving spouse, if the surviving spouse is then entitled to receive a survivor benefit), following the earliest to occur of (a) delivery to the Executive Committee of the General Partner's notice of his or her election to retire on a date specified in the notice (delivery of which for this purpose will not be deemed to occur earlier than 12 months before the date specified by the General Partner in the notice), (b) the Executive Committee's advice to the General Partner of its determination that he or she will not be permitted to remain a General Partner pursuant to Section 10.2(c), and (c) the General Partner's 65th birthday.  In the event of any modification of benefit provisions pursuant to this Section 16.4, the limitations set forth in Section 11.4(a) will continue to be applied to any retirement benefit payments being made in accordance with Section 11 as in effect before the modification as if the modification had not been made.

**16.5  Termination.**  Termination of the partnership will require the affirmative vote of three-fourths in interest of all General Partners.  No vote on termination of the partnership may be held other than at a meeting held for that purpose that is held not earlier than 30 days after the Executive Committee has circulated notice of the meeting and of its purpose to all Partners.

**17.  Arbitration**.  Any dispute, claim, or controversy arising out of (a) this Agreement, (b) the relationship of the parties to this Agreement as Partners *inter se*, or (c) any breach of this Agreement, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration rules.  The parties to this Agreement agree that the arbitration will take place in Cleveland, Ohio; that three arbitrators will constitute the arbitration tribunal; that the arbitrators will be selected from the list of arbitrators maintained by the American Arbitration Association under its Large and Complex Case Program or any successor program; that the parties will bear their own attorneys' fees and costs in connection with any arbitration; and that the fees of the arbitrators will be shared equally between or among the parties to the arbitration.  The parties further agree that the arbitration award will be final and binding and that judgment on the award may be entered in any court having jurisdiction over the subject matter and the parties.

**18.  Successors**.  This Agreement will be binding upon each of the parties hereto and his or her heirs, executors, administrators, successors, and assigns.

**19.  Waiver of Right to Contribution.**  Notwithstanding anything to the contrary contained in this Agreement, in Chapter 1775 of the Ohio Revised Code, or in any other statute or rule of law, each Partner hereby agrees to and does waive any and all rights that might otherwise exist to seek contribution from any other Partner in connection with any loss or liability with respect to which (and to the extent to which) that other Partner is not (or those other Partners are not) liable by virtue of Chapter 1775 of the Ohio Revised Code and the status of the Firm as a registered limited liability partnership.

**20.  Ohio Law Applicable.**  This partnership is formed under the laws of the State of Ohio, and this Agreement will be governed, construed, and enforced in accordance with the laws of that State applicable to contracts made in and to be wholly performed within that State.

**21.  Execution**.  This Agreement may be executed in counterparts, each of which, when executed, will be deemed to be an original, and all of which, taken together, will constitute one and the same instrument, even though all Partners have not executed the same counterpart. The signature of any Partner to a counterpart of this Agreement will indicate his or her agreement to be bound by the provisions of this

As of November 15, 2017

Agreement.  When a new Partner is admitted to the Firm, it will not be necessary for the existing Partners to re-execute this Agreement, but each new Partner, upon his or her admission to the Firm, will sign either a counterpart of this Agreement or a document evidencing that he or she has become a party to this Agreement and that action will be effective, as of the effective date of the new Partner's admission, as fully as though he or she had been one of the original signers hereof.

**22.  Definitions.**  As used in this Agreement, the following terms have the following meanings:

**22.1** "**4.25% Limit**" has the meaning assigned in Section 11.4(a)(iii).

**22.2** "**10% Limit**" has the meaning assigned in Section 11.4(a)(iii).

**22.3** "**1986 Participant**" has the meaning assigned in Section 11.2(b).

**22.4** "**1986 Plan**" has the meaning assigned in Section 11.1.

**22.5** "**1993 Participant**" has the meaning assigned in Section 11.3(a).

**22.6** "**1993 Plan**" has the meaning assigned in Section 11.1.

**22.7** "**Actual Retirement Date**" means the date on which a General Partner actually retires from the Firm.

**22.8** "**Administrative Partner**" has the meaning assigned in Section 14.2.

**22.9** "**Age 65 Retirement Date**" means with respect to a General Partner the December 31 coincident with or immediately following his or her 65th birthday.

