**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REBECCA BRAZZANO, | Case No.: 24-cv-01420 (ALC)(KHP) |
| Plaintiff, | |
| v. | |
| THOMPSON HINE LLP, RICHARD ANTHONY DE PALMA (in his individual and professional capacities), DEBORAH ZIDER READ (in her individual and professional capacities), and THOMAS LAWRENCE FEHER (in his individual and professional capacities) | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION AND
FOR A STAY PENDING ARBITRATION**

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

    A.    Parties.................................................................................. 2

    B.    Substantive Allegations .......................................................... 2

    C.    The Mandatory Arbitration Clause .......................................... 4

ARGUMENT.........................................................................................................5

    I.    PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY
        ARBITRATION. ................................................................... 5

    A.    Plaintiff Is Bound by the Arbitration Provision in the Partnership
        Agreement.......................................................................... 6

    B.    The Parties Delegated the Issue of Arbitrability to the Arbitrator............ 7

    C.    Even if the Court Were to Decide Arbitrability, Plaintiff's Claims
        Are Plainly Arbitrable.......................................................... 9

    II.    THE EFAA DOES NOT APPLY TO PLAINTIFF'S CLAIMS. ........................ 10

    III.    THE ACTION SHOULD BE STAYED PENDING ARBIRATION. ................ 13

CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Fla. Sur. Co. v. Coker*,
88 So.2d 508 (Fla. 1956) .......................................................................................7

*Blash v. BCS Placements, LLC*,
No. 19-cv-6321 (AJN), 2020 WL 2832777 (S.D.N.Y. May 31, 2020) ...................8

*Brazzano v. Jackson*,
C.A. No. 23-23148 (D. N.J.) ...................................................................................3

*Buchman v. Weiss*,
No. 08 Civ. 5453(RJS), 2009 WL 2044615 (S.D.N.Y. July 15, 2009) ...................5

*Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*,
No. 03 Civ. 929 (RCC), 2004 WL 2471372 (S.D.N.Y. Nov. 3, 2004)....................5

*Contec Corp. v. Remote Sol.*, Co.,
398 F.3d 205 (2d Cir. 2005) ...................................................................................8

*Epic Sys. Corp. v. Murphy Oil USA, Inc.*,
138 S.Ct. 1612 (2018)..............................................................................................5

*Foran v. Nat'l Football League*,
No. 1:18-cv-10857 (ALC), 2019 WL 2408030 (S.D.N.Y. June 7, 2019) ..............5, 6, 7, 8, 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S.Ct. 524 (2019)............................................................................................6, 8

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)...................................................................................12

*Katz v. Cellco Partnership*,
794 F.3d 341 (2d Cir. 2015)...................................................................................13

*Local Union 97, IBEW v. Niagara Mohawk Power Corp.*,
67 F.4th 107 (2d Cir. 2023) .....................................................................................9

*Metro. Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019) ....................................................................................8

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017).......................................................................................4

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ................................................................. 13

*Mitura v. Finco Servs., Inc.*,
    No. 23-CV-2879 (VEC), 2024 WL 232323 (S.D.N.Y. Jan. 22, 2024) ................... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................... 5, 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*,
    88 F.3d 129 (2d Cir. 1996) ................................................................... 7

*Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*,
    626 F. App'x 303 (2d Cir. 2015) ............................................................. 8

*Pierce v. Fordham Univ., Inc.*,
    No. 15-CV-4589 (JMF), 2016 WL 3093994 (S.D.N.Y. June 1, 2016) ............... 11

*Preferred Capital, Inc. v. Power Eng. Group, Inc.*,
    112 Ohio St.3d 429 ............................................................................. 7

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................. 5

*Sobel v. Appomattox Advisory Inc.*,
    2020 N.Y. Misc. LEXIS 2249 (Sup. Ct. N.Y. Cnty. May 17, 2020) ................. 7

