**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REBECCA BRAZZANO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THOMPSON HINE LLP, RICHARD ANTHONY DE PALMA (in his individual and professional capacities), DEBORAH ZIDER READ (in her individual and professional capacities), and THOMAS LAWRENCE FEHER (in his individual and professional capacities)<br><br>　　　　　　Defendants. | Case No.: 24-cv-01420 (ALC)(KHP) |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS'**</u>
<u>**RULE 12(b)(6) MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

SUMMARY OF RELEVANT ALLEGATIONS ............................................................... 1

    A.    Parties .............................................................................................................. 1

    B.    Plaintiff's Tenure at the Firm .......................................................................... 1

    C.    Plaintiff's Termination ..................................................................................... 3

    D.    Procedural History and Summary of Claims .................................................. 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    Plaintiff Fails to Plausibly State a Claim for Sexual Harassment ...................... 7

    a.    Plaintiff Does Not Plausibly Allege that She Was Treated Less Well "Because of" Her Gender ................................................................................................ 8

    b.    Plaintiff's Allegations Do Not Amount to Actionable Mistreatment ...................... 10

    c.    Plaintiff Does Not Plausibly Allege that She Was Subject to Severe and Pervasive Conduct As Required Under Title VII ...................................... 12

II.    Plaintiff Fails to State a Claim of Sex Discrimination Under Title VII, the NYSHRL, and the NYCHRL ............................................................................. 13

III.    Plaintiff Fails to Plausibly Allege a Claim of Retaliation ............................... 13

    a.    Plaintiff Fails to Plausibly Allege Participation in Protected Activity Known to Mr. Feher or Ms. Read ............................................................................. 15

    b.    Plaintiff Fails to Plausibly Allege "But For" Causation .............................. 17

IV.    Plaintiff's Derivative New York Aiding and Abetting Claims Fail ................. 18

V.    Plaintiff Fails to Plausibly Allege a Claim for Defamation ............................ 21

VI.    Plaintiff Fails to Plausibly Allege a Claim for Abuse of Process ................... 23

VII.    Plaintiff Fails to Plausibly Allege a Claim for Negligent Infliction of Emotional Distress ........................................................................................................... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfano v. Costello,*
    294 F.3d 365 (2d Cir. 2002)................................................................9, 13

*Almazan v. Almazan,*
    No. 14-cv-311 (AJN), 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015) .........................7

*Anderson v. Davis Polk & Wardwell LLP,*
    850 F. Supp. 2d 392 (S.D.N.Y. 2012).......................................................11

*Ann-Margret v. High Soc'y. Magazine, Inc.,*
    498 F. Supp. 401 (S.D.N.Y. 1980) ..........................................................24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................1, 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .........................................................................6

*Benzinger v. Lukoil Pan Ams., LLC,*
    447 F. Supp. 3d 99 (S.D.N.Y. 2020)........................................................17

*Bernstein v. Seeman,*
    593 F. Supp. 2d 630 (S.D.N.Y. 2009).......................................................21

*Bliss v. MXK Rest. Corp.,*
    220 F. Supp. 3d 419 (S.D.N.Y. 2016).......................................................14

*Brown v. Maxwell,*
    929 F.3d 41 (2d Cir. 2019)..................................................................22

*Caro Capital, LLC v. Koch,*
    No. 20-cv-6153 (LJL), 2021 WL 1595843 (S.D.N.Y. Apr. 23, 2021) ...................22

*Chandok v. Klessig,*
    632 F.3d 803, 814 (2d Cir. 2011) ..........................................................21

*Chavez v. Suburban Bus Transp.,*
    No. CV 12-2371 (LDW) (ARL), 2014 WL 12843902 (E.D.N.Y. May 19,
    2014) ......................................................................................24

*Clark Cnty. Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)........................................................................12, 18

*Colon v. Fashion Inst. of Tech.*,
    983 F. Supp. 2d 277 (S.D.N.Y. 2013)....................................................................10

*Cornetta v. Town of Highlands*,
    434 F. Supp. 3d 171 (S.D.N.Y. 2020)....................................................................16

*Falcon v. City Univ. of N.Y.*,
    263 F. Supp. 3d 416 (E.D.N.Y. 2017) .....................................................................7

*Farmer v. Shake Shack Ents., LLC*,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020).............................................................19, 20

*Farzan v. Wells Fargo Bank*,
    No. 12 Civ. 1217(RJS)(JLC), 2013 WL 474346 (S.D.N.Y. Jan. 25, 2013) .....................22, 23

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
    525 F. App'x 26 (2d Cir. 2013) ............................................................................16

*Fried v. LVI Servs., Inc.*,
    No. 10 Civ. 9308(JSR), 2011 WL 2119748 (S.D.N.Y. May 23, 2011)....................................19

*Friedman v. Self Help Cmty. Servs., Inc.*,
    647 F. App'x 44 (2d Cir. 2016) ............................................................................21

*Giarrizzo v. Holder*,
    No. 07-CV-0801, 2011 WL 496945 (N.D.N.Y. Oct. 19, 2011) ...............................................14

*Guity v. Uniondale Union Free School Dist.*,
    No. 12-CV-1482 (SJF)(AKT), 2014 WL 1330636 (Mar. 31, 2014) ........................................15

*Haggood v. Rubin & Rothman, LLC*,
    No. 14-cv-34L (SJF)(AKT), 2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014) ..........................17

*Henry v. NYC Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014)............................................................... passim

*Hopper v. Banana Republic, LLC*,
    No. 07 Civ. 8526(WHP), 2008 WL 490613 (S.D.N.Y. Feb. 25, 2008) ..................................25

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007) ...................................................................................6

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)....................................................................16

*Jeri v. Great Neck Cleaner & Hand Laundry, Inc.*,
    No. 2:18-cv-01089 (ADS)(ARL), 2019 WL 718541 (E.D.N.Y. Feb. 20, 2019)....................24

*Jimenez v. City of N.Y.*,
    605 F. Supp. 2d 485 (S.D.N.Y. 2009)..................................................................................14

*Johnson v. Everyrealm, Inc*.,
    657 F. Supp. 3d 535 (S.D.N.Y. 2023).................................................................................7

*Johnson v. Morrison & Foerster LLP*,
    No. 14-cv-428 (JMF), 2015 WL 845723 (S.D.N.Y. Feb. 26, 2015) .....................................10

*Julien J. Studley, Inc. v. Lefrak*,
    50 A.D.2d 162, 376 N.Y.S.2d 200 (App. Div. 2d Dept. 1975) .............................................24

*Kaytor v. Elec. Boat Corp.*,
    609 F.3d 537 (2d Cir. 2010)...............................................................................................12

*Kelly v. Albarino*,
    485 F.3d 664 (2d Cir. 2007)...............................................................................................22

*Kesner v. Dow Jones & Co*.,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021).................................................................................21

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
    120 A.D.3d 18 (N.Y. 1st Dep't 2014)..................................................................................11

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
    No. 11611, 2013 WL 9959136 (N.Y. App. Div. Sept. 12, 2013) ..........................................11

*Kraiem v. JonesTrading Inst. Servs. LLC*,
    571 F. Supp. 3d 53 (S.D.N.Y. 2021)...................................................................................18

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*.,
    202 F. Supp. 2d 126 (S.D.N.Y. 2002).................................................................................22

