**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

REBECCA BRAZZANO,

                              Plaintiff,

                    v.

THOMPSON HINE LLP, RICHARD
ANTHONY DEPALMA (in his individual and
professional capacities), DEBORAH ZIDER
READ (in her individual and professional
capacities), and THOMAS LAWRENCE FEHER
(in his individual and professional capacities),

                              Defendants.

Index No.:
24-CV-01420 (ALC)(KHP)

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' EMPTY MOTION TO COMPEL ARBITRATION AND FOR A STAY PENDING FORCED ARBITRATION

BRAZZANO LAW PLLC

By: /s/ *Rebecca Brazzano*
Rebecca Brazzano, Esq.
43 West 43rd Street, Suite 264
New York, New York 10036
Telephone: (561) 685-3812
Email: rbrazzano@brazzanolaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   THE SAC IS A TIMELINE THAT CONFIRMS DEPALMA SEXUALLY HARASSED
      PLAINTIFF AND CULTIVATED HIS CREEPY, TOXIC AND HOSTILE WORK
      ENVIRONMENT FROM PRE-2012 THROUGH APRIL 29, 2022 .................................... 3

III.  GOVERNING LEGAL AUTHORITIES

   A.  THE STANDARD ON A MOTION TO COMPEL ARBITRATION IS: PUT UP, OR SHUT UP ............. 5

   B.  THE VERIFIED SAC OPERATES AS AN AFFIDAVIT IN OPPOSITION TO THE MOTION.............. 7

IV.   APPLICATION OF THE EFAA IS CLEAR ON THE FACE OF THE SAC ........................................ 7

   A.  DEFENDANTS FAIL TO CITE RELEVANT LAW ................................................................ 10

      1.  *Doyle v AM. GLORY REST. CORP.*, 2024 US DIST LEXIS 63118
          [S.D.N.Y. APR. 4, 2024, NO. 23 CV 7624 (PAE)] ................................................ 10-11

      2.  *OLIVIERI v STIFEL*, 2023 WL 2740846
          [E.D.N.Y. MAR. 31, 2023, NO. 21 CV 0046 (JMA) (ARL)] .................................... 12

      3.  *DELO v PAUL TAYLOR DANCE FOUND., INC.,*
          685 F SUPP 3D 173 [S.D.N.Y. 2023] ..................................................................... 12-13

      4.  LITTLEJOHN *v* CITY OF NEW YORK, 795 F.3D 297 [2D CIR. 2015] ......................... 13

      5.  WEAVER *v* BLOOMBERG L.P., 2024 US DIST LEXIS 28750
          [S.D.N.Y. FEB. 20, 2024] ....................................................................................... 13

      6.  *EDWARDS v CVS HEALTH CORP.*, 2024 US DIST LEXIS 13896
          [S.D.N.Y. JAN. 24, 2024, NO. 23 CV 04340 (CM)]) ................................................ 13

      7.  JOHNSON *v* EVERYREALM, INC., 657 F SUPP 3D 535 [S.D.N.Y. 2023] ................. 14

V.    DEFENDANTS FAILE TO ESTABLISH ANY ENTITLEMENT TO ARBITRATION ........................ 15

VI.   PLAINTIFF'S CLAIMS OF SEXUAL HARASSMENT ARISE UNDER THE EFAA ....................... 17

VII.  NEW YORK HAS REJECTED INFINITE ARBITRATION CLAUSES ........................................... 17

VIII. DEFENDANTS' COUNSEL'S EFFORT TO OFFER EVIDENCE IS A COLOSSAL FAILURE ........... 21

i

IX.   THE FEDERAL RULES OF CIVIL PROCEDURE ALLOW ONE MOTION TO DISMISS – NOT
      THREE ........................................................................................................................22

X.    DEFENDANTS EFFORT TO CHEAT AND "INCORPORATE"
      OTHER MEMORANDA IS IMPROPER ......................................................................23

XI.   THE COURT'S SCHEDULING ORDER DOES NOT
      MODIFY GOVERNING PAGE LIMITATIONS ...........................................................23

XII.  NEW YORK STATE AND NEW YORK CITY LAWS AFFORD
      PROTECTIONS TO NONRESIDENTS EMPLOYEES WHO SUFFER
      SEXUAL HARASSMENT AND DISCRIMINATION BY NEW YORK EMPLOYERS  ......................25

XIII. CONCLUSION...........................................................................................................25

TABLE OF AUTHORITIES

CASE LAW

*Aquino v Alexander Capital, LP*, 2023 US Dist LEXIS 57025
[S.D.N.Y. Mar. 31, 2023, No. 21 CV 1355 (JSR)]..........................................18

*Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827 [1950] ............21

*Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45 [2d Cir. 2022] .................................................6

*Bensadoun v Jobe-Riat*, 316 F3d 171 [2d Cir. 2003] ......................................................................6

*Bais Yaakov of Spring Val. v Alloy, Inc.*, 936 F Supp 2d 272 [S.D.N.Y. 2013]..........................10

*Barter House, Inc. v Infinity Spirits, LLC*, 2019 WL 3554584
[S.D.N.Y. Aug. 5, 2019, No. 17 CV 9276 (PAE)] ..........................................23

*Beyah v. Coughlin*, 789 F.2d 986 [2d Cir. 1986].........................................................................21

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360 [2d Cir. 2003] ................ 15-16

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 [2d Cir. 2002].......................................................17

*Collins v Travers Fine Jewels Inc.*,
2018 US Dist LEXIS 48332
[S.D.N.Y. Mar. 22, 2018, No. 16 CV 03780 (SN)] ...........................................21

*Content v Curran*, 2022 US Dist LEXIS 179290 [S.D.N.Y. Sep. 30, 2022] ...............................22

*Davitashvili v Grubhub Inc.*, 2023 WL 2537777
[S.D.N.Y. Mar. 16, 2023, No. 20 CV 3000 (LAK)]............................................ 12-13, 18

*Delo v Paul Taylor Dance Found., Inc.*, 685 F Supp 3d 173 [S.D.N.Y. 2023].........................9-10

*Doyle v Am. Glory Rest. Corp.*, 2024 US Dist LEXIS 63118
[S.D.N.Y. Apr. 4, 2024, No. 23 CV 7624 (PAE)] ..................................... 10-11

*Easton Rae, LLC v Violet Grey, Inc.*, 2023 US Dist LEXIS 54321
[S.D.N.Y. Mar. 29, 2023, No. 21 CV 6234 (JPO)] ...................................... 22-23

*Edwards v CVS Health Corp.*, 2024 US Dist LEXIS 13896
[S.D.N.Y. Jan. 24, 2024, No. 23 CV 04340 (CM)] ..........................................13

*Falberg v Goldman Sachs Group*, 2022 US Dist LEXIS 34012
[S.D.N.Y. Feb. 14, 2022, No. 19 CV 9910 (ER)] ..........................................18

*Fitzgerald v Henderson*, 251 F3d 345 [2d Cir. 2001],
  *cert. denied*, *Potter v Fitzgerald*, 536 US 922 [2002] ........................................................7

*Gesualdi v Laws Constr. Corp.*, 759 F Supp 2d 432 [S.D.N.Y. 2011]..........................................21

*Hines v Overstock.com, Inc.*, 380 F App'x 22 [2d Cir. 2010] ......................................................20

*Hollander v. Am. Cyanamid Co.*, 172 F.3d 192 [2d Cir. 1999]....................................................21

*In re Axa Equit. Life Ins. Co. Coi Litig.*, 595 F Supp 3d 196 [S.D.N.Y. 2022] ...........................23

*Johnson v Everyrealm, Inc.*, 657 F Supp 3d 535 [S.D.N.Y. 2023]........................................ *passim*

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 [2d Cir. 1986] ......................................................14

*Knight v Fannie Mae*, 2014 US Dist LEXIS 138037
  [N.D.N.Y. Sep. 30, 2014, No. 13 CV 0183 (GTS/RFT)] ..................................................23

*Knipe v. Skinner*, 999 F.2d 708 [2d Cir. 1993] ..........................................................................22