**22.10** "**Agreement**" means this Partnership Agreement.

**22.11** "**Assigned Offset Value**" with respect to a 1993 Participant's Lifetime Payments means the aggregate dollar amount (which will always be a multiple of $1,000) expected to be paid out by the Firm to a 1993 Participant as Lifetime Payments, as that aggregate dollar amount is determined by the Executive Committee based in part on life expectancies and in part on the attained age of the 1993 Participant as of the time he or she will begin to receive such payments (i.e.: as of the time specified in Section 11.3(b)(ii)(C)).

**22.12** "**Decedent**" has the meaning assigned in Section 9.1.

**22.13** "**Early Retirement Benefit Period**" has the meaning assigned in Section 11.2(d).

**22.14** "**Expense Guidelines**" has the meaning assigned in Section 5.8.

**22.15** "**Final Average Share**" means with respect to a General Partner his or her average annual share of Net Income for General Partners for the five years (which need not be consecutive) during the ten years:

(a) ending with his or her Age 65 Retirement Date (insofar as the Final Average Share is relevant to benefits under the 1986 Plan), or

(b) ending with the earlier of the December 31 coincident with or immediately preceding his or her Actual Retirement Date or his or her Normal Retirement Date (insofar as the Final Average Share is relevant to benefits under the 1993 Plan)

As of November 15, 2017

that produces a higher average annual share than any other five years during the applicable ten-year period.  If the Actual Retirement Date or Normal Retirement Date of a General Partner occurs before the expiration of five full years during which he or she was a General Partner of the Firm, Final Average Share (insofar as relevant to benefits under the 1993 Plan) will mean his or her average annual share of Net Income for General Partners for the years ending with the earlier of his or her Actual Retirement Date or his or her Normal Retirement Date during which he or she was a General Partner.

**22.16** "**Firm**" means the law firm of Thompson Hine LLP.

**22.17** "**Firm Capital**" has the meaning assigned in Section 5.5.

**22.18** "**First Stage Retirement Benefit**" for any 1986 Participant means an annual retirement benefit equal to the lesser of:

    (a)  the 1986 Participant's Final Average Share multiplied by the percentage set forth opposite his or her name on Schedule A in the column headed "First Stage Retirement Benefit Percentage," or

    (b)  the greater of (i) the mean per capita income or (ii) the median per capita income of General Partners for the immediately preceding year (determined in each case by reference to the General Partners' respective shares in Net Income for General Partners).

**22.19** "**Former Managing Partner Policy**" has the meaning assigned in Section 8.8.

**22.20** "**Grandfathered Income Partner**" has the meaning assigned in Section 12.

**22.21** "**Letter Agreement**" has the meaning assigned in Section 4.2(b).

**22.22** "**Net Income**" for any fiscal period means the excess of the Firm's revenues for that period over all costs of doing business for that period, determined before any distributions of (a) Participations of Income Partners, (b) Retirement Plan Distributions, and (c) the respective shares of General Partners in Net Income.

**22.23** "**Net Income for General Partners**" for any fiscal period means Net Income for that period reduced by all (a) Participations of Income Partners and (b) Retirement Plan Distributions for that period.

**22.24** "**Normal Retirement Date**" means with respect to a General Partner the December 31 coincident with or immediately following his or her 68th birthday (following his 72nd birthday in the case of George J. Walsh III).

**22.25** "**Participation**" has the meaning assigned in Section 5.2(a).

**22.26** "**Partner**" has the meaning assigned in Section 4.

**22.27** "**Pro Rata Target Amount**" has the meaning assigned in Section 13.7(a)(ii)(A).

**22.28** "**Qualified Plan**" has the meaning assigned in Section 4.3.

**22.29** "**Regular Members**" has the meaning assigned in Section 7.1.

**22.30** "**Restatement Date**" has the meaning assigned in the first sentence of this Agreement.

**22.31** "**Retirement Plan Distributions**" for any fiscal period means amounts distributable as retirement benefits to retired General Partners for that period pursuant to Section 11.

As of November 15, 2017

**22.32** "**Retirement Plan Net Income**" for any fiscal period means Net Income for that period reduced by all Participations of Income Partners.

**22.33** "**Schedule A Partners**" has the meaning assigned in Section 11.2(a).

**22.34** "**Second Stage Retirement Benefit**" for any 1986 Participant means an annual retirement benefit equal to the 1986 Participant's Final Average Share multiplied by the percentage set forth opposite his or her name on Schedule A in the column headed "Second Stage Retirement Benefit Percentage."