*Southside Hosp. v. New York State Nurses Ass'n*,
    732 F. App'x 53 (2d Cir. 2018) ............................................................... 8

*Walters v. Starbucks Corp.*,
    623 F. Supp. 3d 333 (S.D.N.Y. 2022) ...................................................... 10

*Yost v. Everyrealm, Inc.*,
    657 F. Supp. 3d 563 (S.D.N.Y. 2023) ...................................................... 12

**Statutes**

9 U.S.C. § 2 (FAA) ................................................................................ 1, 5, 13

9 U.S.C. § 402 (EFAA) ..................................................................... 1, 10, 11, 12, 13

**Other Authorities**

American Arbitration Association Arbitration Rule 7(a) ...................................... 8-9

Federal Rule of Civil Proecdure 12(b)(6) ...................................................... 1, 12

# INTRODUCTION

Through this motion, Defendants seek to enforce the unambiguous mandatory arbitration provision Plaintiff agreed to be bound by as part of her employment with Defendant Thompson Hine LLP ("Thompson Hine" or the "Firm"). Under the FAA, there is a strong federal policy in favor of enforcing such agreements. The parties evinced a clear intent to delegate any dispute over the scope of the arbitration provision to an arbitrator. And courts—including this one—routinely grant motions to compel arbitration based on similar contractual language.

Plaintiff claims she should be allowed to evade application of her arbitration agreement because, she says, she failed to read it before signing. As incredulous as that may sound, it is also irrelevant. Under well-established Ohio law, parties are bound by and presumed to have read the contracts that they sign. That is particularly true for attorneys, like Plaintiff. Plaintiff's claim that the binding arbitration clause in her written agreement with the Firm somehow expired prior to her termination is likewise foreclosed by the agreement's express terms.

Plaintiff also attempts to plead her way into the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401-02 (the "EFAA"). This effort fails for at least two reasons. First, the EFAA is not retroactive. To the extent Plaintiff's allegations relate to harassment (and thus trigger the EFAA), they predate the statute's March 3, 2022 enactment by at least several years. The EFAA was not intended to cover Plaintiff's years-old harassment allegations and does not operate to allow Plaintiff to avoid her agreement to arbitrate. Second, regardless of timing, the EFAA still would not apply because, for the reasons stated in Defendants' Rule 12(b)(6) motion, Plaintiff's allegations fail to plausibly state a claim for sexual harassment.

For these reasons, the Court should grant Defendants' motion to compel arbitration and stay these proceedings pending arbitration.

## BACKGROUND

### A. Parties

Plaintiff is a former partner/member of Thompson Hine. Second Am. Compl. ("SAC") ¶ 26.[1] Thompson Hine is an Ohio limited liability partnership with its principal office located at 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114. SAC ¶ 30. Defendants Feher and Read are partners with offices in Thompson Hine's Cleveland office. *Id.* ¶¶ 38, 80, 81. Defendant De Palma is a partner with an office in the Firm's New York office. *Id.* ¶¶ 33-34.

### B. Substantive Allegations

Plaintiff's 668-paragraph Second Amended Complaint asserts a number of claims against Defendants arising from her tenure as a partner at Thompson Hine and the subsequent termination of that relationship. Defendants respectfully refer the Court to Defendants' Motion to Dismiss for Failure to State a Claim for a more detailed summary of Plaintiff's factual allegations and a table summarizing Plaintiff's various causes of action.