*Llanos v. City of N.Y.*,
    129 A.D.3d 620 (1st Dep't 2015) .........................................................................................8

*Lue v. JPMorgan Chase & Co*.,
    No. 19-cv-9784 (KPF), 2021 WL 1108558 (S.D.N.Y. Mar. 23, 2021)..................................23

*McHenry v. Fox News Network, LLC*,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020).............................................................................8, 20

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)..................................................................................8, 9, 10, 13

*Mitchell v. Macy's, Inc*.,
    No. 17 Civ. 1845 (AT) (SN), 2018 WL 9918137 (S.D.N.Y. Sept. 25, 2018) ........................11

*Nachmany v. FXCM, Inc.*,
    No. 16 Civ. 225(DAB), 2020 WL 178413 (S.D.N.Y. Jan. 9, 2020)........................................9

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
    165 F. Supp. 3d 51 (S.D.N.Y. 2016)......................................................................................25

*Pedi v. Gov't Emps. Ins. Co.*,
    No. 11 CV 5977(VB), 2012 WL 6918388 (S.D.N.Y. Dec. 10, 2012)....................................6

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)....................................................................................................8

*Presbyt. Healthcare Servs. v. Goldman Sachs and Co.*,
    No. 15-cv-6579 (AJN), 2017 WL 1048088 (S.D.N.Y. Mar. 17, 2017)....................................6

*Prince v. Cablevision Sys. Corp.*,
    No. 04 Civ.8151(RWS), 2005 WL 1060373 (S.D.N.Y. May 6, 2005) ...................................13

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998) (abrogated on other grounds) .....................................................12

*Robinson v. Dibble*,
    613 F. App'x 9 (2d Cir. 2015) ................................................................................................12

*Robles v. Goddard Riverside Community Ctr.*,
    No. 08 Civ. 4856(LTS)(JCF), 2009 WL 1704627 (S.D.N.Y. June 17, 2009) ........................19

*Rogers v. Fashion Inst. of Tech.*,
    No. 14 Civ. 6420 (AT), 2016 WL 889590 (S.D.N.Y. Feb. 26, 2016) ..............................10, 18

*Rossbach v. Montefiore Med. Ctr.*,
    No. 19cv5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021)......................................19

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
    No. 14-CV-4394 (AJN), 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)......................................7

*Rubin v. New York City Bd. of Educ.*,
    No. 20-CV-10208 (LGS) (KHP), 2023 WL 1972729 (S.D.N.Y. Jan. 6, 2023) ....................23

*Sanderson v. Leg Apparel LLC*,
    No. 1:19-cv-8423-GHW, 2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) .........................22, 23

*Simon v. City of N.Y.*,
    No. 17 CIV 9575 (DAB), 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019)................................10

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001).....................................................................................................18

*Talwar v. Staten Island Univ. Hosp.*,
    610 F. App'x 28 (2d Cir. 2015) ........................................16

*Thompson v. Morris Hts. Health Ctr.*,
    No. 09 Civ. 7239(PAE)(THK), 2012 WL 1145964 (S.D.N.Y. Apr. 6, 2012)........................14

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013) ........................................7

*Van Zant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996)........................................13

*Vera v. Donado Law Firm*,
    No. 17cv03123 (LGS) (DF), 2019 WL 3306117 (S.D.N.Y. June 19, 2019)........................19

*Virola v. XO Communs., Inc.*,
    No. 05-CV-5056 (JG)(RER), 2008 WL 1766601 (E.D.N.Y. Apr. 15, 2008)........................20

*Vito v. Bausch & Lomb Inc.*,
    403 F. App'x 593 (2d Cir. 2010) ........................................12

*Williams v. N.Y.C. Hous. Auth.*,
    61 F.4th 55 (2d 2023)........................................9

*Williams v. N.Y.C. Hous. Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ........................................8

*Williams v. Williams*,
    246 N.E.2d 333 (N.Y. 1969)........................................23

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002)........................................8

*Zoulas v. N.Y.C. Dep't of Educ.*,
    400 F. Supp. 3d 25 (S.D.N.Y. 2019) (Woods, J.) ........................................7

**Statutes**

NYCHRL, N.Y.C. Admin. Code § 8-107(7) ........................................14

NYCHRL, N.Y.C. Admin. Code §§ 8-502 *et seq.* ........................................ passim

NYSHRL, N.Y. Exec. Law §§ 290 *et seq.* ........................................ passim

Title VII of the Civil Rights Act of 1964, 2 U.S.C. § 2000e ........................................ passim

**Other Authorities**

Federal Rule of Civil Procedure 8 ........................................6

Federal Rule of Civil Procedure 12 ...........................................................................................6, 10

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................1, 6

Federal Rule of Civil Procedure 12(c) ..........................................................................................13

## INTRODUCTION

Defendants Thompson Hine LLP ("Thompson Hine" or the "Firm"), Deborah Read, Thomas Feher, and Richard De Palma (together with Thompson Hine, the "Defendants") respectfully submit this memorandum of law in support of their Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. When its 668 paragraphs are stripped of all conclusory, argumentative, and non-factual allegations, the Second Amended Complaint fails to state any plausible claims. Whether the reason for Plaintiff's termination was her poor productivity as the Firm explained to the Equal Employment Opportunity Commission ("EEOC"), or instead a dispute over *pro bono* work as Plaintiff asserts, the facts alleged do not amount to unlawful conduct. Plaintiff's claims "stop[] short of the line between possibility and plausibility," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and they should be dismissed.

## SUMMARY OF RELEVANT ALLEGATIONS

### A.  Parties

Defendant Thompson Hine is an Ohio limited liability partnership with its principal office located in Cleveland, Ohio. Second Am. Compl. ("SAC") ¶ 30. Defendants Thomas Feher ("Mr. Feher") and Deborah Read ("Ms. Read") are partners working primarily in the Cleveland office. *Id.* ¶¶ 38-39, 80-81. Defendant Richard De Palma ("Mr. De Palma") is a partner working primarily in the Firm's New York office. *Id.* ¶¶ 33-34. Plaintiff is a former partner at Thompson Hine who worked for the Firm from 2008-2022. *Id.* ¶ 28.

### B.  Plaintiff's Tenure at the Firm

The gravamen of Plaintiff's current pleading is that, while she was a partner at the Firm, (1) Mr. De Palma created a discriminatory workplace culture by making "lewd" comments in her presence and excluding Plaintiff from billable work and social gatherings; (2) Thompson Hine and Ms. Read failed to investigate Plaintiff's unspecified and post-termination complaints about Mr.

De Palma; (3) after Plaintiff left the Firm and filed a Charge of Discrimination with the EEOC and the NYS Commission of Human Rights (the "EEOC Charge"), the Firm submitted, Mr. Feher signed, and Ms. Read "endorsed" an allegedly defamatory Position Statement in response (the "EEOC Response"); and (4) the Firm and Ms. Read negligently inflicted emotional distress by terminating Plaintiff's employment on a work day when she was finalizing a court filing.