*Kuehne & Nagel Inc. v A.G.R. Eshcol Overseas, Ltd.*,
  2014 US Dist LEXIS 113657 [S.D.N.Y. Aug. 14, 2014,
  No. 13 CV 8919 (LLS)] .......................................................................................................22

*Little v. City of New York*, 487 F. Supp. 2d 426 [S.D.N.Y. 2007]................................................21

*Littlejohn v. City of New York*, 795 F.3d 297 [2d Cir. 2015]......................................................13

*McFarlane v Altice USA, Inc.*, 524 F Supp 3d 264 [S.D.N.Y. 2021] ...................................... 18-19

*Meyer v. Uber Tech., Inc.*, 868 F.3d 66 [2d Cir. 2017] ........................................................ 16-17

*Mitura v Finco Servs., Inc.*, 2024 US Dist LEXIS 11000
  [S.D.N.Y. Jan. 22, 2024, No. 23 CV 2879 (VEC)]........................................................ 14-15

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 [1992].....................................................12

*New Look Party, Ltd. v Louise Paris, Ltd.*, 2012 WL 2511976
  [S.D.N.Y. Jan. 11, 2012, No. 11 CV 6433 (NRB)] ............................................................22

*Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*,
  2012 WL 2522651 [N.D.N.Y. June 27, 2012, No. 09 CV 0196 (GTS) (ATB)] ........ 23-34

*Nunez v JP Morgan Chase Bank, N.A.*,
  2024 US Dist LEXIS 11361 [S.D.N.Y. Jan. 23, 2024, No. 23 CV 7569 (PAE)].............20

*Offor v. Equal Emp. Opportunity Comm'n*, 2016 WL 3747593
    [E.D.N.Y. July 11, 2016, No. 15 CV 3175)], *aff'd sub nom.*
    *Offor v. United States Equal Emp. Opportunity Comm'n*,
    687 F. App'x 13 [2d Cir. 2017]...................................................................................24

*Olivieri v Stifel*, 2023 WL 2740846,
    [E.D.N.Y. Mar. 31, 2023, No. 21 CV 0046 (JMA) (ARL)] ...........................................11

*PaineWebber Inc. v Bybyk*, 81 F3d 1193 [2d Cir. 1996] ..................................................20

*P.G. ex rel. D.G. v. City Sch. Dist. of New York*, 2015 WL 787008
    [S.D.N.Y. Feb. 25, 2015, No. 14 CV 1207] ...........................................................24-25

*Police Benevolent Assn. v Port Auth. of NY & New Jersey*,
    2016 US Dist LEXIS 143647
    [S.D.N.Y. Oct. 17, 2016, No. 15 CV 3526 (AJN)] ......................................................22

*Ramos v Guaba Deli Grocery Corp.*,
    2021 US Dist LEXIS 227984
    [S.D.N.Y. Nov. 29, 2021, No. 20 CV 4904 (PAE)(JLC)] .............................................21

*Smith v. Steinkamp*, 318 F.3d 775 [7th Cir. 2003] ..........................................................19

*Starke v Squaretrade, Inc.*, 913 F3d 279 [2d Cir. 2019].....................................................6

*Syeed v. Bloomberg L.P.*, 58 F.4th 64 [2d Cir. 2023]........................................................25

*United States v. Noble Jewelry Holdings Ltd.*,
    2012 U.S. Dist. LEXIS 51675
    [S.D.N.Y. April 9, 2012, No. 08 CV 7826 (JGK)(KNF)] ............................................22

*Waldron v Goddess*, 61 NY2d 181 [1984]........................................................................7

*Walters v Starbucks Corp., 623 F Supp 3d 333* [S.D.N.Y. 2022] .................................11

*Wang v. Pataki*, 396 F. Supp. 2d 446 [S.D.N.Y. 2005].....................................................8

*Weaver v Bloomberg L.P.*, 2024 US Dist LEXIS 28750
    [S.D.N.Y. Feb. 20, 2024, No. 22 CV 8201 (PAE)] .....................................................13

*Wexler v AT&T Corp.*, 211 F Supp 3d 500 [E.D.N.Y. 2016] ...................................19-2

*Wolters Kluwer Fin. Servs. v Scivantage*,
    2007 US Dist LEXIS 27048 [S.D.N.Y. Apr. 12, 2007, No. 07 CV 2352 (HB)] ............22

*Wyler v. United States*, 725 F.2d 156 [2d Cir. 1983] ...................................................21

*Yost v Everyrealm, Inc.*, 657 F Supp 3d 563 [S.D.N.Y. 2023] .............................................. 14-15

RULES AND STATUTES

9 U.S.C. § 401, *et seq.* ........................................................................................... *passim*
9 U.S.C. § 402, *et seq.* ........................................................................................... *passim*
9 U.S.C. § 4 ....................................................................................................................6
28 U.S.C. § 1746 ............................................................................................................7
Fed. R. Civ. P., Rule 12 ............................................................................................ 22-23
Fed. R. Civ. P., Rule 56 ..........................................................................................6, 21
Fed. R. Evid., Rule 201 ................................................................................................10
S.D.N.Y. LOCAL RULE 11.1(b)(2) ...............................................................................24

TREATISES AND OTHER AUTHORITIES

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    §1384 (3d ed. 2022) ..............................................................................................22
David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633 (2020)) ...................... 18-19
Black's Law Dictionary (5th ed. 1979) .......................................................................12
Black's Law Dictionary (11th ed. 2019) .....................................................................12
Second Amended Complaint (Docket No.: 50) ................................................... *passim*

Plaintiff Rebecca Brazzano ("Plaintiff") submits this Memorandum of Law in Opposition to Defendants' empty motion to compel arbitration ("Motion"), along with the accompanying Declaration of Rebecca Brazzano, with its exhibits ("Brazzano Decl.") that are undisputed and irrefutably establish that Defendants' are grasping for relief to which they are categorically not entitled.

## I.  INTRODUCTION AND PRELIMINARY STATEMENT

Reality check: The empty Motion offered by the Defendants[1] here completely and utterly misses the point, conflates the law, and is devoid of any admissible factual or evidentiary support. Defendants lean on outdated, obsolete, irrelevant legal precedents, longing for a bygone era when arbitration was overly revered. Defendants' desperate efforts to shove this lawsuit sounding in sexual harassment and gender discrimination (amongst other claims) into hermetically sealed secret arbitration proceedings, hoping to dodge the transparency, accountability, and justice, that is illuminated in a Court of law, is a reach too far.

Defendants disregard the seismic shift in the law against pre-dispute forced arbitration clauses. Defendants too brazenly demand that this Court disregard fundamental tenets of contract law, seeking sanctuary amidst its unsigned partnership document.

The governing law, which the Motion conveniently ignores, is unequivocal. The SAC[2] details over a decade of sexual harassment and related unlawful conduct by DePalma (that was all tolerated, condoned and ratified by the Firm, Read and ultimately Feher), culminating in Read's April 29, 2022 reckless call demanding Plaintiff's resignation, falls squarely under the protections afforded by the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021

---

[1] Thompson Hine LLP (the "Firm"), Richard Anthony DePalma ("DePalma"), Deborah Zider Read ("Read"), and Thomas Lawrence Feher ("Feher"), together, "Defendants."
[2] The Second Amended Verified Complaint is referred to herein as "SAC ¶__" (Docket No. 50).

("EFAA"). The EFAA invalidates any pre-dispute arbitration clauses that seek to force arbitration for claims sounding in sexual harassment, including the clause peddled by Defendants. Defendants' frantic scurry away from the light of justice, seeking sanctuary in the darkness of arbitration highlights their effort to conceal unlawful conduct and evade justice in this Court.

The SAC is steeped with allegations against DePalma that clearly constitute sexual harassment. SAC¶¶181-184 (confirming DePalma's sexual harassment was ongoing from the time he was perched as the firm's vice chair of litigation until Plaintiff's departure); *see also*, SAC¶¶187, 283, 310-312; 351-353, *et. al.* As such, Defendants clamor for shelter under the shiny unsigned 2017 partnership agreement, and attempt to superglue it to the 2021 expired letter agreement, are utterly irrelevant and neither shackle Plaintiff to a forever agreement to arbitrate with Defendants. Court's scrutinizing infinite arbitration clauses, as championed here by Defendants, have invariably denounced them.