**22.35** "**Separation Date**" has the meaning assigned in Section 13.7(a).

**22.36** "**Shortfall Year**" has the meaning assigned in Section 11.4(a)(iii)(C).

**22.37** "**Standard Retirement Benefit Period**" has the meaning assigned in Section 11.2(c).

**22.38** "**Successor in Interest**" has the meaning assigned in Section 9.2

**22.39** "**Surplus Year**" has the meaning assigned in Section 11.4(a)(iii)(C).

**22.40** "**Vested Partners**" has the meaning assigned in Section 11.1(a).


In witness whereof, the undersigned individuals have signed this Agreement as of the Restatement Date.


| _/s/ William R. Allen_ | _/s/ Irving C. Apar_ | _/s/ Jeffrey R. Applebaum_ |
|---|---|---|
| William R. Allen | Irving C. Apar | Jeffrey R. Appelbaum |
| _/s/ James B. Arnoff_ | _/s/ James H. Balthaser_ | _/s/ Christopher M. Bechhold_ |
| James B. Aronoff | James H. Balthaser | Christopher M. Bechhold |
| _/s/ Alan F. Berliner_ | _/s/ J. Wray Blattner_ | _/s/ Norman A. Bloch_ |
| Alan F. Berliner | J.Wray Blattner | Norman A. Bloch |
| _/s/ Kip T. Bollin_ | _/s/ Karyn A. Booth_ | _/s/ Derek D. Bork_ |
| Kip T. Bollin | Karyn A. Booth | Derek D. Bork |
| _/s/ Katherine D. Brandt_ | _/s/ Sandra L. Brown_ | _/s/ Timothy R. Brown_ |
| Katherine D. Brandt | Sandra L. Brown | Timothy R. Brown |
| _/s/ Robert W. Burger_ | _/s/ Stephen J. Butler_ | _/s/ Thomas J. Callahan_ |
| Robert W. Burger | Stephen J. Butler | Thomas J. Callahan |
| _/s/ Frank D. Chaiken_ | _/s/ Eric S. Clark_ | _/s/ Thomas J. Collin_ |
| Frank D. Chaiken | Eric S. Clark | Thomas J. Collin |
| _/s/ Mark A. Conway_ | _/s/ John D. Cottingham_ | _/s/ Timothy J. Coughlin_ |
| Mark A. Conway | John D. Cottingham | Timothy J. Coughlin |

As of November 15, 2017

| /s/ Andrew H. Cox | /s/ Thomas J. Coyne | /s/ Robert M. Curry |
|---|---|---|
| Andrew H. Cox | Thomas J. Coyne | Robert M. Curry |
| /s/ Darrel R. Davison | /s/ Richard A. DePalma | /s/ Frank R. DeSantis |
| Darrel R. Davison | Richard A. DePalma | Frank R. DeSantis |
| /s/ Louis K. Ebling | /s/ Garrett D. Evers | /s/ Terrence M. Fay |
| Louis K. Ebling | Garrett D. Evers | Terrence M. Fay |
| /s/ Thomas L. Feher | /s/ Francesco A. Ferrante | /s/ Sarah C. Flannery |
| Thomas L. Feher | Francesco A. Ferrante | Sarah C. Flannery |
| /s/ Barry A. Friedman | /s/ Heidi B. Friedman | /s/ Christine M. Haaker |
| Barry A. Friedman | Heidi B. Friedman | Christine M. Haaker |
| /s/ Daniel M. Haymond | /s/ Kurt P. Helfrich | /s/ Richard S. Heller |
| Daniel M. Haymond | Kurt P. Helfrich | Richard S. Heller |
| /s/ Harold W. Henderson | /s/ Bruce G. Hopkins | /s/ John F. Isbell |
| Harold W. Henderson | Bruce G. Hopkins | John F. Isbell |
| /s/ William W. Jacobs | /s/ James P. Jalil | /s/ Eduardo Kim |
| William W. Jacobs | James P. Jalil | Eduardo Kim |
| /s/ Scott A. King | /s/ Stephen M. King | /s/ Joseph B. Koczko |
| Scott A. King | Stephen M. King | Joseph B. Koczko |
| /s/ James C. Koenig | /s/ Andrew L. Kolesar | /s/ Karen M. Kozlowski |
| James C. Koenig | Andrew L. Kolesar | Karen M. Kozlowski |
| /s/ Anthony E. Kuhel, Jr. | /s/ Brian J. Lamb | /s/ Alan R. Lepene |
| Anthony E. Kuhel, Jr. | Brian J. Lamb | Alan R. Lepene |
| /s/ Scott B. Lepene | /s/ Theodore D. Lienesch | /s/ Julia A. Love |
| Scott B. Lepene | Theodore D. Lienesch | Julia A. Love |
| /s/ Todd E. Mason | /s/ J. Timothy McDonald | /s/ Donald S. Mendelsohn |
| Todd E. Mason | J. Timothy McDonald | Donald S. Mendelsohn |
| /s/ John R. Mitchell | /s/ Jeffrey O. Moreno | /s/ Adam R. Nazette |
| John R. Mitchell | Jeffrey O. Moreno | Adam R. Nazette |
| /s/ David A. Neuhardt | /s/ Michael J. Nieberding | /s/ Kimberly E. Ramundo |
| David A. Neuhardt | Michael J. Nieberding | Kimberly E. Ramundo |
| /s/ Deborah Z. Read | /s/ Alan S. Ritchie | /s/ Russell J. Rogers |
| Deborah Z. Read | Alan S. Ritchie | Russell J. Rogers |