With respect to Mr. De Palma, Plaintiff alleges that prior to "the end of 2010," De Palma harassed Plaintiff, including by encouraging a "boys club demeanor" in the New York office and asking Plaintiff to advise him when she left the Firm's office for the day. *Id*. ¶¶ 169-71. Plaintiff alleges that De Palma continued to engage in inappropriate behavior immediately following his elevation to Vice Chair of the New York office's litigation group, in 2011. *Id*. ¶¶ 183, 186. Plaintiff further alleges that, in May 2012, De Palma made a "lewd" comment and advised Plaintiff that he would not recommend her for partnership, *Id*. ¶¶ 190-197, and that he unsuccessfully opposed her

---

[1] Thompson Hine is a Limited Liability Partnership organized in Ohio. Thompson Hine's Partnership Agreement ("Partnership Agreement"), attached as Exhibit 1 to the SAC, states:

**4. Partners.** The members of the Firm will consist of General Partners and Income Partners (collectively "Partners" and individually a "Partner"). *Id.* at 1.

promotion to partner in 2013, *id*. ¶¶ 198-210. Plaintiff alleges that she generally avoided Mr. De Palma thereafter and concedes that, at the latest, her specific allegations of harassment all took place in 2015 or earlier. *See id*. ¶¶ 218-220 (alleging that "the #MeToo phrase had not yet entered the lexicon" and "Gretchen Carlson had not yet sued then Fox News chairman and CEO Roger Ailes for harassment, discrimination and retaliatory conduct (2016)").

Plaintiff relocated to Florida in 2021.[2] In March 2022, while she was a Florida resident, Plaintiff alleges that she refused to approve certain *pro bono* expenses for one of Mr. De Palma's matters and, as a result, was asked to resign by Ms. Read on April 29, 2022:

> Defendants subjected Plaintiff to multiple adverse employment actions because Plaintiff disclosed and/or objected to an activity, policy, or practice of Thompson Hine and DePalma that was in violation of a law, rule, or regulation that creates a substantial and specific danger to the public health or safety, including, but not limited to, their false and faux *pro bono* cases, reporting of same, and quashing Plaintiff's audit of their unlawful conduct by terminating Plaintiff just seven (7) days later.

SAC ¶ 592; *see also* ¶¶ 285-309. Plaintiff claims that she then raised Mr. De Palma's "misogynistic and discriminatory conduct" to Ms. Read in a subsequent conversation on May 9, 2022. *Id*. ¶ 332. Plaintiff also alleges that Mr. Feher and Ms. Read signed and/or endorsed the EEOC Response on behalf of Thompson Hine in February 2023. *Id*. ¶¶ 100, 635.

Based on these allegations, Plaintiff asserts twelve claims against various groupings of Defendants: sexual harassment, retaliation, and aiding and abetting claims under the NYSHRL and NYCHRL (Counts 1-6); whistleblower retaliation under NYLL § 740 (Count 7); defamation

---

[2] In a Complaint Plaintiff filed and signed (subject to Rule 11) in another case, she affirms she became a Florida resident on January 1, 2021. *See* Compl. ¶ 23, *Brazzano v. Jackson*, C.A. No. 23-23148 (D. N.J.). A copy of that Complaint is attached to the Declaration of Carolyn Fairless as Ex. B.

(Count 8); abuse of process (Count 9); negligent infliction of emotional distress (Count 10); and hostile work environment and retaliation under Title VII (Counts 11-12).

### C. The Mandatory Arbitration Clause

Effective January 1, 2021, Plaintiff signed her annual letter agreement with Thompson Hine governing her relationship with the Firm and its partners (the "Letter Agreement"). *See* Ex. A to the Declaration of Carolyn Fairless ("Decl.").[3] As Plaintiff concedes, the Letter Agreement incorporates the terms of the Firm's Partnership Agreement. SAC ¶ 515; Ex. A to Decl., Letter Agreement at 1 ("Your acceptance and approval of this letter agreement shall evidence the fact that you continue to be a party to the Firm's Partnership Agreement, as amended and restated to date."); Ex. 1 to SAC, Partnership Agreement ¶ 4.2(b) (providing that the "relationship between each Income Partner and the Firm will be governed by this Agreement and the written agreement between the Income Partner and the Firm as in effect from time to time").