With respect to Mr. De Palma, Plaintiff alleges that, prior to "the end of 2010," Mr. De Palma encouraged a "boys club demeanor" in the New York office and discriminated against her by requiring her to advise him when she left the office. SAC ¶¶ 169-71. Plaintiff alleges he continued his inappropriate behavior in 2011 following his elevation to Vice Chair of the New York office's litigation group (*id*. ¶¶ 183, 186). Specifically, Plaintiff alleges that Mr. De Palma:

- Told Plaintiff that "judges know lawyers who provide legal services are working on a *pro bono* basis, and it's like getting jerked off by a judge." *Id*. ¶¶ 5, 192.
- Required Plaintiff to "report her whereabouts." *Id*. ¶¶ 5, 171.
- "[R]ecount[ed] his weekend escapades making beer and playing in his boy band" in Plaintiff's presence. *Id*. ¶¶ 5, 177.
- Excluded Plaintiff from billable work and "invitation only networking/drinking parties" in his office. *Id*. ¶¶ 5, 96, 182, 186, 265.
- "[S]olicit[ed] Plaintiff's company for [a] shopping excursion" to "impress[] a female client." *Id*. ¶ 171.
- "[B]ragg[ed] about his second marriage to his former associate." *Id*.
- "[K]iss[ed] other female lawyers in his entourage 'hello' at firm meetings." *Id*.

Plaintiff also alleges that, before she became a partner in 2013, Mr. De Palma advised her he would not recommend her for partnership (*id*. ¶¶ 190-197), though he was unsuccessful in opposing her promotion. *Id*. ¶¶ 198-210. Plaintiff thereafter generally "avoided DePalma like the plague." *Id*. ¶¶ 223, 417-18.

All of Plaintiff's specific allegations of De Palma's supposed mistreatment of her took place in 2016 or earlier. *See id*. ¶¶ 218-220 (alleging that "the #MeToo phrase had not yet entered the lexicon" and "Gretchen Carlson had not yet sued then Fox News chairman and CEO Roger

Ailes for harassment, discrimination and retaliatory conduct (2016)"). Plaintiff's post-2016 allegations against Mr. De Palma consist of non-specific assertions that she lacked work because of his "misogynistic values," "discrimination," "retaliation," or "misuse of power," as opposed to her own failure to originate work or declining internal demand for her work. *See, e.g.*, *id*. ¶¶ 187, 215, 229, 232, 353, 366, 402. Plaintiff also alleges that she reported Mr. De Palma's supposed "unlawful treatment" of her to Ms. Read in unspecified communications "throughout the years," and that Ms. Read "did precisely and exactly nothing" in response. *Id.* ¶¶ 225-26, 262-66. At the same time, Plaintiff also inconsistently alleges that "she could not accuse an equity partner of discrimination, harassment, or any other legally cognizable theory," and that it would have been a "futile endeavor" to lodge a complaint of sexual harassment or gender discrimination against Mr. De Palma. *Id*. ¶¶ 217, 253.

### C. <u>Plaintiff's Termination</u>

Plaintiff alleges that in March 2022, while she was a Florida resident, she initiated a firmwide *pro bono* expense and case audit, and concluded that Mr. De Palma's handling of a *pro bono* matter violated "firm policy." *Id*. ¶ 593. She then sent an email on April 22, 2022, to all of the Firm's New York attorneys with open *pro bono* matters, instructing them that she was now to be designated as the "billing attorney" for those matters, and that the failure to heed her direction would lead to their cases being closed and time entries disabled. *Id*. ¶¶ 304-307. Plaintiff posits that Mr. De Palma "seemingly became incensed and enraged," by her email. *Id*. ¶¶ 308, 330. She further posits that, because the Firm's Executive Committee (through Ms. Read) asked her to resign just seven days later, "it is no leap" to conclude that Mr. De Palma (who is not on the Executive Committee) somehow "engineer[ed]" her firing. *Id*. ¶¶ 16, 308-309, 362.

Plaintiff does not dispute that her productivity was unacceptably low for years leading up to her termination; indeed, she herself characterized her hours as "dismal" in self-evaluations she

submitted to the Firm's Executive Committee in the two years preceding her termination. Ex. 2 to SAC at 6, 9. She also acknowledges that several members of the Executive Committee are women. SAC ¶ 463. But she asserts, again without support, that the Executive Committee's unanimous decision to end her relationship with the Firm because of consistently low productivity was "pretext." *Id*. ¶¶ 310, 365-66.

Plaintiff claims that, two weeks *after* being informed of the Executive Committee's decision, she specifically raised Mr. De Palma's "misogynistic and discriminatory conduct" in a conversation with Ms. Read. *Id*. ¶ 332. Plaintiff alleges that Thompson Hine conducted a "sham investigation" of her allegation that "yielded precisely nothing." *Id*. ¶¶ 334, 362.

In July 2022, Plaintiff filed her EEOC Charge, alleging that Thompson Hine had engaged in gender discrimination under federal and New York law. *Id.* ¶ 128.[1] Thompson Hine submitted its EEOC Response on February 23, 2023. *Id.* ¶ 129. Mr. Feher signed it as counsel for the Firm. *Id.*, Ex. 2. Plaintiff alleges that certain statements in the EEOC Response, including that "Plaintiff got herself and the firm fired" from an engagement and "that she was known as a 'heavy biller'" were defamatory. *Id.* ¶ 597. Plaintiff does not allege that Ms. Read authored or signed the EEOC Response or otherwise took any specific actions in connection therewith, but claims the EEOC Response was nevertheless "facilitated with Read's apparent endorsement." *Id.* ¶ 635.

Based on these allegations, Plaintiff asserts twelve claims against various groupings of Defendants: sexual harassment, retaliation, and aiding and abetting claims under the NYSHRL and NYCHRL (Counts 1-6); whistleblower retaliation under NYLL § 740 (Count 7); defamation

---

[1] A copy of Plaintiff's EEOC Charge is attached as Ex. C to the Declaration of Carolyn Fairless. The Second Amended Complaint does not address why the EEOC Charge was filed with the EEOC's New York office, but at the time of the Firm's decision, Plaintiff was living and working in Florida.

(Count 8), abuse of process (Count 9), negligent infliction of emotional distress (Count 10), and

hostile work environment and retaliation under Title VII (Counts 11-12). Although the allegations

overlap across claims, Plaintiff's claims can be categorized into 7 distinct groups and summarized

in general terms as follows:

| Claim Category | Count(s) | Defendant(s) |
|---|---|---|
| Hostile Work Environment/ Sexual Harassment | 1, 2, 11 | **De Palma** and **Thompson Hine** under the NYSHRL and NYCHRL; **Thompson Hine only** under TVII |
| Sex Discrimination | 2, 11 | **De Palma** and **Thompson Hine** under the NYSHRL and NYCHRL; **Thompson Hine only** under TVII |
| Aiding and Abetting | 3, 4 | **All Defendants** for aiding and abetting violations of the NYSHRL and NYCHRL |
| Retaliation | 5, 6, 7, 12 | **All Defendants** under the NYSHRL, NYCHRL, and NYLL Section 740; **Thompson Hine only** under TVII |
| Defamation | 8 | **Feher** and **Thompson Hine** under NY common law |
| Abuse of Process | 9 | **Read**, **Feher**, and **Thompson Hine** under NY common law |
| Negligent Infliction of Emotional Distress | 10 | **Read** and **Thompson Hine** under NY common law |

Plaintiff's allegations of fact, even if true (they are not), do not come close to plausibly alleging

actionable claims against any of the Defendants.