Unable to withstand the formidable impact of the EFAA on their relentless pursuit of arbitration's secrecy, Defendants pivot and embark on a desperate scavenger hunt. They scour the SAC (and misquote it) seeking to restrict Plaintiff's allegations to pre-March 3, 2022, yearning to sidestep the EFAA and deny Plaintiff the protections it affords. Plaintiff knows that Defendants are literate, thus the offer that the SAC did not address allegations of sexual harassment and gender discrimination, persisting through Plaintiff's departure, is specious and perjurious. Equally important, governing law unequivocally mandates that the gateway questions of the arbitration clause's validity, enforceability, and arbitrability must be adjudicated by a Court, not passed off to lawless arbitrators, and Plaintiff specifically challenges the delegation provision upon which Defendants seek comfort. The claims detailed in the SAC all specifically relate to and arise from DePalma's sexual harassment of Plaintiff and the toxic boys club he created and cultivated.

Even with Plaintiff's clear verified allegations that the arbitration clause in the 2017 partnership agreement (Docket No.: 50-1, Ex. 1) is unenforceable – unsigned and unrelated to the SAC's claims – Defendants recklessly push forward with their absurd assertions of contractual rights. Defendants have none. Defendants do not explain why the 2017 partnership agreement lacks Plaintiff's signature (or Thompson Hine's, for that matter). Instead, Defendants clamor to lean on an expired 2021 letter proffered by their counsel, which holds no evidentiary value in this context and fails to explain the consequence of the later January 20, 2022[3] memorandum from Read.  Defendants' efforts amount to an elaborate roadshow of document gymnastics, attempting a double jump: first, presenting a 2021 letter that expired on December 31, 2021, and then referencing an unsigned partnership agreement containing an arbitration clause. However, the arbitration clause that Defendants desperately seek shade under, does not even pertain to the claims in the SAC. Such a meandering argument is both unsupported and meaningless, especially since the arbitration clause is invalid under the governing federal law; the EFAA. For all the reasons set forth below, Plaintiff respectfully submits that the Court should summarily reject the Motion.

## II.  THE SAC IS A TIMELINE THAT CONFIRMS DEPALMA SEXUALLY HARASSED PLAINTIFF AND CULTIVATED HIS CREEPY, TOXIC AND HOSTILE WORK ENVIRONMENT FROM PRE-2012 THROUGH APRIL 29, 2022

The SAC specifically alleges a detailed timeline of the sexual harassment and toxic boys' club environment Plaintiff endured for more than a decade as the result of DePalma's unlawful conduct. DePalma's toxicity and hostility included, but was not limited to, his purposeful efforts to humiliate Plaintiff for years. DePalma weaponized his long-game efforts to get Plaintiff fired when Plaintiff

---

[3] *See*, Brazzano Decl. Ex. G ("a letter agreement providing for your compensation for 2022, including the terms of your eligibility for variable compensation, and the other terms and conditions of your participation in the partnership will be sent to you in February.")  Defendants cannot reconcile this conflict as a matter of law.

called DePalma out on his faux *pro bono* matter and commenced a firmwide audit. Defendants claim, and singular citation to SAC 218-220, offering that the complaint fails to allege any instance of sexual harassment post-2016, is ludicrous. Indeed, the SAC reference Defendants rely upon (and miscite) concerns when #MeToo entered the lexicon and that the social movement and awareness campaign against sexual harassment was nowhere to be found (¶218), that lawyers who spoke up about sexual harassment were passively demoted, ignored, and "blackballed" (¶219), and that Gretchen Carlson had not yet sued then Fox News chairman and CEO Roger Ailes for harassment, discrimination and retaliatory conduct (2016) or teamed up with political consultant Julie Roginsky, in their creation of Lift Our Voices (2019) (¶220). Ignored by Defendants is the fact that the SAC is replete with allegations of continuous and systematic gender discrimination and sexual harassment for more than a decade, that continued through Plaintiff's departure from the Firm: "Plaintiff specifically pleads that she was subjected to an objectively hostile and abusive work environment and that she was treated less well than Plaintiff's male colleagues by DePalma for more than a decade, that DePalma singled Plaintiff out because of her gender (because Plaintiff would not subordinate herself to DePalma's misogynistic values) and rallied his discriminatory efforts against her." *Id.* (¶187); *see also*, DePalma's discriminatory treatment from "2012-2022" (¶400); DePalma's creepy preoccupation with Plaintiff's whereabouts continued throughout the COVID-19 pandemic (¶¶493-494; 501); "Defendants used their positions of power to sexually harass, discriminate against, and retaliate against Plaintiff, a former Thompson Hine employee" (¶536); "Plaintiff's claims here arose, at earliest upon her termination on April 29, 202[]2 or on July 1, 2022, when she filed her EEOC Charge, both of which fall after the EFAA trigger date of March [3], 2022. 9 U.S.C. § 402(a)" (¶552); "By the wrongful actions described above, *inter alia*, Thompson Hine discriminated against Plaintiff because of Plaintiff's sex when it, among other

wrongful acts, fueled by DePalma sexist biases and misogynistic conduct, fired Plaintiff in response to decades-long allegations of sexual harassment against Thompson Hine's equity partner, DePalma" (¶656). Defendants' dumbfounded reach to manipulate and circumvent the undisputed facts in the verified complaint to avoid the application of the EFAA only serves to highlight their continuous empty reach to dodge legal accountability. Likewise, Defendants effort to misquote the SAC is idiotic: for example, Defendants offer that "Plaintiff claims that she then raised Mr. DePalma's 'misogynistic and discriminatory conduct' to Ms. Read in a subsequent conversation on May 9, 2022", *citing* SAC ¶332. Paragraph 332 actually reads as follows "Plaintiff ultimately had the fulsome conversation with Read on May 9, 2022, and *reiterated her decade-long complaints* of DePalma's misogynistic and discriminatory conduct to ensure that after Plaintiff's departure, no other female attorney would be subjected to the unlawful gender discrimination and sexual harassment that Plaintiff suffered." *Id. (emphasis added).* Likewise, Defendants' baseless argument, presented without any citation, that Plaintiff is contesting the arbitration provision solely because she did not "read" or did not "review" it is reckless and false. The SAC at paragraph 513, cited by Defendants (Motion, 6) only states that "*Plaintiff first saw the contents of the 2017 agreement* after Read called to terminate her employment" (*emphasis provided*). The invalidity of the partnership "arbitration clause" is dictated and vitiated by governing law as set forth in the EFAA.

## III. Governing Legal Authorities

### A. The Standard on a Motion to Compel Arbitration is: Put Up or Shut Up

Although not addressed in the Defendants' Motion, the applicable standard of review of a motion to compel arbitration, while styled procedurally as a Rule 12 motion to dismiss, is evaluated under the summary judgment standard articulated in Fed. R. Civ. P., Rule 56. (*Starke v*

*Squaretrade, Inc.*, 913 F3d 279 [2d Cir. 2019]); *see also*, (*Bensadoun v Jobe-Riat*, 316 F3d 171 [2d Cir. 2003]) ("In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment").  As such, the Court is required to "draw all reasonable inferences in favor of the non-moving party," Plaintiff here. (*Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49 [2d Cir. 2022]) (*internal quotation marks omitted*)(vacating District Court's granting of a motion to dismiss and to compel arbitration where there was a question of fact concerning the validity of plaintiff's signature on the purported arbitration agreement).  Here, there is no question that Plaintiff did not sign the 2017 partnership agreement (as such was reserved for the elitist equity partners), and there is no dispute that Plaintiff did not have a copy of the document until after her departure from the Firm.  Additionally, in reviewing the 2017 partnership agreement, where Defendants point to its arbitration clause, the clause as drafted by one of the defendants, does not include Thompson Hine as a party thereto.  The arbitration clause as drafted offers that it concerns:  "Any, dispute, claim, or controversy arising out of (a) this Agreement, (b) the relationship of the parties to this agreement as Partners *inter se*, or (c) any breach of this Agreement" (Docket 50-1, p. 31).  The SAC does not arise out of that "Agreement," it does not arise out of the relationship of the parties to that "Agreement," and does not arise out of any claimed breach of that Agreement.  Defendants' efforts to bootstrap a later annual contract that expired to leech onto this clause are futile.  Too, since Thompson Hine is neither a party nor signatory to the Agreement, there is no basis to claim it can force Plaintiff to arbitrate anything.  And, Defendants cannot offer new arguments in reply or remedy their glaring factual omissions in their Motion.