As of November 15, 2017

| /s/ Janis B. Rosenthal | /s/ Laura A. Ryan | /s/ Michael G. Shannon |
|---|---|---|
| Janis B. Rosenthal | Laura A. Ryan | Michael G. Shannon |
| /s/ Arik A. Sherk | /s/ Peter W. Smith | /s/ Robyn Minter Smyers |
| Arik A. Sherk | Peter W. Smith | Robyn Minter Smyers |
| /s/ Louis F. Solimine | /s/ Keith P. Spiller | /s/ J. Shane Starkey |
| Louis F. Solimine | Keith P. Spiller | J. Shane Starkey |
| /s/ Patrick J. Sweeney | /s/ Brian A. Troyer | /s/ Roy L. Turnell |
| Patrick J. Sweeney | Brian A. Troyer | Roy L. Turnell |
| /s/ David R. Valz | /s/ Jonathon H. Vinocur | /s/ Robert F. Ware, Jr. |
| David R. Valz | Jonathon H. Vinocur | Robert F. Ware, Jr. |
| /s/ Stuart Welburn | /s/ Anthony C. White | /s/ Michael V. Wible |
| Stuart Welburn | Anthony C. White | Michael V. Wible |
| /s/ David J. Willbrand | /s/ Stephen D. Williger | /s/ David A. Wilson |
| David J. Willbrand | Stephen D. Williger | David A. Wilson |
| /s/ Elizabeth B. Wright | /s/ Thomas F. Zych | |
| Elizabeth B. Wright | Thomas F. Zych | |