Among other provisions, the Partnership Agreement includes a broad and binding agreement to arbitrate "[a]ny dispute, claim, or controversy arising out of (a) this Agreement, (b) the relationship of the parties to this Agreement as Partners *inter se*, or (c) any breach of this Agreement[.]" Ex. 1 to SAC, Partnership Agreement ¶ 17. The mandatory arbitration provision further provides that any arbitration shall be "administered by the American Arbitration Association in accordance with its Commercial Arbitration rules" and shall "take place in Cleveland, Ohio[.]" *Id.*

As for the term of the Letter Agreement, Paragraph 6 expressly provides that it continues to apply until the earlier of Plaintiff signing another letter agreement; her termination; or a decision

---

[3] The Letter Agreement is incorporated by reference into the SAC. SAC ¶¶ 511-20. Even if it were not incorporated by reference, the Court may consider documents outside the pleadings on a motion to compel arbitration. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

by the Firm's Executive Committee to modify the agreement. Ex. A to Decl., Letter Agreement at ¶ 6.

## **ARGUMENT**

### I. **PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION.**

Under the Federal Arbitration Act ("FAA"),[4] an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Murphy Oil USA, Inc.,* 138 S.Ct. 1612, 1621 (2018); *see also Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 67-69 (2010) (enforcing provision delegating to the arbitrator the issue of "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

In deciding a motion to compel arbitration, courts evaluate two questions. First, "courts must . . . determine 'whether the parties agreed to arbitrat[ion].'" *Foran v. Nat'l Football League,* No. 1:18-cv-10857 (ALC), 2019 WL 2408030, at *2 (S.D.N.Y. June 7, 2019) (Carter, J.) (citations omitted). If there is a binding arbitration agreement, courts next "must decide 'whether the issue

---

[4] The Federal Arbitration Act governs the Partnership Agreement because the Agreement "is a contract affecting interstate commerce[.]" *Buchman v. Weiss*, No. 08 Civ. 5453(RJS), 2009 WL 2044615, at *2 (S.D.N.Y. July 15, 2009). *See also, e.g.*, *Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*, No. 03 Civ. 929 (RCC), 2004 U.S. Dist. LEXIS 22183, 2004 WL 2471372, at *3-5 (S.D.N.Y. Nov. 3, 2004) (applying the FAA to a partnership agreement with an arbitration clause).

of arbitrability is for the court or for the arbitrator.'" *Id.* at *2 (citations omitted). If arbitrability is reserved for the arbitrator, that ends the analysis and a court must grant the motion to compel arbitration. *See id.* at *3; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

Here, Plaintiff bound herself to the Partnership Agreement's mandatory arbitration clause when she executed the Letter Agreement. The clause both incorporates the AAA's rules empowering the arbitrator to decide arbitrability and is sufficiently broad, evincing the parties' clear intention to submit questions of arbitrability to the arbitrator. Having satisfied these threshold requirements, Defendants' motion should be granted and this matter stayed pending any arbitration.

### A. Plaintiff Is Bound by the Arbitration Provision in the Partnership Agreement.

The relevant agreements establish that Plaintiff agreed to be bound by a mandatory arbitration provision. Plaintiff signed and executed the Letter Agreement, which bound Plaintiff as a party to the Partnership Agreement. *See* Ex. A to Decl., Letter Agreement at 1 ("Your acceptance and approval of this letter agreement shall evidence the fact that you continue to be a party to the Firm's Partnership Agreement, as amended and restated to date."). The Partnership Agreement, in turn, includes a broad agreement to arbitrate any disputes arising out of the Agreement or the relationship between partners of the Firm. Ex. 1 to SAC, Partnership Agreement, ¶ 17. In plain terms, Plaintiff agreed to be bound by a broad, mandatory arbitration provision.

The fact that Plaintiff claims that she did not review the Partnership Agreement (and thus its mandatory arbitration provision) before signing the Letter Agreement is irrelevant. SAC ¶ 513.