## D. Procedural History and Summary of Claims.

On February 23, 2024, Plaintiff filed a 573-paragraph Verified Complaint asserting claims

against Thompson Hine, Mr. De Palma, Mr. Feher, and Ms. Read. ECF No. 1. On February 27,

2024, Plaintiff filed a 578-paragraph Amended Complaint against the same Defendants, asserting

substantially the same causes of action. ECF No. 9.

On May 17, 2024, the Defendants submitted letters seeking a conference with the Court in advance of moving to dismiss the Amended Complaint. ECF Nos. 40, 41. On May 31, the Court granted Defendants leave to file their motions without a conference. ECF No. 45.

On June 4, 2024, Plaintiff requested permission to file a motion for leave to amend her Amended Complaint. ECF No. 46. Defendants' response (ECF No. 48) consented to Plaintiff's request, noting that Plaintiff's Second Amended Complaint should comply with Rule 8 by focusing on factual allegations rather than unnecessary and inflammatory rhetoric. The Court so-ordered Defendants' June 6 letter on June 14. ECF No. 49.

Plaintiff filed her Second Amended Complaint (ECF No. 50) on June 21, 2024. Its 668 paragraphs span 108 pages, but still fail to plausibly allege that Defendants engaged in actionable, unlawful conduct. Accordingly, Defendants now move to dismiss the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).

## LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not accept as true "[l]egal conclusions, deductions or opinions couched as factual allegations.'" *Pedi v. Gov't Emps. Ins. Co.*, No. 11 CV 5977(VB), 2012 WL 6918388, at *2 (S.D.N.Y. Dec. 10, 2012) (alteration in original) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). Nor must a court credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

On a Rule 12 motion, the court may consider "documents incorporated by reference in the complaint," *Presbyt. Healthcare Servs. v. Goldman Sachs and Co*., No. 15-cv-6579 (AJN), 2017

WL 1048088, at *5 (S.D.N.Y. Mar. 17, 2017) (quotation omitted), and documents "integral to the complaint," meaning documents upon whose "terms and effect" the "complaint relies heavily." *Almazan v. Almazan*, No. 14-cv-311 (AJN), 2015 WL 500176, at *4 (S.D.N.Y. Feb. 4, 2015) (quotation omitted). If a document so considered "'contradict[s] allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true.'" *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394 (AJN), 2016 WL 439020, at *1 (S.D.N.Y. Feb. 3, 2016) (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)). Courts also may take judicial notice of NYSDHR filings. *Falcon v. City Univ. of N.Y.*, 263 F. Supp. 3d 416, 424 (E.D.N.Y. 2017) (considering state administrative records because plaintiff "ha[d] notice of those documents because she submitted them and received them").

Particularly relevant here, courts may not consider events occurring outside the relevant limitations periods in determining whether a plaintiff has satisfied the pleading standard. *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49–50 (S.D.N.Y. 2019) (Woods, J.) (dismissing discrimination and retaliation claims to the extent based on "alleged acts occurr[ing]" outside the limitations period).

## **ARGUMENT**

### I.    **Plaintiff Fails to Plausibly State a Claim for Sexual Harassment.**

Plaintiff's Second Amended Complaint is long on innuendo, hyperbole, and name calling. But these cannot substitute for facts, and Plaintiff's limited allegations of fact do not state a claim for sexual harassment, whether under state, city, or federal law. While the NYCHRL imposes a lower threshold for abusive conduct, Plaintiff must still establish that "she has been treated less well than other employees *because of her gender*" under federal, state, or city law. *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 553 (S.D.N.Y. 2023) (emphasis added) (citations omitted).

Plaintiff alleges conduct which might be characterized as unprofessional, but nothing that she alleges plausibly ties to her *gender*.

As noted by this Court, "district courts must be mindful that the NYCHRL is not a general civility code," *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76, 872 N.Y.S.2d 27 (1st Dep't 2009)) and it does not apply to conduct that "a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 111 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Williams*, 872 N.Y.S.2d at 41). Here, at most, Plaintiff complains that Mr. De Palma excluded her from billable work and either spoke to or near Plaintiff about gender-neutral topics—not facts suggesting that his actions had anything to do with her gender. Plaintiff therefore does not state a claim for sexual harassment or hostile work environment under any standard.

### a. Plaintiff Does Not Plausibly Allege that She Was Treated Less Well "Because of" Her Gender.

Plaintiff's claims fail at the outset—whether under state, city, or federal law—because there is no to link between Mr. De Palma's alleged conduct and her gender. To support a sexual harassment claim, a plaintiff must advance factual assertions that would demonstrate that the alleged harassment occurred because of a discriminatory motive. *Mihalik,* 715 F.3d at 110; *Llanos v. City of N.Y.*, 129 A.D.3d 620, 620 (1st Dep't 2015) (a "plaintiff's failure to adequately plead discriminatory animus is fatal to her claim of hostile work environment [under NYCHRL and NYSHRL]"). Mere conclusory allegations "characterizing the state of mind of another person" do not satisfy this standard. *See Wolff v. Rare Medium, Inc*., 210 F. Supp. 2d 490, 500 (S.D.N.Y. 2002); *see also Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 719 (2d Cir. 2013).

Plaintiff's speculative and conclusory assertion that she was subjected to sexual harassment because of her gender are not sufficient because the Second Amended Complaint is devoid of facts supporting an inference that Mr. De Palma's comments were about Plaintiff at all, much less that they were made *because of* her gender. *See Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (affirming dismissal, and holding facially-neutral comments only relevant where there is "some circumstantial or other basis for inferring that incidents []neutral on their face were in fact discriminatory").[2] The Second Amended Complaint alleges no more than that Mr. De Palma made a handful of comments over the course of a decade that were not even loosely related to Plaintiff's gender. These statements fall far short of stating an NYCHRL or NYSHRL claim. *See Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 70 (2d 2023) (considering totality of circumstances in assessing hostile work environment claim); *Mihalik*, 715 F.3d at 111 (same). Indeed, "[i]t is not enough" for a plaintiff to allege that she "has an overbearing or obnoxious boss. She must [allege] that she has been treated less well at least in part 'because of her [protected characteristic].'" *Mihalik*, 715 F.3d at 110. Although Plaintiff alleges, at best, that Mr. De Palma was an occasionally rude coworker with whom she had a poor working relationship, such allegations are not actionable because there is no allegation to suggest that her gender motived his alleged behavior.

Likewise, Plaintiff's allegation that Mr. De Palma "steer[ed] billable work to male attorneys to the exclusion of Plaintiff" is insufficient to support a claim of sexual harassment. Plaintiff's "subjective dissatisfaction with assignments does not constitute adverse employment

---

[2] *See also Nachmany v. FXCM, Inc*., No. 16 Civ. 225(DAB), 2020 WL 178413, at *1-2 (S.D.N.Y. Jan. 9, 2020) (finding allegations were not "because of" protected characteristic and granting motion to dismiss on NYCHRL, NYSHRL and Title VII claims where (1) defendant called plaintiff "a dick"; (2) "changed Plaintiff's computer background to an image of a 'naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy'"; and (3) "drew onto a photograph of Plaintiff a 'depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation onto Plaintiff's head'").

action" and does not establish that she was treated "less well" because of her gender. *Johnson v. Morrison & Foerster LLP*, No. 14-cv-428 (JMF), 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015). Her allegations with respect to work assignments fail to state a claim for sexual harassment for the same reasons discussed above: Plaintiff has not plausibly alleged that Mr. De Palma's alleged decision(s) not to staff her on certain matters was the result of a discriminatory motive. *See Rogers v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *6 (S.D.N.Y. Feb. 26, 2016) (being assigned only three hours of work per week did "not plausibly support even a minimal inference of discriminatory motive").