**B.  THE VERIFIED SAC OPERATES AS AN AFFIDAVIT IN OPPOSITION TO THE MOTION**

As the SAC is verified (Docket No.: 50), its allegations made upon on Plaintiff's personal knowledge, and not merely on information and belief (unless stated therein), has the effect here equal to that of an affidavit and may be utilized to oppose the Motion that is essentially one for summary judgment. *See, e.g.*, (*Fitzgerald v Henderson*, 251 F3d 345, 361 [2d Cir. 2001]), *cert. denied*, (*Potter v Fitzgerald*, 536 US 922 [2002]) (factual matters "asserted" other than on information and belief were "entitled to rely on it in opposing summary judgment").  Plaintiff's verification (Docket No.: 50, p.108) specifically states that it is made pursuant to 28 U.S. Code §1746, under penalty of perjury, that the allegations therein are true to Plaintiff's knowledge, except as to those allegations made upon information and belief, as to those, Plaintiff believes them to be true, and are of facts admissible in evidence to which Plaintiff is competent to testify.  As such, the allegations of the SAC operate as statements in undisputed opposition to the Motion.

**IV.    APPLICATION OF THE EFAA IS CLEAR ON THE FACE OF THE SAC**

The New York Court of Appeals has confirmed that: "It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes. The agreement must be clear, explicit, and unequivocal and must not depend upon implication or subtlety." (*Waldron v Goddess*, 61 NY2d 181, 183-184  [1984]) (*citations omitted*).  The federal statute, as codified in the EFAA, confirms exactly that.  The EFAA was celebrated by its sponsor, Sen. Kirsten Gillibrand, as it voided: "existing forced arbitration agreements for sexual harassment and sexual assault and end their use…[s]urvivors of sexual assault and harassment deserve to be heard, and they deserve the right to seek justice in the courts [and…] prevents employers from sweeping assault or harassment claims under the rug through mandatory arbitration agreements."

*See*, Brazzano Decl. ¶4, Ex. D.  The EFAA's passage was the result of the tireless efforts of countless victims and decades of advocacy, dispelling the myth of fairness in arbitration and affirming that victims of sexual harassment should not be muzzled in secretive conference rooms by lawless employers who seek to shield their unlawful conduct, like Defendants here.

The EFAA invalidates pre-dispute arbitration agreements related to sexual assault and sexual harassment disputes (9 U.S.C. §402(a)) and applies to claims and disputes that "arises or accrues on or after March 3, 2022." *Id.* The issues presented here are unprecedented, and have wide-reaching consequences for thousands of employees; the legislative intent of Congress could not be more crystalizing in directing that victims of sexual harassment shall not be forced to arbitrate their claims: New York Senator Schumer stated:[4]

> Bottom line, ending forced arbitration for sexual harassment and assault is about making our workplaces safer, holding abusive employers accountable, and making sure that every American can exercise their right to seek justice in a court of law…eliminating for good the awful practice of forcing victims of sexual harassment and assault into arbitration.…[that] have perpetuated cultures of abuse and unaccountability…[to] have the option to go to court if they choose, it will also be retroactive.[5] *See*, Brazzano Decl. ¶4, Ex. C, p. S581-S582; Ex. D, pp. S619-S620.

Senator Lindsey Graham offered that "The light of day in a courtroom is what we are hoping for…The premise of this legislation is simple: Survivors of sexual assault or harassment deserve their day in court…We are saying, you are not going to sign away your life in terms of having your day in court… *Id.* pp. S625; S628. Plaintiff could never have anticipated being sexually harassed by an equity partner, DePalma, and never intended to waive her right to seek redress in a Court of law, to be heard by a jury, for the rest of her life; Plaintiff is entitled to her day in Court as the

---

[4] *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 [S.D.N.Y. 2005] ("The Court may…take judicial notice of public documents, such as legislative histories").
[5] Bluebook Rule B5.2 "[q]uotations of fifty or more words [are] single spaced, indented on both sides, justified, and without quotation marks."

legislators intended. *See*, Brazzano Decl. ¶8. The profound depth of Congressional intent reverberates loudly in this context, safeguarding Plaintiff's entitlement to have her claims resolved by this Court.

The Executive Branch's sentiment is the same; President of the United States, Joseph Biden stated with regard to the EFAA: "some survivors will want their day in court. And that should be their choice and nobody else's choice." S*ee*, Brazzano Decl. ¶4, Ex. E. Vice President of the United States, Kamala Harris: "it will apply retroactively…invalidating every one of these agreements, no matter when they were entered into." *Id.* Ex. F. Congressional drafters made certain that the question as to whether a claim falls within the law's purview is to be based solely on the allegations of the pleading: "The term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law. (9 U.S.C. § 401(4)). The plain language and legislative history of the Act demonstrate that Congress intended the application of [EFAA] to be based solely on the allegations in the complaint." *See,* Brazzano Decl. Ex. A, p.5. The EFAA uses the phrase "conduct that is alleged to constitute sexual harassment," rather than referring only to a successful claim for sexual harassment. 9 U.S.C. § 401(4) (emphasis added). Too the statute makes clear that gatekeeper questions of whether the law applies to the claims, is a question for the Court, and not to be decided by an arbitrator, irrespective of contractual content. (9 USCS § 402(b)). Accordingly, the application of the law is for the Court to decide, based solely and exclusively on the SAC and nothing more.

The SAC specifically alleges conduct that constitutes sexual harassment. *See*, SAC ¶¶ 2-3, 24, 184-188; *passim.* Any attempt by Defendants to "split" the claims under the EFAA, as some being arbitrable, and others not, has been categorically rejected: "Where a dispute presents multiple claims – some related to sexual harassment, others not – the EFAA blocks arbitration of the entire

case, not just the sexual harassment claims." (*Delo v Paul Taylor Dance Found., Inc.*, 2023 US Dist LEXIS 133712, *11-12 [S.D.N.Y. Aug. 1, 2023, No. 22-cv-9416 (RA)]) *citing with approval Johnson*, 2023 U.S. Dist. LEXIS 31242, at *16-19; *see also,* Brazzano Decl. Ex. A, Brief of Amici Curiae Public Justices, *et al.*, in *Teyo Johnson v. Everyrealm Inc.*[6] ("Congress intentionally provided that an entire "case" related to sexual harassment be exempt from arbitration, not just individual claims, to avoid this harmful, unjust, and ineffective approach"); *Johnson* 657 F Supp 3d at 561 ("that, where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute").

> The EFAA defines a 'sexual harassment dispute' as 'a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.' 9 U.S.C. § 401(4). The EFAA further provides that its application 'shall be determined by a court, rather than an arbitrator,' under federal law, 'irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing the agreement,' or 'whether the agreement purports to delegate such determinations to an arbitrator.

(*Johnson v Everyrealm, Inc.*, 657 F Supp 3d 535, 550 [S.D.N.Y. 2023]).