As of November 15, 2017

**Exhibit A**

## GENERAL PARTNERS

| | | |
|---|---|---|
| William R. Allen | Francesco A. Ferrante | Michael J. Nieberding |
| Irving C. Apar | Sarah C. Flannery | Kimberly E. Ramundo |
| Jeffrey R. Appelbaum | Barry A. Friedman | Deborah Z. Read |
| James B. Aronoff | Heidi B. Friedman | Alan S. Ritchie |
| James H. Balthaser | Christine M. Haaker | Russell J. Rogers |
| Christopher M. Bechhold | Daniel M. Haymond | Janis B. Rosenthal |
| Alan F. Berliner | Kurt P. Helfrich | Laura A. Ryan |
| J. Wray Blattner | Richard S. Heller | Michael G. Shannon |
| Norman A. Bloch | Harold W. Henderson | Arik A. Sherk |
| Kip T. Bollin | Bruce G. Hopkins | Peter W. Smith |
| Karyn A. Booth | John F. Isbell | Robyn Minter Smyers |
| Derek D. Bork | William W. Jacobs | Louis F. Solimine |
| Katherine D. Brandt | James P. Jalil | Keith P. Spiller |
| Sandra L. Brown | Eduardo Kim | J. Shane Starkey |
| Timothy R. Brown | Scott A. King | JoAnn M. Strasser |
| Robert W. Burger | Stephen M. King | Linda A. Striefsky |
| Thomas J. Callahan | Joseph B. Koczko | Mario J. Suarez |
| Frank D. Chaiken | James C. Koenig | Patrick J. Sweeney |
| Eric S. Clark | Andrew L. Kolesar | Brian A. Troyer |
| Thomas J. Collin | Karen M. Kozlowski | Roy L. Turnell |
| Mark A. Conway | Anthony E. Kuhel, Jr. | David R. Valz |
| John D. Cottingham | Brian J. Lamb | Jonathon H. Vinocur |
| Timothy J. Coughlin | Alan R. Lepene | Robert F. Ware, Jr. |
| Andrew H. Cox | Scott B. Lepene | Stuart Welburn |
| Thomas J. Coyne | Theodore D. Lienesch | Anthony C. White |
| Robert M. Curry | Julia A. Love | Michael V. Wible |
| Darrel R. Davison | Todd E. Mason | David J. Willbrand |
| Richard A. DePalma | J. Timothy McDonald | Stephen D. Williger |
| Frank R. DeSantis | Donald S. Mendelsohn | David A. Wilson |
| Louis K. Ebling | John R. Mitchell | Elizabeth B. Wright |
| Garrett D. Evers | Jeffrey O. Moreno | Thomas F. Zych |
| Terrence M. Fay | Adam R. Nazette | |
| Thomas L. Feher | David A. Neuhardt | |

As of November 15, 2017

**Exhibit B**

**INCOME PARTNERS**

| | | |
|---|---|---|
| Thomas A. Alrich | Cori R. Haper | Sharon Swartz Neuhardt |
| Paull Allaer | Michael L. Hardy | Michael R. oestreicher |
| Robert Ansehl | Heather M. Hawkins | Jonathan A. Olick |
| Jurgita Ashley | Jonathon S. Hawkins | Thomas Wyatt Palmer |
| Stephen J. Axtell | Richard E. Helm | Ash D. Patel |
| Nancy M. Barnes | William M. Henry | Stephen R. Penrod |
| Devin A. Barry | J. Michel Herr | Francis E. Purcell, Jr. |
| Corby J. Baumann | Eric N. Heyer | Edward C. Redder |
| Gary D. Blachman | David J. Hooker | Stephen Richey |
| Elizabeth H. Blattner | Tony J. Hornbach | Matthew David Ridings |
| Barry M. Block | William J. Hubbard | Jennifer S. Roach |
| Connie Boland | Michael W. Jahnke | James D. Robenalt |
| Roger H. Bora | Staci M. Jenkins | Anthony J. Rospert |
| Cassandra W. Borchers | Robert P. Johnson | Patrick J. Saccogna |
| Rebecca Brazzano | Eugene Joswick | Todd M. Schild |
| Deborah S. Brenneman | Barry M. Kazan | William H. Schrag |
| Diane B. Brunn | Thomas A. Knoth | Stephen B. Schrock |
| Jeremy M. Campana | John B. Kopf | David M. Schwartz |
| Gregory D. Chafee | Peter C. Lesch | Robert A. Selak |
| Sarah Chambers | Pingshan Li | Carrie A. Shufflebarger |
| Faith L. Charles | Art Licygiewicz | James Spallino, Jr. |
| Stephanie M. Chmiel | Seth A. Littman | Bibb Strench |
| Peter D. Coffman | Mark Lunn | Curtis L. Tuggle |
| Michael V. Coleman | Jennifer Maffett-Nickelman | Jerry Vande Werken |
| Susan C. Cornett | Z. Ileana Martinez | Amie L. Vanover |
| Eric S. Daniel | Tom Mason | Samir D. Varma |
| Steve Elleman | Clifton E. McCann | George J. Walsh III |
| Richard A. Freshwater | Brendan J. McCarthy | John L. Watkins |
| Maranda E. Fritz | Timothy J. McCarthy | David D. Watson |
| Jack F. Fuchs | Daniel Ferrell McInnis | David Whaley |
| Peter J. Gennuso | Conor A. McLaughlin | Kim Wilcoxon |
| Gary M. Glass | Donald H. Messinger | M. Scott Young |
| John L. Green | Jeffrey C. Metzcar | Karen D. Youngstrom |
| Martin T. Griff | David J. Naftzinger | |
| Roy E. Hadley, Jr. | Garrett A. Nail | |

As of November 15, 2017