Under Ohio law,[5] "parties to contracts are presumed to have read and understood them and . . . a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 432, 2007- Ohio-257, ¶ 10 (citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14 (1990) and *DeCamp v. Hamma*, 29 Ohio St. 467, 471-472 (1876)). That presumption is particularly warranted here given Plaintiff's years as a practicing attorney and self-proclaimed "exceptional legal acumen." SAC ¶ 426.

Plaintiff's allegation that the Letter Agreement "expired" on December 31, 2021 is equally baseless. SAC ¶ 516. Paragraph 6 of the Letter Agreement says that it "is anticipated that you will continue as an Income Partner pursuant to this letter agreement until *at least* December 31, 2021," and expressly provides that the Letter Agreement "continue[s] to apply" until a new agreement is signed, her employment is terminated, or the Executive Committee otherwise determines. Ex. A to Decl., Letter Agreement at ¶ 6. Plaintiff alleges none of these and, therefore, the Letter Agreement remained in effect after December 31, 2021.

### B. The Parties Delegated the Issue of Arbitrability to the Arbitrator.

Courts next assess whether the issue of arbitrability—*i.e.*, the scope or enforceability of the arbitration provision—is an issue for the Court or the arbitrator to decide. "In determining who should decide arbitrability, courts must examine the parties' arbitration agreement to determine if

---

[5] Whether an agreement to arbitrate exists is a question of state law—here, Ohio law. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996); Partnership Agreement ¶ 20 (Ohio choice of law provision). However, the same rule applies under other jurisdictions Plaintiff might suggest apply, including Florida and New York. *E.g.*, *All Fla. Sur. Co. v. Coker*, 88 So.2d 508, 511 (Fla. 1956) ("To permit a party, when sued on a written contract, . . . to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts."); *Sobel v. Appomattox Advisory Inc.*, 2020 N.Y. Misc. LEXIS 2249, at *6 (Sup. Ct. N.Y. Cnty. May 17, 2020) (holding that "signatories to a contract who fail to read its provisions and do not provide a valid excuse for same are nonetheless bound to the contract they signed because they are presumed to know its contents and to have assented to such terms as the contract contains").

there is clear and unmistakable evidence that they agreed to arbitrate arbitrability." *Foran*, 2019 WL 2408030, at *2. As this Court has observed, courts have found "clear and unmistakable evidence" of parties' intention to arbitrate arbitrability when there is "[b]road language expressing an intention to arbitrate all aspects of all disputes[.]" *Id.* (quoting *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019)). "Similarly, courts have concluded if 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Id.* (quoting *Contec Corp. v. Remote Sol.*, Co., 398 F.3d 205, 208 (2d Cir. 2005)). *See also, e.g.*, *Southside Hosp. v. New York State Nurses Ass'n*, 732 F. App'x 53, 55 (2d Cir. 2018) (same); *Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*, 626 F. App'x 303, 305-06 (2d Cir. 2015) (same).

Both are the case here. Plaintiff agreed to arbitrate all disputes arising under the Partnership Agreement or between Partners *inter se*, and this language is sufficiently broad. *See, e.g.*, *Foran*, 2019 WL 2408030, at *2 ("Because these arbitration agreements seek to encompass any claims related to the Agreements or the security representatives' services, they are sufficiently broad."); *Blash v. BCS Placements, LLC*, No. 19-cv-6321 (AJN), 2020 WL 2832777, at *4 (S.D.N.Y. May 31, 2020) (holding that an agreement covering "all claims, disputes and other matters in question arising out of, or relating to, this letter agreement" reflected the "parties' clear intent to arbitrate issues of arbitrability"). And the Partnership Agreement expressly incorporates the procedures of the AAA, which provide for issues of arbitrability to be decided by the AAA. *Foran,* 2019 WL 2408030, at *7 ("[T]he incorporation of the AAA rules necessitates that an arbitrator, as opposed to this Court, decide arbitrability."); *see also Henry Schein,* 139 S.Ct. at 528 ("The rules of the [AAA] provide that arbitrators have the power to resolve arbitrability questions."); Commercial

Arbitration Rules and Mediation Procedures, Rule 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.").