### b. Plaintiff's Allegations Do Not Amount to Actionable Mistreatment.

To prevail on her discrimination claim, Plaintiff must show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty. *Mihalik*, 715 F.3d at 113. Even if Mr. De Palma has made the remarks Plaintiff claims, they are not actionable for two reasons. First, as described above, they do not relate to Plaintiff's own gender. But they also fail to state a claim because the allegations against Mr. De Palma and Thompson Hine individually and collectively are not material. Many courts, including this Court, have considered sexual harassment allegations *substantially* more serious than those present in this case and dismissed such claims under Title VII, the NYSHRL, and the NYCHRL on a Rule 12 motion. *See Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (allegations that plaintiff was subject to "intense scrutiny and micro-management on a daily basis" and reprimanded more harshly than white employees "do not rise above the level of 'petty slights and trivial inconveniences'"); *Simon v. City of N.Y.*, No. 17 CIV. 9575 (DAB), 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019) (granting motion to dismiss on NYCHRL hostile work environment claim because defendant's actions—namely, that he invaded the plaintiff's personal space, told the plaintiff that "she liked him," and asked when she was leaving work—were insufficient to

demonstrate that she received unequal treatment because of her gender); *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 26 (N.Y. 1st Dep't 2014) (granting motion to dismiss or, in the alternative, motion for summary judgment on hostile work environment claim under NYCHRL where plaintiff claimed partner at law firm made inappropriate comments regarding her expression of breast milk, including that "women who breastfeed are cows,"[3] holding that "a reasonable person would consider the complained-of conduct nothing more than petty slights and trivial inconveniences."); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (motion to dismiss granted under NYCHRL where employee alleged supervisor "would come around [his] cube on occasions & place her vagina literally on [his] left shoulder or inches from [his] face," construing this as an allegation that supervisor "stood too close" which "plainly does not violate even [] lower threshold of NYCHRL"); *Mitchell v. Macy's, Inc.*, No. 17 Civ. 1845 (AT) (SN), 2018 WL 9918137, at *4 (S.D.N.Y. Sept. 25, 2018) (granting motion to dismiss as to NYCHRL sexual harassment claims where defendant allegedly "exposed her bare breasts to [him] on the salesfloor" three times, noting there is no indication the plaintiff "suffered any differential treatment").

    Here, Plaintiff advances a list of inconsequential instances where she was purportedly made uncomfortable by Mr. De Palma's "snotty comments" and discussions about *his* personal life, most of which did not involve Plaintiff at all, and none of which related to Plaintiff's gender. Plaintiff does not allege she was ever physically touched, let alone touched in a sexually inappropriate manner. Nor does she allege Mr. De Palma or anyone else ever propositioned her for sexual or

---

[3] The court opinion references an "offensive" and "inappropriate gender-based comment." *Kim*, 120 A.D.3d at 21. The details of the comment are set out in the parties' briefing. *E.g.*, Brief for Plaintiff-Respondent, *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, No. 11611, 2013 WL 9959136, at *34 (N.Y. App. Div. Sept. 12, 2013).

otherwise inappropriate encounters. Plaintiff advances no allegation that Mr. De Palma's gender-neutral conduct and remarks were made because of Plaintiff's gender. And even accepting the mere isolated incidents, petty slights, and minor annoyances as true, these claims fail as a matter of law. Plaintiff's handful of conclusory, generalized, and inconsistent allegations that her termination also somehow related to harassment do not change this outcome. *E.g.*, SAC ¶ 317 (alleging that she was specifically terminated because of her *pro bono* audit, "along with his decade long sexual harassment and gender discrimination against Plaintiff").

### c. Plaintiff Does Not Plausibly Allege that She Was Subject to Severe and Pervasive Conduct As Required Under Title VII.

While it is plain that Plaintiff has failed to assert an actionable claim of sexual harassment under any statute, this failure is even more striking under Title VII. Plaintiff does not even remotely allege conduct that would be "so severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270 (2001) (internal quotations and alterations omitted); *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 547 (2d Cir. 2010). Courts within the Second Circuit routinely find that far more substantial allegations of "harassment" fail to satisfy this standard. *See Vito v. Bausch & Lomb Inc.,* 403 F. App'x 593 (2d Cir. 2010) (rejecting Title VII hostile work environment claim because the alleged actions were just sporadic use of abusive language, gender-related jokes, occasional teasing, or workplace bullying); *Robinson v. Dibble*, 613 F. App'x 9, 13 (2d Cir. 2015) (affirming dismissal where "evidence of crude and offensive comments directed at [plaintiff's] gender or mental health issues that were delivered sporadically by coworkers . . ., while condemnable, did not rise to the level of creating an abusive and hostile workplace environment"); *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 768 (2d Cir. 1998) (affirming dismissal of sexual harassment claim where a supervisor told the plaintiff that "she had been voted the 'sleekest ass'" in the office and touched the plaintiff's

12

breasts with papers in his hand) (abrogated on other grounds); *Prince v. Cablevision Sys. Corp.*, No. 04 Civ.8151(RWS), 2005 WL 1060373, at *2, 6-7 (S.D.N.Y. May 6, 2005) (dismissing a hostile work environment claim on a Rule 12(c) motion where an employee was subjected to "sex talk," and where a co-worker attempted to kiss the plaintiff and asked her to have sex with him). Plaintiff's claims fall well short of establishing "severe and pervasive" sexual harassment.

## II.   Plaintiff Fails to State a Claim of Sex Discrimination Under Title VII, the NYSHRL, and the NYCHRL.

The Second Amended Complaint is comprised primarily of rhetoric and conclusory allegations, which are insufficient to state a claim for sex discrimination under any law. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996). To succeed under any standard, Plaintiff must demonstrate *facts* showing disparate treatment *because of* a protected characteristic. *See Mihalik*, 715 F.3d at 111. Indeed, "[e]veryone can be characterized by sex …; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Alfano*, 294 F.3d at 377. Stripped of its conclusory rhetoric, the Second Amended Complaint alleges nothing more than conduct that was facially sex-neutral. There are no allegations from which one could infer gender-based animus on Mr. De Palma's part. Though Plaintiff argues vociferously that Mr. De Palma disliked her, she has failed to plead facts indicating that Mr. De Palma disliked her or did anything else *because* she is a woman. Accordingly, her claims of sex discrimination fail.

## III.   Plaintiff Fails to Plausibly Allege a Claim of Retaliation.

A plausible claim of retaliation under Title VII, the NYSHRL, and the NYCHRL requires allegations of "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and

the adverse employment action." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 411 (S.D.N.Y. 2014) (quotation omitted) (NYSHRL); *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424–25 (S.D.N.Y. 2016) (NYSHRL and NYCHRL). Although under the NYCHRL an employer's actions need only be "reasonably likely to deter a person from engaging in protected activity" as opposed to materially adverse, Plaintiff still cannot meet this lower threshold because she has not pleaded participation in a protected activity known to Defendants or that her purported "protected activity" is connected in any way to her termination. *Jimenez v. City of N.Y.*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (quoting N.Y.C. Admin. Code § 8-107(7)). Plaintiff still fails to allege that her gender played any role, no matter how insignificant, in the Firm's employment actions.