## A. DEFENDANTS FAIL TO CITE RELEVANT LAW

In Defendants' haste to scamper into forced arbitration, they fail to address the governing law of this District Court, by failing to cite any of these recent cases, despite their relevance and publication before Defendants' filing:

**1. *Doyle v Am. Glory Rest. Corp.*, 2024 US Dist LEXIS 63118 **9-10, 20 [S.D.N.Y. Apr. 4, 2024, No. 23 CV 7624 (PAE)]**

The FAC states a claim for a hostile work environment in violation of Title VII. Because Title VII acts as a floor for the NYSHRL…this ruling means that the FAC's identical claim under state law also necessarily survives. The Court thus denies defendants' motion to dismiss [plaintiff's] hostile work environment claims. Where a claim alleges a hostile work

---

[6] Court may take Judicial Notice of the *Amicie* Memorandum of Law filed in support of plaintiff therein. (*Bais Yaakov of Spring Val. v Alloy, Inc.*, 936 F Supp 2d 272 [S.D.N.Y. 2013]) *(*judicial notice of an amicus brief filed in another lawsuit is proper); *see also*, Fed. Rules Evid. R. 201.

environment, however, the continuing violation doctrine applies, such that the limitations period does not commence to run until the last discriminatory act is taken in further of a broader unlawful practice. Although the doctrine does not save discrete acts of discrimination or retaliation that occur[ed] outside the statutory time period, even if other acts of discrimination occurred within the statutory time period a hostile work environment claim is a paradigmatic continuing violation, to which the doctrine applies. As the Supreme Court has explained: Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. As such, provided that [plaintiff's] hostile work environment claim encompasses at least one act within the limitations period…the acts predating the limitations period are properly considered as part of her claim. In any event, even if the pleadings had confined [defendant's] offensive comments to [plaintiff] to the period before July 9, 2021, [plaintiff's] demotion and constructive termination-which the FAC pleads occurred at the end of July 2021…are plausibly viewed as acts of harassment in furtherance of the alleged hostile work environment. As a recent Second Circuit decision underscores, that [plaintiff's] demotion and constructive termination are also discrete acts that might have supported a separate discrimination claim does not bar their being treated as acts furthering the hostile work environment. The Circuit held: A discrete discriminatory act, such as termination, within the limitations period may not only support a claim for damages, it may also render a hostile work environment claim timely if it is shown to be part of the course of discriminatory conduct that underlies the hostile work environment claim. Whether in fact [plaintiff's] demotion and constructive termination were part of [an] ongoing, discriminatory practice that created a hostile work environment -such that her hostile work environment claim is in fact timely-cannot be resolved before summary judgment (and possibly not until trial). Title VII 'prohibits the creation of a hostile work environment' based on race, color, religion, sex, or national origin. To prevail on such a claim, a plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive. The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. (*internal citations and quotations omitted*).

It is undisputed that Plaintiff has specifically plead that the hostile and toxic work environment perpetuated by DePalma continued throughout, and that Read's demand that Plaintiff resign in April 2022 (including SAC ¶¶400, 552) were all in furtherance of sexual harassment, confirming the hostile work environment at Thompson Hine.

2. ***Olivieri v Stifel*, 2023 WL 2740846, \*11-14
   [E.D.N.Y. Mar. 31, 2023, No. 21 CV 0046 (JMA) (ARL)]:**

Where, as here, the continuing violation doctrine purportedly applies to a plaintiff's claims, it is well-settled that those claims accrue on the day of the last act in furtherance of the violation…The court in *Walters* suggested that, for purposes of the EFAA, hostile work environment claims could – in accordance with well-established continuing violation precedent – accrue as of the date of the 'last act that is part of the hostile work environment. *Walters* [*v Starbucks Corp.*, 623 F Supp 3d 333, 337-228 [S.D.N.Y. 2022]]. The Court concludes that the term 'accrue' should be interpreted in accordance with these well-settled accrual principles that apply to harassment claims – the very claims that are the heart of the EFAA and concluding that EFAA applies to Plaintiff's claims (*internal quotations omitted)*.

Thompson Hine and Read's acts in demanding Plaintiff's resignation, along with the Firm's and Feher's retaliation during the separation process, was merely part and parcel to DePalma's sexual harassment of Plaintiff, literally toxic to the very end.  *See*, Brazzano Decl. ¶21.

3. ***Delo v Paul Taylor Dance Found., Inc.,*
   685 F Supp 3d 173, 177, 181-82, 185-86 [S.D.N.Y. 2023]:**

Defendants' motion to compel arbitration is denied…And there is nothing in the text of the EFAA that suggests its applicability hinges on how a claim is labeled. To the contrary, § 401 appears to define sexual harassment dispute broadly, requiring only that the claim relates to conduct that, as alleged, constitutes sexual harassment under applicable law. *See* 9 U.S.C. § 401(4); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 [] (1992) (quoting Black's Law Dictionary (5th ed. 1979)) (observing that the ordinary meaning of the phrase relating to is a broad one – to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with); Black's Law Dictionary (11th ed. 2019) (defining constitute as [t]o make up or form)…As the Supreme Court has observed, [h]ostile work environment claims are different in kind from discrete acts – instead, [s]uch claims are based on the cumulative effect of individual acts. Thus, a single act of [alleged] harassment may not be actionable on its own, but it can still be considered as part of the entire scope of [the] hostile work environment claim, Workplace conduct is not measured in isolation… In the same vein, while an act contributing to [the] hostile environment must take place within the statute of limitations period for the claim to be timely that contributing act does not need to be actionable on its own. With this guidance in mind, the Court concludes that [plaintiff's] post-March 3, 2022 allegations are 'sufficiently related' to her earlier ones. All of the allegations occurred in the same environment, within the span of the same year, and were primarily perpetrated by the same person, [defendant]. The allegations are of a similar nature, in that they uniformly relate to [defendant's] purported mistreatment of and disdain for female employees…The post-March 3, 2022 allegations can thus be considered acts that contribute to the hostile

work environment, and as such, [plaintiff's] claim accrued after the EFAA's enactment date.

This is exactly what Plaintiff has pleaded in the SAC, that the toxic and hostile work environment created and cultivated by DePalma continued uninterrupted until Plaintiff was thrown out the door.

*See also*, Brazzano Decl. ¶21.

4. ***Littlejohn v. City of New York*, 795 F.3d 297, 320-21 [2d Cir. 2015]:**

work environment's hostility should be assessed based on the totality of the circumstances…Factors that may be considered include: "[1 the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance.…[A] plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment…At the motion to dismiss stage, however, a plaintiff need plead only that she was faced with 'harassment.…of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse – a bar that the Second Circuit has repeatedly cautioned against setting…too high

5. ***Weaver v Bloomberg L.P.*, 2024 US Dist LEXIS 28750, \*17-18, 22-23 [S.D.N.Y. Feb. 20, 2024, No. 22 Civ. 8201 (PAE)]:**

In cases that involve claims of discrimination or retaliation, courts must use an extra measure of caution in deciding whether to grant summary judgment because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. But the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases. Thus, even in such a case, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and courts may grant summary judgment against discrimination claims in cases lacking genuine issues of material fact.… In other words, the 'ultimate issue' in an employment discrimination case like this is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, i.e., a discriminatory reason. (*internal citation and quotations omitted*).

6. ***Edwards v CVS Health Corp.*, 2024 US Dist LEXIS 13896, \*15 [S.D.N.Y. Jan. 24, 2024, No. 1:23-cv-04340 (CM)]:**

The *Edwards* Court granted a motion to compel arbitration concluding that EFAA did not apply when Plaintiff's last day of work was January 2, 2020, and she was fired in May 2020, as such

"her claims in the Complaint – which are predicated on her termination…on conduct that allegedly occurred prior thereto – are not covered by the EFAA" as having arose before the enactment of the EFFA).

**7.  *Johnson v Everyrealm*, Inc., 657 F Supp 3d 535 [S.D.N.Y. 2023]:**

The *Johnson* case, decided by District Judge Engelmayer, is the sister case to *Yost* (*infra*), and the two opinions were issued on the same day, February 24, 2023.  Defendants' failure to cite *Johnson* is tactical, as it denies a motion to compel where the plaintiff had pleaded claims that arose under the EFAA.  Such gamesmanship is ethically bankrupt and purposeful to mislead this Court as to controlling decisional law that has issued from this very Courthouse.