For these reasons, any issues raised by Plaintiff concerning the scope, validity, or enforceability of the arbitration clause in the Partnership Agreement must be heard by the arbitrator and are not a basis for avoiding application of the Partnership Agreement's binding arbitration provision.

### C. Even if the Court Were to Decide Arbitrability, Plaintiff's Claims Are Plainly Arbitrable.

Even if the Court, rather than the arbitrator, were empowered to determine arbitrability, all of Plaintiff's claims are arbitrable. The arbitration clause in the Partnership Agreement broadly covers "[a]ny dispute, claim, or controversy arising out of [] this Agreement [or] the relationship of the parties to this Agreement as Partners inter se." The Agreement, therefore, plainly encompasses Plaintiff's claims, each of which arises from the relationship between Plaintiff and Defendants Mr. De Palma, Mr. Feher, and Ms. Read as partners of Thompson Hine. *Local Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023) (holding that "[o]rdinary principles of contract law guide the inquiry into whether . . . the parties consented to arbitrate a particular dispute"). And to the extent the Partnership Agreement is deemed ambiguous as to the scope of arbitrability, the Court "may apply a presumption of arbitrability" where, as here, the clause is sufficiently broad. *Id.* at 114 (internal quotation marks omitted); *see also, e.g.*, *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (doubts concerning whether claims fall within the scope of the arbitration clause "should be resolved in favor of arbitration"). Plaintiff agreed to bring any claims arising from the Partnership Agreement or her

relationship to other Thompson Hine partners in binding arbitration. She cannot circumvent that agreement now by suing in federal court.

## II.     THE EFAA DOES NOT APPLY TO PLAINTIFF'S CLAIMS.

Contrary to Plaintiff's assertions, the EFAA does not apply to Plaintiff's claims here. Section 402(a) of the EFAA provides that "at the election of the person alleging conduct constituting a sexual harassment dispute," no pre-dispute arbitration agreement shall be valid or enforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Section 401(4), in turn, defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4).

Here, the EFAA does not apply for two reasons. First, the EFAA only applies to harassment claims that "arise[] or accrue[] on or after the date of enactment of this act." *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022) (quoting EFAA § 3). In other words, the EFAA is not a retroactive statute. Plaintiff cannot invoke the EFAA to avoid arbitration here for the simple reason that, to the extent she actually alleges sexual harassment-related claims, they all arose well before March 3, 2022 (the EFAA's date of enactment). Indeed, Plaintiff does not allege a single specific instance of sexual harassment that took place after 2016. *E.g.*, SAC ¶¶ 218-220 (alleging that her harassment occurred prior to Gretchen Carlson suing Roger Ailes in 2016). Any inference that Mr. De Palma subjected Plaintiff to harassment in the Firm's New York office after March 3, 2022 is further belied by the fact that Plaintiff confirms that she "avoided De Palma like the plague." *Id.* ¶¶ 223, 417-18. And because Plaintiff moved to Florida in January, 2021 and does not allege that she had any contact at all with Mr. De Palma after her move, she could not have been harassed "on or after" March 3, 2022.

The only acts Plaintiff alleges that occurred *after* March 3 are her April 29, 2022 termination and the allegedly defamatory EEOC response. Neither allegation plausibly relates to sexual harassment. To the contrary, Plaintiff specifically and repeatedly alleges that she was terminated and defamed because "she initiated and was in the process of conducting a firmwide *pro bono* expense and case audit" and made a complaint that Mr. De Palma's handling of a *pro bono* matter violated firm policy. *Id*. ¶ 593. Plaintiff claims that, after raising these issues, Mr. De Palma "became incensed and enraged by Plaintiff's oversight of the New York *pro bono* matters" and that she was "terminated (asked to resign) just seven (7) days" later as a result. *Id*. ¶ 308-09; *see also, e.g.*, *id*. ¶ 285 (Mr. De Palma's alleged "fury" which led to Plaintiff's termination "was triggered by her denial of approval for a *pro bono* expense in mid-March 2022"); ¶ 330 ("the decision to terminate Plaintiff [came] just seven days after her *pro bono* audit email, which had evidently incensed DePalma and sparked his egotistical frenzied reaction"); ¶ 467 ("the timing of [Thompson Hine's] alleged [termination] decision perfectly aligns with Plaintiff's complaints regarding DePalma's dubious fraud on the firm in his fake *pro bono* case, just a week before Plaintiff was terminated."). These are not sexual harassment allegations and do not operate to bring Plaintiff's claims within the ambit of the EFAA.