As an initial matter, to the extent Plaintiff's retaliation claim is predicated on post-employment allegations, namely, Mr. Feher and Ms. Read's signature or "blessing" of Thompson Hine's EEOC Response (SAC ¶ 625), they fail because her allegations do not fall into the relatively narrow circumstances allowed to establish a claim for post-employment retaliation. *Thompson v. Morris Hts. Health Ctr.*, No. 09 Civ. 7239(PAE)(THK), 2012 WL 1145964, at *6 (S.D.N.Y. Apr. 6, 2012) (collecting cases that illustrate this limitation on post-employment retaliation claims). "In the post-employment context, impermissible adverse action may be found where, for example, an employer provides an untruthful letter of reference for a former employee who complained of discriminatory conduct, 'blacklists' or otherwise speaks ill of a former employee with retaliatory motive, or restricts an ex-employee's access to former co-workers in such a way as to hamstring future job prospects." *Id*. By contrast, where a plaintiff has not established that the allegedly retaliatory action hurt her job prospects, those actions have not been held retaliatory and claims premised on such acts have been dismissed. *Thompson*, 2012 WL 1145964, at *6-7. *See, e.g., Giarrizzo v. Holder*, No. 07-CV-0801 (MAD/GHL), 2011 WL 496945, at *5-6 (N.D.N.Y. Oct. 19,

2011) (dismissing retaliation claim because plaintiff had not detailed injury to job prospects from alleged retaliation).

Here, Plaintiff has not pleaded any facts to suggest that Defendants' actions had any impact on her current employment situation or her efforts to find a new job or that Defendants, in any way, hindered her prospective employment. Plaintiff's unsupported, conclusory allegation that Mr. De Palma "sabotage[d] Plaintiff's professional career" does not meet this standard. SAC ¶ 5. Nor has Plaintiff alleged that Defendants authored any untruthful letter of reference, "blacklisted" or otherwise spoke ill of Plaintiff, or restricted her access to former coworkers in such a way as to hamstring future job prospects. Indeed, the allegations in the Second Amended Complaint principally concern Plaintiff's post-employment efforts to pursue her EEOC charge and the Firm's EEOC Response. But of course, the submission of the EEOC Response was a routine matter and was, in fact, requested by the EEOC as part of the Commission's investigation process. It is not an adverse employment action. *See Guity v. Uniondale Union Free School Dist.*, No. 12-CV-1482 (SJF)(AKT), 2014 WL 1330636, at *19 (Mar. 31, 2014) ("Defendants' submission of the position statement in response to Plaintiff's charge of discrimination does not constitute a 'materially adverse' employment action.").[4]

### a. Plaintiff Fails to Plausibly Allege Participation in Protected Activity Known to Mr. Feher or Ms. Read.

Moreover, Plaintiff's retaliation claim fails because she has not plausibly pleaded that she engaged in any other protected activity known to Mr. Feher or Ms. Read, much less that would put either on notice that her purported complaints were about statutorily prohibited discrimination. With respect to Mr. Feher, aside from the EEOC Response, there are no allegations that suggest

---

[4] Likewise, the EEOC Response cannot be the basis of *any* claim because it is absolutely privileged. *See* Section V, below.

Mr. Feher had knowledge of any pre-termination complaints of discrimination or was otherwise involved in Plaintiff's termination or any other alleged adverse employment event.

With respect to Ms. Read, in sum, Plaintiff alleges that (1) she raised unspecified and vague concerns to Ms. Read over the course of a decade and "[Read] did literally nothing" in response, (2) Ms. Read, on behalf of the Executive Committee, asked Plaintiff to resign, and (3) one week after Ms. Read asked her to resign, Plaintiff reiterated "decade long complaints of [Mr. De Palma's] misogynistic and discriminatory behavior." SAC ¶¶ 265-66, 309, 332. But "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (citations omitted). "The employee's complaint must be sufficiently pointed to be reasonably understood as a complaint [about] discrimination." *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020) (quotations omitted).

In other words, "a plaintiff 'must allege that her employer was on notice that her complaints were about statutorily prohibited discrimination, not just general unsatisfactory or unfair conduct.'" *Id*. (quoting *Talwar v. Staten Island Univ. Hosp*., 610 F. App'x 28, 30 (2d Cir. 2015)) (brackets omitted). *See Fattoruso v. Hilton Grand Vacations Co*., *LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (dismissing the plaintiff's NYCHRL retaliation claim because the plaintiff's "belief that he was being treated 'unfairly'" does not "transform his complaints to [the employer] into charges over unlawful discrimination.")

Here, Plaintiff alleges that she reported sporadic concerns about Mr. De Palma to Ms. Read, including Mr. De Palma's "jerking off" comment, "Friday night invitation only networking/drinking parties," Mr. De Palma's "divorce document details," and "weekend escapades." SAC ¶ 265. These reported concerns, even taken as true, fall far short of what is

required to "make an employer aware of the alleged discriminatory misconduct." Plaintiff does not allege that she told Ms. Read that Mr. De Palma's "lewd" comments were about Plaintiff at all, much less that they were made *because of* Plaintiff's gender or any other protected characteristic. As here, if "nothing in the substance" of a communication "suggests that the complained-of activity is, in fact, unlawfully discriminatory," a complaint cannot be said to have "put an employer on notice of a protected complaint" for purposes of the antiretaliation laws. *Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34L (SJF)(AKT), 2014 WL 6473527, at *14 (E.D.N.Y. Nov. 17, 2014). There is simply no allegation supporting the contention that Plaintiff's alleged "complaints" to Ms. Read amounted to a complaint about discrimination as opposed to being a general complaint about Mr. De Palma's personality and work style.

### b.    Plaintiff Fails to Plausibly Allege "But For" Causation.

Finally, even under the NYCHRL, Plaintiff must set forth some allegations demonstrating a causal connection between her gender and an adverse employment action—which she has failed to do. Plaintiff bases her retaliation claims on the fact that she was terminated shortly after raising issues regarding Mr. De Palma's supposed violation of the Firm's *pro bono* policies. But any such claim fails because asserting violations of an employer's *pro bono* policies is not "protected activity" under any standard. And "[m]ere complaints of unfair treatment are not protected speech in the employment retaliation context." *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020). Plaintiff specifically and repeatedly alleges that she was terminated and defamed because "she initiated and was in the process of conducting a firmwide *pro bono* expense and case audit" and made a complaint that Mr. De Palma's handling of a *pro bono matter* violated firm policy. SAC ¶ 593. These are not sexual harassment allegations and do not operate to demonstrate a causal connection between Plaintiff's gender and her termination. Putting aside the fact that participating in a work audit wholly unrelated to a protected characteristic is not protected

17

activity, Plaintiff fails to allege any facts suggesting that Mr. Feher or Ms. Read were aware of, much less involved in, the 2022 *pro bono* audit.