 The only cases, post March 3, 2022, cited by Defendants are *Mitura v Finco Servs., Inc.*, 2024 US Dist LEXIS 11000, *7-9, 13-14 [S.D.N.Y. Jan. 22, 2024, No. 23-CV-2879 (VEC)], and *Yost v. Everyrealm*, Inc., 657 F. Supp. 3d. 563, 567 [S.D.N.Y. 2023].  Neither supports the very relief Defendants seek here in their quest for arbitration.

In *Mitura*, the Court there denied the motion to compel arbitration:

[R]equiring the sexual harassment claim to be capable of surviving a Rule 12(b)(6) motion vindicates the statute's purpose of providing sexual harassment claimants with a judicial forum while also respecting the FAA's well-established mandate that favors arbitration. …Those cases are, however, inapposite because the federal severe or pervasive standard of liability does not apply to NYCHRL or the post-amendment NYSHRL claims. Under the NYCHRL, a plaintiff must simply show that she was subjected to 'unwanted gender-based conduct. The plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender. Under the NYSHRL, the plaintiff need only show that she was subjected to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the[] protected categories …Because Plaintiff has stated a claim for sexual harassment in violation of the NYSHRL and the NYCHRL, the arbitration agreement is unenforceable pursuant to the EFAA. 9 U.S.C. § 402(a). Defendants' motion to compel arbitration is denied with respect to all claims in the Amended Complaint. (*internal citations and quotations omitted*).

This District Court opined: "In analyzing whether a hostile work environment exists, Courts must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mitura*, \*\*20-21. The Court went on to conclude: "these allegations plausibly state a claim that relates to sexual harassment as required by the EFAA". *Id*. The SAC sets forth undisputed verified allegations that establish more than a decade-long timeline of the toxic and hostile work environment created by DePalma (and known and condoned by the Firm and Read) (including SAC¶¶ 262-263, 332, 362) along with his intentional efforts to humiliate Plaintiff (including, SAC¶¶ 184-189, 317), exclude Plaintiff from billable work flowing through his "Vice Chair," (including SAC¶¶ 212-215, 224, 232), that DePalma was motivated by gender animus (including SAC¶¶ 281, 326, 375, 651-662) and the SAC confirms that the hostile work environment permeated Plaintiff's work environment, including outrageous gender exclusionary tactics. *See also*, Brazzano Decl. ¶20.

In the *Yost v Everyrealm, Inc.*, 657 F Supp 3d 563, 591 [S.D.N.Y. 2023], as cited by Defendants, the Court never even decided the motion to compel arbitration, as it required further briefing from the parties on several issues. As such, the *Yost* decision fails to add any support to Defendants hunt for arbitration here. "The Court has identified in this decision open questions relating to the motion to compel arbitration that require supplemental briefing, including as to the operative arbitration agreement and whether it covers all or only some defendants…" *Id.* 657 F Supp 3d at 591.

## V.    DEFENDANTS FAILED TO ESTABLISH ANY ENTITLEMENT TO ARBITRATION

"Before compelling arbitration, a "district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid

arbitration agreement and (2) if so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 [2d Cir. 2003]. The answers here are no, and no.  Defendants demand entitlement to secret forced arbitration based on the following flimsy theory, there is a 2017 partnership agreement that contains an arbitration clause, that is not signed by Plaintiff (nor did Thompson Hine sign it), and there is then a 2021 document that is based upon Defendants' prior undisputed conduct, expired on the eve of December 31, 2021.  Thompson Hine consistently issued a "new" agreement each year, typically in February, with an effective date *nunc pro tunc* of January 1. Examples include: **2020:** Agreement dated February 26, 2020, effective January 1, 2020; **2017:** Agreement dated February 23, 2017, effective January 1, 2017; **2014:** Agreement dated February 28, 2014, effective January 1, 2014; **2013:** Agreement dated February 26, 2013, effective January 1, 2013.  *See*, Brazzano Decl. ¶¶16-17, Ex. H.  Thompson Hine's pattern demonstrates that each letter agreement covered a single year, from January 1 to December 31. Thompson Hine's attempt to magically extend the 2021 letter beyond December 31, 2021, to infinity and beyond, because it does not have a letter to cover January 1 through Plaintiff's departure in June 2022, by its effort to bootstrap its unsigned 2017 partnership agreement, is silly.

Notably, not a single Defendant offered, by way of affidavit upon their own personal knowledge that the 2017 document is what Defendants' lawyer purports it to be.  Plaintiff has submitted Read's later January 26, 2022 memorandum. *See*, Brazzano Decl. ¶9, [7]Ex. G, which is the precursor to the 2022 agreement modifications then underway.  Defendants do not offer the 2021 document in admissible form, or by anyone qualified to attest to its evidentiary value or that

---

[77] If and only if the Court examines documents beyond the face of the SAC in rendering its decision on the Defendants motion to compel arbitration, then Plaintiff offers the following for inclusion and consideration.

such covers the individual defendants here. Defendants' invocation (Motion 4, n.3) of *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 74 [2d Cir. 2017], to support its inclusion of "documents outside the pleadings" on a motion to compel arbitration is purposely misguided. The *Meyer* Court offered no such guidance, it stated that "the court 'consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with…affidavits,' *citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 [2d Cir. 2002] (*citations omitted*), and draws all reasonable inferences in favor of the nonmoving party."

## VI.   PLAINTIFF'S CLAIMS OF SEXUAL HARASSMENT ARISE UNDER THE EFAA

The initial inquiry here, pursuant to federal law, is that both the plain language and legislative history of the EFAA confirm that Congress intended the analysis of its application to be based solely on the allegations in the SAC. *See*, Brazzano Decl. Ex. A, *Amicus* Brief *Teyo Johnson v. Everyrealm Inc.*, et al., Docket No. 22 CV 06669(PAE), p.4 ("*Amicus Brief*"):

> Act uses the phrase 'conduct that is alleged to constitute sexual harassment," rather than referring only to a successful claim for sexual harassment. 9 U.S.C. § 401(4) (emphasis added). And the definition of "sexual harassment dispute" is not the only place that language is used. The Act's substantive provisions also repeatedly frame the application of the Act in terms of the allegations in the complaint. *See* 9 U.S.C. § 402(a) (arbitration agreement is unenforceable "at the election of the person alleging conduct constituting a sexual harassment dispute . . . or the named representative of a class or in a collective action alleging such conduct") (emphasis added). *Id.*

Plaintiff's undisputed SAC confirms allegations of sexual harassment, by DePalma, that were known to the Firm and Read, and they did nothing to make the unlawful conduct stop.  It was only after Plaintiff left the firm that the Firm finally removed DePalma as Vice Chair in New York (SAC ¶405), and later demoted Brian Lamb from his position as firmwide Practice Group Leader – Business Litigation. *See,* Brazzano Decl. ¶20.

## VII.   NEW YORK HAS REJECTED INFINITE ARBITRATION CLAUSES

Defendants, who are not tethered in time nor content, manifest efforts to cling to what is now

coined in this Court as an "infinite arbitration clause" has been rejected by essentially every Court having the opportunity to rule. These clauses are against public policy, are both procedurally and substantially unconscionable, and have no place in the legal landscape in the 21st Century. "Underscoring the relative novelty of 'infinite arbitration clauses,' there is relatively little case law addressing them. Most of what there is, however, has taken a jaundiced view of the argument that they should be enforced according to their terms." (*McFarlane v Altice USA, Inc.*, 524 F Supp 3d 264, 275 [S.D.N.Y. 2021]) (*citing*, David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 641-42 [2020]).   This very Court has unequivocally rejected infinite arbitration clauses in *Davitashvili v Grubhub Inc.*, 2023 WL 2537777, **8-9 [S.D.N.Y. Mar. 16, 2023, No. 20 CV 3000 (LAK)] (as a "matter of either contract formation or unconscionability, the Court holds that defendants' arbitration clauses do not apply to plaintiffs' claims to the extent they lack any nexus to the underlying contracts").   In rejecting the infinite arbitration clause, the *Davitashvili* Court offered:

> a contract should not be read to reach an absurd result, and the Court can reject the contract as being unconscionable where the literal application of the terms would require arbitration as to virtually any dispute with any affiliate as being unreasonable…it would be unconscionable to enforce defendants' arbitration clauses with respect to claims untethered to defendants' respective terms of use. Under New York law, [a]n unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms…interpreted literally, they would produce grossly unreasonable outcomes that would contravene a reasonable person's expectations.