Plaintiff's handful of conclusory, generalized, and inconsistent allegations that her termination also somehow related to harassment do not change this outcome. *E.g.*, *id*. ¶ 317 (alleging that she was specifically terminated because of her *pro bono* audit, but adding a generalized allegation to Mr. De Palma's "decade long sexual harassment and gender discrimination against Plaintiff"). "[W]here a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589 (JMF),

2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016) (internal quotation marks omitted). That is even more true when generalized allegations are contradicted by more specifically pled facts. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal where "attenuated allegations" supporting the claim were "contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice").

Here, Plaintiff has pleaded specifically, and repeatedly, that she was terminated for allegedly blowing a whistle on Mr. De Palma's purported breach of the Firm's *pro bono* policies, one week before her alleged termination. That is not the type of dispute covered by the EFAA and it does not allow Plaintiff to avoid the consequences of her agreement to arbitrate. To hold otherwise would dramatically expand the potential scope of the EFAA and frustrate the legislation's clear intention not to negate arbitration agreements based on years-old sexual harassment allegations. That is not the law, nor should it be.

Second, courts have consistently held that in order to constitute a sexual harassment claim under the EFAA, the claim "must be sufficiently pled to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Mitura v. Finco Servs., Inc.*, No. 23-CV-2879 (VEC), 2024 WL 232323, at *3 (S.D.N.Y. Jan. 22, 2024). *See also, e.g.*, *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 567 (S.D.N.Y. 2023). Plaintiff has not plausibly alleged a sexual harassment claim, for the reasons set forth in Defendants' Motion to Dismiss for Failure to State a Claim filed contemporaneously herewith. Stripped of their rhetoric, Plaintiff's threadbare factual allegations assert that Mr. De Palma excluded her from billable work and either spoke to or near Plaintiff about gender-neutral topics—not facts suggesting that his actions had anything to do with her gender. Under the NYCHRL (and Title VII and the NYSHRL), generalized hostility or uncivilized behavior is not actionable and Plaintiff fails to allege facts sufficient to demonstrate a

discriminatory motive. *See, e.g., Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Because Plaintiff fails to plausibly allege any harassment claim, the EFAA does not apply, and Plaintiff's mandatory arbitration provision must be enforced.

## III.  THE ACTION SHOULD BE STAYED PENDING ARBITRATION.

The FAA requires courts to issue a stay "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3. Since Plaintiff is required to arbitrate her claims against Defendants, the Court should stay all further proceedings pending the conclusion of the arbitration. *See Katz v. Cellco Partnership,* 794 F.3d 341, 345 (2d Cir. 2015); *Foran,* 2019 WL 2408030, at *3.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to compel arbitration and stay this action pending arbitration.

Dated:  July 12, 2024                           Respectfully submitted,

*s/ Carolyn J. Fairless*
Carolyn J. Fairless (Admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:  303-244-1852
Email:  fairless@wtotrial.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I electronically filed the foregoing ***Defendants'
Memorandum in Support of Their Motion to Compel Arbitration and For a Stay Pending
Arbitration*** with the Clerk of Court using the CM/ECF system, which will send notification to all
parties of record herein.

*s/ Carolyn J. Fairless*