Insofar as Plaintiff charges Ms. Read with retaliation based on the unspecified and vague concerns she claims she expressed about Mr. De Palma over the course of a decade, her claims are devoid of allegations that could support a causal connection between these "complaints" and any material action taken by Ms. Read. The most recent pre-termination "complaint"[5] Plaintiff alleges with any degree of specificity occurred in 2017—more than four years before her termination. SAC ¶ 263. Although "[i]t is, of course, true that temporal proximity can demonstrate a causal nexus," *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), the temporal proximity must be "very close," *Clark Cnty. Sch. Dist.*, 532 U.S. at 273. "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Kraiem v. JonesTrading Inst. Servs. LLC*, 571 F. Supp. 3d 53, 59-60 (S.D.N.Y. 2021) (citations omitted).

Accordingly, even if Plaintiff's 2017 vaguely-described conversation with Ms. Read could constitute protected activity, the four year period between her complaint and her dismissal is far too attenuated to establish causation by temporal proximity. Merely alleging temporal proximity without "even a modicum of specificity" does not satisfy this standard. *Henry*, 18 F. Supp. 3d at 412; *Rogers*, 2016 WL 889590, at *7 ("consisten[t] complain[ts] about race discrimination" two years before an adverse action fail to establish causation).

---

[5] As support for this "complaint," Plaintiff cites an email in which she thanked Ms. Read for discussing business development strategies with her, voiced her opinion that a change was needed in the "Lit Vice chair" position due to unspecified issues, and volunteered that she would like to be considered for that position. SAC ¶ 263.

**IV.    Plaintiff's Derivative New York Aiding and Abetting Claims Fail.**

As an initial matter, "[a] precondition to a valid aiding and abetting claim under the NYSHRL or NYCHRL is a demonstration of a valid primary claim for discrimination or retaliation." *Rossbach v. Montefiore Med. Ctr.*, No. 19cv5758 (DLC), 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11, 2021); *see also Farmer v. Shake Shack Ents., LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (where plaintiff "does not state a claim for . . . discrimination or a hostile work environment on the part of . . . defendant, there is no predicate for aiding and abetting liability with respect to these claims"). Because Plaintiff has not plausibly pleaded an underlying claim for discrimination or retaliation against Thompson Hine or Mr. De Palma, there is no predicate for aiding and abetting liability with respect to Ms. Read or Mr. Feher.

To plead an actionable claim for aiding and abetting under state or city law, a plaintiff must plausibly allege "direct, purposeful participation," sharing "the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc*., No. 10 Civ. 9308(JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011); *Vera v. Donado Law Firm*, No. 17cv03123 (LGS) (DF), 2019 WL 3306117, at *8 (S.D.N.Y. June 19, 2019). Absent any facts indicating that Ms. Read or Mr. Feher actively participated in discriminatory conduct or shared discriminatory "intent"—and there are none—there can be no well-pleaded allegations of "direct, purposeful participation" by them. Plaintiff's allegations do not plausibly demonstrate that any of the Defendants conspired with one another to deny Plaintiff certain rights and privileges of employment or that they aided or abetted each other in allegedly doing so. *Fried,* 2011 WL 2119748, at *8 (dismissing NYCHRL aiding and abetting claims because complaint contained no allegations regarding defendants' state of mind, shared animus, or direct participation in the alleged discriminatory actions); *see also Robles v. Goddard Riverside Community Ctr.*, No. 08 Civ. 4856(LTS)(JCF), 2009 WL 1704627, at *1 (S.D.N.Y. June 17, 2009) (same as to NYSHRL aiding and abetting claims against individual defendants because

complaint proffered no facts demonstrating their participation in decision to discharge plaintiff or their discriminatory motive for employment decisions affecting plaintiff).

In any event, under both NYSHRL and NYCHRL, Defendants cannot be held liable for "aiding and abetting" their own conduct. "An individual may not be held liable . . . merely for aiding and abetting [their] own discriminatory conduct but only for assisting another party in violating" that law. *Virola v. XO Communs., Inc.*, No. 05-CV-5056 (JG)(RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008). Accordingly, as to signing or endorsing the EEOC Response, as a matter of law, Mr. Feher and Ms. Read cannot be liable for "aiding and abetting" their own actions.[6] The same is true to the extent Plaintiff's aiding and abetting claim against Ms. Read is predicated on Ms. Read informing Plaintiff of her termination, because Ms. Read cannot be held liable for "aiding and abetting" her own actions. Similarly, Mr. De Palma cannot be liable for "aiding and abetting" his own alleged conduct.

Finally, Ms. Read's position as Thompson Hine's then Managing Partner is not a proxy for aiding and abetting liability. Aiding and abetting liability requires actual participation in the conduct giving rise to the claim. It cannot be based on status or job title alone. *See McHenry*, 510 F. Supp. 3d at 68; *Farmer*, 473 F. Supp. 3d at 337. And while under the NYSHRL a "supervisor['s] failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation," *McHenry*, 510 F. Supp. 3d at 68 (internal quotation marks omitted), the supervisor needs, at a minimum, to be sufficiently aware of enough of the underlying conduct to understand its discriminatory nature, *see id.* at 76-77 (holding that an email to a supervisor reporting an "intolerable and hostile work environment" was

---

[6] And as discussed at pp. 21-22, *infra*, any conduct related to the EEOC Response is absolutely privileged.

insufficient to plead that the supervisor actually participated in aiding and abetting harassment when the email did not mention underlying sexual harassment or gender discrimination). Plaintiff alleges no facts establishing that Ms. Read understood and participated in disparate treatment of Plaintiff based on her gender.

## V. Plaintiff Fails to Plausibly Allege a Claim for Defamation

Plaintiff alleges that certain statements contained in Thompson Hine's EEOC Response were defamatory. Specifically, Plaintiff alleges that statements that "Plaintiff got herself and the firm fired" and "that she was known as [a] 'heavy biller'" constitute defamation per se. SAC ¶ 597. To establish a claim for defamation, Plaintiff must prove a false statement of fact, published to a third party, resulting in damages. *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011)). Plaintiff's claims fail because she cannot meet these elements.

First, Plaintiff's claims regarding her "reputation" are statements of opinion, not fact. *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021). Likewise, she makes no plausible claim for proximate damages as a result of the "publication" to the EEOC. The EEOC never made a determination of her claim, and she offers no suggestion of how the EEOC Response could have had any effect on her career.[7]

More significant, even if Plaintiff could meet the elements of a defamation claim, statements made to the EEOC "are absolutely privileged so long as they are material and pertinent to the questions involved." *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009);

---

[7] Notably, while Plaintiff claims that Mr. Feher "published" the EEOC Response by sending it to the EEOC (whose files are confidential), it was Ms. Brazzano herself who published the EEOC Response nationwide at least three times when she attached the EEOC Response as an exhibit to each of her publicly filed Complaints.

*Farzan v. Wells Fargo Bank*, No. 12 Civ. 1217(RJS)(JLC), 2013 WL 474346, at *4 (S.D.N.Y. Jan. 25, 2013) ("It is well settled in New York . . . that statements made in quasi-judicial proceedings, including . . . the EEOC, are protected by an absolute privilege.") (citations omitted). Plaintiff makes the unavailing argument that the absolute privilege does not apply because the EEOC Response contained "egregious falsehoods, devoid of any semblance of truth," and therefore not "relevant" to her EEOC proceeding.  SAC ¶¶ 604-07. But, whether she agrees with them or not, the statements in the EEOC Response are on their face directly relevant to Plaintiff's allegations in her EEOC charge.