2023 US Dist LEXIS 44780, **26-28 (*internal quotations and citations omitted*).

*See, also, Falberg v Goldman Sachs Group*, 2022 US Dist LEXIS 34012, 31-32 [S.D.N.Y. Feb. 14, 2022, No.: 19 CV 9910 (ER)]) ("courts in this district have found 'infinite arbitration clauses' to be invalid"); and *c.f.*, *Aquino v Alexander Capital, LP*, 2023 US Dist LEXIS 57025 [S.D.N.Y. Mar. 31, 2023, No. 21 CV 1355 (JSR)]) (case did not present an 'infinite arbitration' agreement);

s*ee also*, David Horton, Infinite Arbitration Clauses, *supra;* and (*Wexler v AT&T Corp.*, 211 F Supp 3d 500, 501 [E.D.N.Y. 2016]) (denying a motion to compel arbitration based upon its reach too far to "claims that arose before" and "that may arise after the termination of this [a]greement").

The *McFarlane* Court cited with approval *Smith v. Steinkamp*, 318 F.3d 775, 777 [7th Cir. 2003] where Judge Posner described the "absurd results" that flow from unhinged arbitration clauses: "if [Jones] murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against [Jones]…[Jones] could insist that the wrongful death claim be submitted to arbitration." Defendants argument that any dispute raised by Plaintiff, concerning any legal theory or under any law, with any "partner *inter se*" (Motion, 8) (which too attempts to capture past, present and future partners, known or unknown, including those located in GA, IL, OH, DC,  as well as MI, CA, CT, MO, KY, WI and TX, thus extending its reach to an innumerable number of unknown persons and entities in the numbered thousands, would all be able to require Plaintiff to arbitrate under the a 2017 document that Defendants' concealed from Plaintiff, and in all events, had no expectation that Plaintiff or any other "income partner" would know about or sign, is indeed an absurd proposition. *See*, Brazzano Decl. ¶20.

The 2017 partnership document is unenforceable, as both unconscionable and a prohibited infinite arbitration provision. There is no temporal or content tether between Defendants' reach for arbitration for any of the claims in the Verified Second Amended Complaint. *See also, Wexler v AT&T Corp.*, 211 F Supp 3d at 504 (rejecting the affiliate argument for "all disputes and claims' that would encompass "all members of the AT&T corporate family"; "reliance on the lack of mutual intent, by contrast, is entirely consistent with the FAA because [a]rbitration under the Act is a matter of consent, not coercion") (*internal citations and quotations omitted*). This Court should reject Defendants demand for arbitration of the claims in the SAC, as the *Wexler* Court did:

Whether framed in terms of unconscionability or contract formation, the end result is the same: the arbitration clause is not enforced. But in the Court's view, the difference in rationale is important. The Supreme Court has said that the FAA's saving clause preserves generally applicable contract defenses, but that it does not suggest an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives… It could be argued that deeming an arbitration clause unconscionable because it is too broad likewise applies a general contract defense in a fashion that disfavors arbitration. The Court's reliance on the lack of mutual intent, by contrast, is entirely consistent with the FAA because [a]rbitration under the Act is a matter of consent, not coercion. Indeed, the FAA explicitly limits itself to agreements to settle by arbitration a controversy thereafter *arising out of such contract or transaction, or the refusal to perform the whole or any part thereof*. *Id.* **504-505.

There is no basis in law that requires Plaintiff to arbitrate. The SAC alleges, *passim*, that the EFAA governs Plaintiff's claims. Justice is often guided by examination of the legislative intent, which unequivocally confirms that Congress intended to swing the doors of justice open to those, like Plaintiff, who are brave enough to come forward under its jurisprudence. If there is any genuine inquiry as to a statute's intended effect, Defendants have utterly failed to demonstrate that they are entitled to force Plaintiff to secretly arbitrate as a matter of law. (*Hines v Overstock.com, Inc.*, 380 F App'x 22 [2d Cir. 2010]) (declining to enforce arbitration where movant failed to make an "initial showing of the existence of an agreement to arbitrate"). Likewise, as someone other than Plaintiff drafted all of the documents that emanated from Defendants, any ambiguity and their content and construction are construed against the drafters; Plaintiff did not draft any of them. *See,* Brazzano Decl. ¶8; (*Nunez v JP Morgan Chase Bank, N.A.*, 2024 US Dist LEXIS 11361 [S.D.N.Y. Jan. 23, 2024, No. 23-CV-7569 (PAE)])("[T]he common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it applies in interpreting arbitration agreements") (*internal quotations omitted*) *citing* (*PaineWebber Inc. v Bybyk*, 81 F3d 1193 [2d Cir. 1996]) ("tenet of *contra proferentem* [applies] in construing ambiguities in arbitration agreements against the drafters).

## VIII.    DEFENDANTS' COUNSEL'S EFFORT TO OFFER EVIDENCE IS A COLOSSAL FAILURE

The legal tenant is steeped in the Federal Rule of Civil Procedure 56(c)(4), which requires:

> that an affidavit or declaration filed to support a summary judgment motion to 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.' Affidavits that do not comply with this requirement may be struck from the record.

*Collins v Travers Fine Jewels Inc.*, 2018 US Dist LEXIS 48332 [S.D.N.Y. Mar. 22, 2018, No. 16 CV 03780 (SN)])(*citing Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 [2d Cir. 1999]. Indeed, '[a]ttorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e) at least since *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831 [1950]; Dec. Comm'r Pat. 608 [1950], a position [the Court of Appeals] has frequently reiterated. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]; see also *Beyah v. Coughlin*, 789 F.2d 986, 989 [2d Cir. 1986] (same).

Defendants' counsel's declaration (Docket 53) is improper and inadmissible *in toto* as the law is clear that an attorney's affirmation (or declaration) that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment. (*Ramos v Guaba Deli Grocery Corp.*, 2021 US Dist LEXIS 227984 [S.D.N.Y. Nov. 29, 2021, No. 20 CV 4904 (PAE) (JLC)])("*See, e.g., Wyler v. United States*, 725 F.2d 156, 160 [2d Cir. 1983] ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight."); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 433 n.2 [S.D.N.Y. 2007] (same); (*Gesualdi v Laws Constr. Corp.*, 759 F Supp 2d 432 [S.D.N.Y. 2011])(same; "is not entitled to any weight").  While Defendants' counsel declaration proffers that it is "based upon her personal knowledge" and that Exhibit A thereto is a true and correct copy of the 2021 letter, and is declared under penalties of perjury, such is simply false on its face, rendering her evidentiary efforts a total mission failure.

21

Defendants' clumsy failure to present documents in an admissible form, having failed to offer

them in an admissible form in their initial motion, cannot be salvaged in their reply.  The law

confirms that Defendants cannot raise new arguments or evidence on reply: (*Content v Curran*,

2022 US Dist LEXIS 179290 [S.D.N.Y. Sep. 30, 2022]) (arguments) *United States v. Noble*

*Jewelry Holdings Ltd.*, 2012 U.S. Dist. LEXIS 51675, at *13-14 [S.D.N.Y. April 9, 2012, 08 CV

7826 (JGK)(KNF)](evidence);(*Kuehne & Nagel Inc. v A.G.R. Eshcol Overseas, Ltd.*, 2014 US Dist

LEXIS 113657 [S.D.N.Y. Aug. 14, 2014, No. 13 CV 8919 (LLS)]("Arguments may not be made

for the first time in a reply brief" *citing Knipe v. Skinner*, 999 F.2d 708, 711 [2d Cir. 1993]; (*Wolters*

*Kluwer Fin. Servs. v Scivantage*, 2007 US Dist LEXIS 27048 [S.D.N.Y. Apr. 12, 2007, No. 07 CV

2352 (HB)]).    Courts in this District routinely decline to consider evidence first submitted on

reply. (*New Look Party, Ltd. v Louise Paris, Ltd.*, 2012 WL 2511976, at *4 n.4  [S.D.N.Y. Jan. 11,

2012, No. 11-CV-6433 (NRB)])(*Port Auth. Police Benevolent Assn. v Port Auth. of NY & New*

*Jersey*, 2016 US Dist LEXIS 143647,  a*11 n.3 [S.D.N.Y. Oct. 17, 2016, No. 15-CV-3526 (AJN)])

(same). The Defendants proffer no evidence by way of affidavit, or otherwise of the agreement(s)

that they seek to bind Plaintiff, despite the opportunity and requirement to do so. Any attempt to

correct these fatal deficiencies in Defendants' reply papers is impermissible.