Absolute privilege is "the broadest of possible privileges," covering "any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent." *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) (per curiam) (internal quotation marks omitted) (citations omitted).[8] Nor are the challenged statements—that Plaintiff lost a firm client and was known as a "heavy biller"—"so needlessly defamatory as to warrant the inference of express malice." *See Brown v. Maxwell*, 929 F.3d 41, 52, 53 n.47 (2d Cir. 2019) (observing that, in certain cases, statements may be so "needlessly defamatory" that they are considered "immaterial and impertinent" for purposes of absolute privilege). The statements identify what Thompson Hine contends to be the reasons for Plaintiff's termination. Courts routinely dismiss claims based on analogous statements made to the EEOC on the ground of absolute privilege. *See, e.g., Sanderson v. Leg Apparel LLC*, No. 1:19-cv-8423-GHW, 2020 WL

---

[8] *See also Caro Capital, LLC v. Koch*, No. 20-cv-6153 (LJL), 2021 WL 1595843, at *10 (S.D.N.Y. Apr. 23, 2021) ("The privilege embraces anything that may possibly be pertinent to a case.") (internal quotation marks omitted). *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 202 F. Supp. 2d 126, 137 (S.D.N.Y. 2002) ("The concept of pertinent material is extremely broad and embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.") (internal quotation marks omitted).

7342742, at *5 (S.D.N.Y. Dec. 14, 2020) (dismissing defamation claim in part because statements made to the EEOC were "material and pertinent" insofar as "[t]hey involved Defendants' explanations for Plaintiff's termination and their responses to Plaintiff's allegations").[9]

## VI.    Plaintiff Fails to Plausibly Allege a Claim for Abuse of Process

Plaintiff's abuse of process claim is predicated solely on the same allegedly defamatory EEOC Response as her defamation claim. Accordingly, the Court should construe Plaintiff's claim as one for defamation and dismiss it for the same reasons as described *supra*. *See Lue v. JPMorgan Chase & Co.*, No. 19-cv-9784 (KPF), 2021 WL 1108558, at *4 n.5 (S.D.N.Y. Mar. 23, 2021) (dismissing defamation and fraud claims after observing that "Plaintiff's allegations with respect to [its fraud] claim demonstrates that Plaintiff is alleging a reputational injury caused by purportedly false and defamatory statements . . . . Accordingly, the Court construes this cause of action to sound in defamation").

In any event, Plaintiff does not adequately allege the elements of an abuse of process claim. As an initial matter, the EEOC Response is not process and therefore cannot serve as the basis for an abuse of process claim. Process is a "direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act." *Williams v. Williams*, 246 N.E.2d

---

[9] *See also Farzan*, 2013 WL 474346, at *4 (recommending dismissal of defamation claim because "[defendant's] statements were directly related to one of the issues that the EEOC had been asked to decide: namely, the reasons for [plaintiff's] termination," and therefore absolutely privileged); *Rubin v. New York City Bd. of Educ.*, No. 20-CV-10208 (LGS) (KHP), 2023 WL 1972729, at *20 (S.D.N.Y. Jan. 6, 2023), report and recommendation adopted, No. 20 CIV. 10208 (LGS), 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023) ("Defendants' EEOC submissions cannot form the basis of a defamation claim, because statements made to the EEOC are made in the course of a quasi-judicial proceeding and are under the protection of absolute immunity"); *Sanderson*, 2020 WL 7342742, at *4 (defendants' replies in EEOC proceedings could not give rise to a negligent infliction of emotional distress claim because the statements are protected by absolute privilege "as long as such statements are material and pertinent to the questions involved" in the EEOC proceeding).

333, 335 (N.Y. 1969). Thompson Hine's EEOC Response—which simply provides Thompson Hine's response to Plaintiff's allegations—does neither. *See, e.g.*, *Chavez v. Suburban Bus Transp.*, No. CV 12-2371 (LDW) (ARL), 2014 WL 12843902, at *1 (E.D.N.Y. May 19, 2014) ("[Defendant's] submission of a position statement to the EEOC does not establish a sufficient basis for a claim" of abuse of process). Moreover, the EEOC Response and the stated reasons for terminating Plaintiff's employment go directly to "the merits of [Plaintiff's] allegations—an issue fundamentally within the intended scope of [the EEOC] proceeding[]." *Jeri v. Great Neck Cleaner & Hand Laundry, Inc.*, No. 2:18-cv-01089 (ADS)(ARL), 2019 WL 718541, *3 (E.D.N.Y. Feb. 20, 2019)*. "By definition, it therefore cannot constitute an improper collateral purpose," which is another requisite element of an abuse of process claim. *Id.; see also Julien J. Studley, Inc. v. Lefrak*, 50 A.D.2d 162, 165-66, 376 N.Y.S.2d 200, 204-05 (App. Div. 2d Dept. 1975) (holding that submission was not an abuse of process because defendants "have [not] done anything more than carry out a legal process to its authorized conclusion"). To hold otherwise would subject virtually every respondent in an EEOC proceeding to an abuse of process claim.

Plaintiff also fails to adequately allege special damages as required by New York law. *Ann-Margret v. High Soc'y. Magazine, Inc.*, 498 F. Supp. 401, 407-08 (S.D.N.Y. 1980) (holding that generalized allegations "do not constitute the type of interference with person or property necessary to sustain an abuse of process claim").

## VII.    Plaintiff Fails to Plausibly Allege a Claim for Negligent Infliction of Emotional Distress.

Plaintiff has failed to plausibly allege a claim for negligent infliction of emotional distress. A claim of negligent infliction of emotional distress may only proceed where the allegations of conduct are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Hopper v. Banana Republic, LLC*, No. 07 Civ. 8526(WHP), 2008 WL 490613, at *2 (S.D.N.Y. Feb. 25, 2008) (citations omitted). Plaintiff contends that Ms. Read negligently inflicted emotional distress by calling her about her termination in the middle of a busy work day. If this was correct, virtually every involuntary termination in the state of New York would constitute a tort.

Even setting that aside, Plaintiff's claim fails because she does not allege any facts suggesting that Ms. Read or anyone else endangered Plaintiff or caused her to fear for her physical safety, or that Plaintiff suffered any independent physical or economic injury as a result of the emotional distress she allegedly suffered. Absent these necessary elements, there is no claim for negligent infliction of emotional distress. *Nieblas-Love v. N.Y.C. Hous. Auth.,* 165 F. Supp. 3d 51, 77 (S.D.N.Y. 2016).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants Thompson Hine LLP, Deborah Read, Thomas Feher, and Richard De Palma's motion to dismiss for failure to state a claim upon which relief can be granted.

Dated: July 12, 2024

Respectfully submitted,

*/s Carolyn J. Fairless*
Carolyn J. Fairless (Admitted *pro hac vice*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
Telephone: 303.244.1852
Email: fairless@wtotrial.com

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2024, I electronically filed the foregoing ***Memorandum in Support of Defendants' Rule 12(b)(6) Motion to Dismiss*** with the Clerk of Court using the CM/ECF system, which will send notification to all parties of record herein.

*s/ Carolyn J. Fairless*