## IX.    THE FED. R. CIV. P.  ALLOW ONE MOTION TO DISMISS – NOT THREE

Defendants may move to dismiss some or all Plaintiff's claims, but can only make one motion

to dismiss, asserting all available defenses.

Rule 12 is meant to enact a consolidation principle such that, while a defendant is at no time
required to file a pre-answer Rule 12(b) motion, if it does choose to do so before answering the
complaint, then the defendant is bound by the consolidation principle in Rule 12(g), which
contemplates a single pre-answer motion in which the defendant asserts all of the Rule 12 defenses
and objections then available to [it]. *citing* 5C Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1384 (3d ed. 2022)

(*Easton Rae, LLC v Violet Grey, Inc.*, 2023 US Dist LEXIS 54321 [S.D.N.Y. Mar. 29, 2023, No.

21 CV 6234 (JPO)]). In complete disregard, Defendants have filed three separate notices of Rule 12 motions (Docket Nos.: 51 compel arbitration, 54 personal jurisdiction Read/Feher, 56 to dismiss). Defendants' filing of the instant motion to compel, and failing to include any objection to personal jurisdiction over Read/Feher constitutes a waiver and forfeiture of that Federal Rule of Civil Procedure 12(b)(2) defense, rendering their motion seeking to evade personal jurisdiction void *ab initio*. Defendants all appeared in this case, and Read and Feher waived the defense of personal jurisdiction by filing a Rule 12 motion (here) that did not raise or include personal jurisdiction as a defense. (*Barter House, Inc. v Infinity Spirits, LLC*, 2019 WL 3554584, at *57-58 [S.D.N.Y. Aug. 5, 2019, No. 17 CV 9276 (PAE)]) ("As a general matter, a defense under Rule 12(b)(2) is waived if it is not included in a preliminary motion under Rule 12 as required by Rule 12(g)…party waives any defense listed in Rule 12(b)(2) – (5) by…omitting it from a motion in the circumstances described in Rule 12(g)(2)")(*internal quotations omitted*). As Defendants' Rule 12 motion here failed to include Read/Feher's personal jurisdictional arguments, in a tactic to require the Court (and Plaintiff) to engage in multiple layers of motions, they can own it.

## X.    DEFENDANTS EFFORT TO CHEAT AND "INCORPORATE" OTHER MEMORANDA IS IMPROPER

Contrary to Defendants' attempt, they are not "permitted to incorporate arguments by reference in [a] memorandum of law…Such a practice (1) violates the District's rule on page limitations, and (2) confuses the Court as to which particular 'incorporated' arguments are actually being relied upon." (*Knight v Fannie Mae*, 2014 US Dist LEXIS 138037, *33 [N.D.N.Y. Sep. 30, 2014, No. 13 CV 0183(GTS/RFT)]); *In re Axa Equit. Life Ins. Co. Coi Litig.*, 595 F Supp 3d 196 [S.D.N.Y. 2022] *citing Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 2012 WL 2522651, at *2 n.2 [N.D.N.Y. June 27, 2012, No. 09 CV 0196 (GTS) (ATB)]("Setting aside the risk that such reference could cause the referring document to violate the District's rule on page

limitations (once it is incorporated into the referred document), such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are actually being relied upon").

## XI.   THE COURT'S SCHEDULING ORDER DOES NOT MODIFY GOVERNING PAGE LIMITATIONS

Defendants opted to impermissibly file three motions to avoid this Court's Rule, 2.B. which permits "A memorandum of law, in support of or in opposition to any motion, is limited to 25 pages" In this instance, Read and Feher have improperly submitted 56 pages (increased further by manipulating the margins to fit more than 23 lines per page, a violation of Local Rule 11.1(b)(2)), and crammed in an additional 103 single-spaced lines in footnotes. (Docket Nos: 52, 55 and 57). The remaining defendants fair no better, Thompson Hine and DePalma impermissibly offer 38 pages of briefing (more if counting their bush league margin manipulations likewise violative of L.R. Rule 11.1(b)(2)), and another 72 single-spaced lines jammed in footnotes.   (Docket Nos.: 52 and 57).   This shady conduct underscores why elitist lawyers like Defendants are reviled; they cheat and blatantly disregard the rules, acting as if they do not apply to them.  Plaintiff respectfully asks that the Court admonish Defendants with appropriate consequences for their intentional manipulation of margins and failure to abide by page limitations set out in the governing Rules. *See, Offor v. Equal Emp. Opportunity Comm'n*, No. 15-CV-3175, 2016 WL 3747593, at \*2 [E.D.N.Y. July 11, 2016], *aff'd sub nom. Offor v. United States Equal Emp. Opportunity Comm'n*, 687 F. App'x 13 [2d Cir. 2017]; *see also P.G. ex rel. D.G. v. City Sch. Dist. of New York*, No. 14 CIV. 1207, 2015 WL 787008, at \*1 n.2 [S.D.N.Y. Feb. 25, 2015] ("[I]t is clear that Plaintiffs' counsel abused the page limit and violated the Local Rules by reducing the line spacing to slightly less than double-spaced. This meant that rather than having 23 lines per page, Plaintiffs['] had 27 lines per page. In so doing, Plaintiffs' counsel accorded themselves approximately 200 extra lines

of text, or over 8.5 extra pages, onto an already-enlarged page limit. Such amateurish tricks are inappropriate for college term papers; they certainly have no place in federal court").

## XII. NEW YORK STATE AND NEW YORK CITY LAWS AFFORD PROTECTIONS TO NONRESIDENTS EMPLOYEES WHO SUFFER SEXUAL HARASSMENT AND DISCRIMINATION BY NEW YORK EMPLOYERS

Defendants seek shade in the fact that Plaintiff's domicile was in Florida at the time of her separation and that somehow eviscerates the New York City conduct that she was subjected to as not being within the protections of New York State and New York City statutory laws. Defendants' "nonresident" theory was flatly and categorically rejected in *Syeed v Bloomberg L.P.*, 41 NY3d 446 [2024]) which responded to certified questions posed by the United States Court of Appeals for the Second Circuit. Although the *Syeed* matter concerned the failure to hire a non-resident, the Court of Appeals confirmed that "applying the required liberal construction of 'inhabitants' and 'individual within this state'…a prospective inhabitant or employee, who was denied a job opportunity because of discriminatory conduct, fits comfortably within the Human Rights Laws' protection.…The NYCHRL's protections extend to non-residents who work in [New York] city." Here Plaintiff worked in or out of the Firm's New York office for the entirety of the parties' relationship (2008-2022). The impact of Defendants' sexual harassment had its impact in NYC, and it likewise interfered with Plaintiff's New York bar license.

## XIII. CONCLUSION

Based upon the foregoing Plaintiff respectfully requests that the Court deny Defendants' Motion and grant Plaintiff with such other and further relief that may be just and proper.

Dated: July 24, 2024              Brazzano Law PLLC
      New York, New York              */s/ Rebecca Brazzano*
                                             Rebecca Brazzano
                                             43 West 43rd Street, Ste. 264, NY, NY 10036
                                             rbrazzano@brazzanolaw.com 561.685.3812

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, I electronically filed the foregoing ***Memorandum of Law in Opposition to Defendants' Empty Motion to Compel Arbitration and for a Stay Pending Arbitration*** with the Clerk of Court using the CM/ECF system, which will send notification to all parties' counsel of record herein.

<u>/s/ Rebecca Brazzano</u>
Rebecca Brazzano