**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

REBECCA BRAZZANO,

                          Plaintiff,

                v.

THOMPSON HINE LLP, RICHARD
ANTHONY DEPALMA (in his individual and
professional capacities), DEBORAH ZIDER
READ (in her individual and professional
capacities), and THOMAS LAWRENCE FEHER
 (in his individual and professional capacities),

                          Defendants.

Index No.:
24-CV-01420 (ALC)(KHP)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' EMPTY MOTION TO DISMISS**

BRAZZANO LAW PLLC

By: /s/ *Rebecca Brazzano*
Rebecca Brazzano, Esq.
43 West 43rd Street, Suite 264
New York, New York 10036
Telephone: (561) 685-3812
Email: rbrazzano@brazzanolaw.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

I.    PRELIMINARY STATEMENT ......................................................................1

II.   THE SAC IS A TIMELINE THAT CONFIRMS DEPALMA SEXUALLY HARASSED
      PLAINTIFF AND CULTIVATED HIS CREEPY, TOXIC AND HOSTILE WORK
      ENVIRONMENT FROM PRE-2012 THROUGH APRIL 29, 2022 ...................................3

III.  GOVERNING LEGAL STANDARDS AND AUTHORITIES ..........................................7

      A.  PLAINTIFF HAS STATED CLAIMS FOR HOSTILE WORK ENVIRONMENT, SEXUAL
          HARASSMENT, AND GENDER DISCRIMINATION AGAINST THOMPSON HINE IN THE
          ELEVENTH CAUSE OF ACTION ..............................................................9

      B.  PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION STATE VIABLE CLAIMS
          FOR SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT,
          AND DISCRIMINATION IN VIOLATION OF NYSHRL AND NYCHRL
          AS AGAINST THE FIRM AND DEPALMA .....................................................11

      C.  PLAINTIFF HAS STATED A CLAIM FOR DEFAMATION, THAT IS UNPRIVILEGED AGAINST
          THOMAS LAWRENCE FEHER AND THOMPSON HINE IN THE EIGHTH CAUSE OF ACTION .....12

      D.  PLAINTIFF'S THIRD CAUSE OF ACTION SETS FORTH VIABLE CLAIMS
          AGAINST ALL DEFENDANTS FOR AIDING AND
          ABETTING/INCITING/COMPELLING/COERCING
          AS SUCH CONDUCT IS VIOLATIVE OF THE NYSHRL .......................................15

      E.  PLAINTIFF'S FOURTH CAUSE OF ACTION SETS FORTH VIABLE CLAIMS
          AGAINST ALL DEFENDANTS FOR AIDING AND
          ABETTING/INCITING/COMPELLING/COERCING VIOLATIVE OF THE NYCHRL ..................15

      F.  PLAINTIFF'S TENTH CAUSE OF ACTION AGAINST READ FOR NEGLIGENT
          INFLICTION OF EMOTIONAL DISTRESS STANDS AS DEFENDANTS RELY
          UPON THE WRONG STANDARD AND THE WRONG LAW ......................................17

      G.  PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION PROPERLY
          PLEADS CLAIMS AGAINST ALL DEFENDANTS FOR POST-EMPLOYMENT
          RETALIATION IN VIOLATION OF NYSHRL AND NYCHRL AND WHISTLEBLOWER
          RETALIATION AND POST EMPLOYMENT RETALIATION IN VIOLATION OF NYLL § 740 .....18

      H.  THE SAC SUFFICIENTLY DETAILS PLAINTIFF'S NINTH CAUSE OF ACTION
          IN ABUSE OF PROCESS AS AGAINST READ, FEHER AND THE FIRM .......................23

IV.   THE FED. R. CIV. P.  ALLOW ONE MOTION TO DISMISS – NOT THREE.................................23

V.    DEFENDANTS EFFORT TO CHEAT AND "INCORPORATE"
      OTHER MEMORANDA IS IMPROPER ........................................................................................24

VII.  CONCLUSION.........................................................................................................................25

TABLE OF AUTHORITIES

CASE LAW

*Ashcroft v. Iqbal*, 556 U.S. 662 [2009] .................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 [2007] ..............................................7-8

*Baptiste v City Univ. of NY,* 680 F Supp 3d 415 [S.D.N.Y. 2023] .............................15

*Bueno v Eurostars Hotel Co.*, 2022 US Dist LEXIS 4605
    [S.D.N.Y. Jan. 7, 2022, No. 21 CV 535 (JGK)] ...............................................15

*Chepak v. Metro. Hosp.*, 555 F. App'x 74 [2d Cir. 2014].........................................8

*Calise v Casa Redimix Concrete Corp.,* 2022 US Dist LEXIS 20962
    [S.D.N.Y. Feb. 4, 2022, No. 20 CV 7164 (PAE)] .............................................20

*Charles v. City of New York*, 2023 WL 2752123
    [S.D.N.Y. Mar. 31, 2023, No. 21 CV 5567 (JPC)] ...........................................16

*Deaton v Napoli*, 2019 US Dist LEXIS 6607
    [EDNY Jan. 10, 2019, No. 17 CV 04592 (JFB)(GRB)] ......................................13

*Delo v Paul Taylor Dance Found., Inc.*, 685 F Supp 3d 173 [S.D.N.Y. 2023] ........................9-11

*Doe v Bloomberg L.P.*, 36 NY3d 450 [2021] ......................................................16

*Easton Rae, LLC v Violet Grey, Inc.*, 2023 US Dist LEXIS 54321
    [S.D.N.Y. Mar. 29, 2023, No. 21 CV 6234 (JPO)] ...........................................24

*Editor's Pick Luxury LLC v Red Points Solutions SL*,
    2023 US Dist LEXIS 177023
    [S.D.N.Y. Sep. 29, 2023, No. 22 CV 07463 (ALC)]...........................................13

*Getachew v L&S Invs., LLC*, 2024 US Dist LEXIS 62857
    [D. Conn. Apr. 5, 2024, No. 23 CV 01381 (JCH)] ...........................................21

*Gilmore v Family Dollar*, 2024 US Dist LEXIS 111823
    [W.D.N.Y. June 25, 2024, No. 24 CV 6045(FPG)]............................................18

*Hopper v Banana Republic, LLC*, 2008 US Dist LEXIS 13503
    [S.D.N.Y. Feb. 25, 2008].......................................................................17

*In re Axa Equit. Life Ins. Co. Coi Litig.*, 595 F Supp 3d 196 [S.D.N.Y. 2022] ..........................24

*Kassner v 2nd Ave. Delicatessen, Inc.*, 496 F3d 229 [2d Cir. 2007] ...............................................8

*Knight v Fannie Mae*, 2014 US Dist LEXIS 138037
[N.D.N.Y. Sep. 30, 2014, No. 13 CV 0183(GTS)(RFT)]...................................................24

*Li v Navaretta*, 220 AD3d 758 [2d Dept 2023] ......................................................14, 23

*Lundgren v Margini*, 30 AD3d 476 [2d Dept 2006] ....................................................23

*Mihalik v Credit Agricole Cheuvreux N. Am., Inc., 715 F3d 102 [2d Cir. 2013]* ........................20

*Nezaj v PS450 Bar & Rest.*, 2024 US Dist LEXIS 33489
[S.D.N.Y. Feb. 27, 2024, No. 24 CV 8494 (PAE)] ...................................................15, 16

*Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*,
2012 WL 2522651 [N.D.N.Y. June 27, 2012, No. 09 CV 0196 (GTS)(ATB)] ...............24

*Patane v. Clark*, 508 F.3d 106 [2d Cir. 2007] ...........................................................10

*Riggs v Akamai Tech.*, 2024 US Dist LEXIS 119502
[S.D.N.Y. July 8, 2024, No. 23 CV 06463(LTS)] .........................................................8-9

*Potrzeba v Sherburne-Earlville High Sch.*, 2023 US Dist LEXIS 227159
[N.D.N.Y. Dec. 21, 2023, No. 23 CV 191 (BKS/ML)]....................................................17

*Sutter v. Dibello*, 2021 WL 930459
[E.D.N.Y. Mar. 10, 2021, No. 18 Civ. 817 (SJF)(AKT)].................................................16

*Syeed v Bloomberg L.P.*, 41 NY3d 446 [2024] .........................................................24

*Terry v Ashcroft,* 336 F3d 128 [2d Cir. 2003] ...........................................................10

*Wells Fargo Bank*, 2013 US Dist LEXIS 11121
[S.D.N.Y. Jan. 25, 2013, No. 12 CV 1217 (RJS)(JLC)] ...................................................13

*Youmans v. Smith*, 153 N.Y. 214, 47 N.E. 265 (1897) ...............................................13

## RULES AND STATUTES

Title VII of the Civil Rights Act of 1964, 42 USC § 2000e .................................................1, 2, 11
New York State Human Rights Law, NY. Exec. Law § 290, *et seq.* ................................... *passim*
New York City Human Rights Law, NYC Admin. Code § 8-107, *et seq.* .......................... *passim*
New York Labor Law §740 ....................................................................................18, 19

Fed. R. Civ. P., Rule 12 .................................................................................................1, 2
S.D.N.Y. LOCAL RULE 11.1(b)(2) ................................................................................21

**TREATISES AND OTHER AUTHORITIES**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
   §1384 (3d ed. 2022) ........................................................................................ 23-24
Second Amended Complaint (Docket No.: 50) ................................................. *passim*

Plaintiff Rebecca Brazzano ("Plaintiff") submits this Memorandum of Law in Opposition to Defendants' third Rule 12 ("Motion") (Docket No. 56 here, having already filed two prior Rule 12 motions, Docket Nos: 51-52 and 54-55), but even three times isn't a charm, as Defendants are not entitled to dismissal here for any reason stated and must answer to this Court and a jury for their unlawful conduct.

## I.  INTRODUCTION AND PRELIMINARY STATEMENT

As presented to the Court, the second amended verified complaint[1] confirms more than a decade of unlawful sexual harassment, toxic work environment, and gender discrimination (among other claims) by DePalma, which was known to the Firm and Read, and equally disturbing conduct by Feher that includes claims steeped in abuse of process and *per se* defamation.  Defendants have continued in the present Motion, in their concerted efforts to shield their unlawful behavior by misrepresenting the facts alleged, citation to irrelevant decisional law, and, offer nothing that would entitle them to the dismissal they seek.

It is self-evident that Defendants are deeply concerned that this case has far reaching implications with regard to the law that protects employees, like Plaintiff, from discrimination arising under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e ("Title VII"), the New York State Human Rights Law, NY. Exec. Law § 290 et seq., and the New York City Human Rights Law, NYC Admin. Code § 8-107 (collectively, the "Title VII Protections"), as set forth in the operative pleading.  A ruling in this Court that Plaintiff was in fact an employee for purposes of Title VII Protections will reverberate through BigLaw and beyond in giving a voice to those employees who have been silenced by predator defendants under the guise that such protections are not available. (*id.*)  The law that governs here confirms that Plaintiff is entitled to all of the

---

[1] The Second Amended Verified Complaint is referred to herein as "SAC ¶__" (Docket No. 50).

Title VII Protections. Defendants too worry that decisional law emanating from this District Court confirming Plaintiff's rights against unlawful discrimination under the Titel VII Protections will have a ripple effect impacting their clients and competition. (*id.*) This fear is what drives Defendants gamesmanship, and the all hands on deck approach in filing three Rule 12 Motions. This District Court never sanctioned Defendants' violation of the Rule 12 consolidation requirements, and Plaintiff of course could not. Defendants' worthless assertion that the Court's scheduling text order setting forth briefing dates altered decades of decisional law on Rule 12 is supported by literally nothing. Defendants have filed seriatim Rule 12 motions at their own peril (and waived Read and Feher's defense by filing a Rule 12 motion to compel without any reservation of personal jurisdiction).

Even with three motions, Defendants still just cannot seem to comply with governing page limits, as Defendants' present memorandum of law intentionally altering its margins and stuffing dozens of lines in footnotes, all to evade the governing page limitation rules. Defendants' efforts are repeated and intentional as they expect no consequence for their bush league antics. In the Ivory Tower where Defendants are resident, apparently everybody gets four strikes, and the umpire's strike zone is of no moment. In a Court of law, Defendants are required to follow the Rules and be mindful and respectful of the Court's authority. But here too, Defendants engage in diversion and make up their own lawless rules, just like their equity predator partners continue the hunt of female lawyers at the Firm unabated.

The governing law, which the Motion conveniently ignores, is unequivocal. The SAC details over a decade of sexual harassment and related unlawful conduct by DePalma (that was all tolerated, condoned and ratified by the Firm, Read and ultimately Feher), culminating in Read's April 29, 2022 reckless call demanding Plaintiff's resignation, falls squarely under the protections

afforded by the Title VII Protections and additional claims illuminated in the complaint.

As demonstrated here, the SAC is saturated with allegations against DePalma that clearly constitute sexual harassment arising from a decade-long campaign against Plaintiff to be sure she endured a work environment that was both toxic and hostile. SAC¶¶181-184 (confirming DePalma's sexual harassment was ongoing from the time he was perched as the firm's vice chair of litigation until Plaintiff's departure); *see also*, SAC¶¶187, 283, 310-312; 351-353, *et. al.*

Plaintiff respectfully submits that Defendants' Motion offers nothing that would entitle them to the dismissal they are frantically seeking, and the Motion should be summarily denied.

## II. THE SAC IS A TIMELINE THAT CONFIRMS DEPALMA SEXUALLY HARASSED PLAINTIFF AND CULTIVATED HIS CREEPY, TOXIC AND HOSTILE WORK ENVIRONMENT FROM PRE-2012 THROUGH APRIL 29, 2022

The SAC specifically alleges a detailed timeline of the sexual harassment and toxic boys' club environment Plaintiff endured for more than a decade as the result of DePalma's unlawful conduct. DePalma's toxicity and hostility included, but was not limited to, his purposeful efforts to humiliate Plaintiff for years. DePalma weaponized his long-game efforts to get Plaintiff fired when Plaintiff called DePalma out on his faux *pro bono* matter and the Pro Bono Committee, led by Plaintiff, commenced a firmwide audit. (SAC ¶¶301-304). Defendants' efforts to box Plaintiff's complaints into a "chart" and vacant offer that such conduct only related to pre-2016 conduct (Motion, pp. 3-4) is meritless. Defendants' singular citation to SAC ¶¶218-220 for the lie that the SAC fails to allege any instance of sexual harassment post-2016, is garbage. Indeed, the SAC reference that Defendants rely upon (and miscite) concerns when #MeToo entered the lexicon and that the social movement and awareness campaign against sexual harassment was nowhere to be found (¶218), that lawyers who spoke up about sexual harassment were passively demoted, ignored, and "blackballed" (¶219), and that Gretchen Carlson had not yet sued then Fox News chairman and

CEO Roger Ailes for harassment, discrimination and retaliatory conduct (2016) or teamed up with political consultant Julie Roginsky, in their creation of Lift Our Voices (2019) (¶220). This historical description of the evolution of the #MeToo movement is not, as Defendants hope, a constriction on Plaintiff's allegations of sexual harassment, hostile working conditions or gender discrimination that persisted from pre-2012 through Plaintiff's forced exit from the Firm in April 2022.

The SAC is steeped in allegations of continuous sexual harassment through the imposition of a toxic boys' club hostile work environment upon Plaintiff and of rampant gender discrimination for more than a decade. "DePalma's creepy stalking behavior in wanting to know where Plaintiff was working continued throughout her employment;" SAC ¶174; "DePalma's hostility remained unabated, fuel[ed] by his relentless efforts to undermine and sabotage Plaintiff's career and seize every opportunity to subject her to humiliation, question her legal qualifications and continued to exclude her from billable hours in New York and beyond;" *id.* ¶215; "DePalma specifically and intentionally retaliates against any female attorney (including Plaintiff) who did not embrace his misogynistic culture or agree to his sexist submissive behavior by engaging in a campaign to end their employment, by freezing them out of billable litigation firm work, his pattern is unmistakenly pervasive;" *id.* ¶224; "There can be no legitimate dispute that Plaintiff endured and reported DePalma's misogynistic and unlawful conduct to Thompson Hine's management for literally more than a decade;" *id.* ¶225;

> DePalma's demand that Plaintiff acquiesce to his distorted ideology, positioning himself as the patriarch, and marginalizing female lawyers, Plaintiff here, who refused to bow to his grandiose self-concept, was raised by Plaintiff with each of the following equity partners who stood in her line of firm supervision from 2013-2022, Read (both before she was elected Managing Partner, and after), Brian Lamb and Todd Mason… *id.* ¶229;

"Plaintiff unapologetically highlighted DePalma's abusive behaviors and misuse of power

through the manipulation of billable hours in the New York office under his covenanted Vice

Chairmanship to Read, Lamb and Mason year after year;" *id.* ¶232;

> Mason, as the New York Office Partner in Charge…offered to 'mediate' the decade long complaints Plaintiff had voiced against DePalma; Plaintiff respectfully declined because she could not afford to arm DePalma with the knowledge that his sexual harassment and discriminatory conduct was crippling her professional advancement, as that would only serve to drive him to intensify his unlawful conduct; *id.* ¶233;

> Without hesitation, Plaintiff distinctly and explicitly highlighted DePalma's discriminatory treatment, along with his open contempt for Plaintiff. DePalma's demand that women acquiesce to his distorted ideology, positioning himself as the patriarch, and marginalizing those who refused to bow to his grandiose self-concept, was unequivocally raised with equity partners, including Read, from 2012-2022. *id.* ¶400;

> Plaintiff unapologetically highlighted DePalma's misuse of power through the manipulation of billable hours under his covenanted Vice Chairmanship of Business Litigation in New York. Thompson Hine conceded that it was 'clear that Mr. DePalma and Ms. Brazzano did not get along – both complained about each other at different point over the years…Plaintiff's complaints about DePalma were grounded in unlawful conduct. DePalma's complaints about Plaintiff were sexist, discriminatory, and permeated with defamatory and reputational insults. *id.* ¶¶402-404;

 "Plaintiff complained for years that DePalma steered the New York billable work to himself and

other male attorneys to Plaintiff's exclusion, weaponizing the Vice Chair designation and position

as against Plaintiff because of her female gender;" *id.* ¶423; The Firm "demoted DePalma and

consequently stripped away the lucrative salary perks tied to the coveted "Vice Chair" position

and title and failed to advise the EEOC of this the fact" but did so only after Plaintiff formally filed

her EEOC complaint alleging sexual harassment and gender discrimination" *id.* ¶406; DePalma

"made sure that the litigation workflow into the firm's New York office was either horded by

DePalma himself to falsely increase his own billable hours or he directed the work to male

attorneys in New York, and to the specific exclusion of Plaintiff" *id.* ¶179;

> From the time DePalma assumed the Vice Chair position until Plaintiff's departure from the firm twelve years later in 2022, there was not a single occasion where DePalma steered incoming New York work in Plaintiff's direction or bothered to convey that a particular matter was well-suited for Plaintiff's professional strengths or that a specific matter was a

perfect match for Plaintiff's demonstrative legal skill set. DePalma's intent was unremarkable, DePalma knew that Plaintiff had voiced complaints about his unlawful behavior (to Read, Lamb, Mason, and others), and he was determined to improperly use his power and influence to exclude Plaintiff from any opportunity to gain billable hours, as he knew that to be the primary measure used by the firm as it relates to compensation. Indeed, immediately following DePalma's undeserved elevation to New York Vice Chair of Business Litigation, DePalma targeted and sexually harassed and discriminated against Plaintiff because of her female gender. DePalma's unmistakable decade long hostility and sexual harassment was obvious and well known in the New York office, as well as by the Executive Committee members, including Read. *id.* ¶¶181-184;

Plaintiff specifically pleads that she was subjected to an objectively hostile and abusive work environment and that she was treated less well than Plaintiff's male colleagues by DePalma for more than a decade, that DePalma singled Plaintiff out because of her gender (because Plaintiff would not subordinate herself to DePalma's misogynistic values) and rallied his discriminatory efforts against her; *id.* ¶187; and

.By the wrongful actions described above, *inter alia*, Thompson Hine discriminated against Plaintiff because of Plaintiff's sex when it, among other wrongful acts, fueled by DePalma sexist biases and misogynistic conduct, fired Plaintiff in response to decades-long allegations of sexual harassment against Thompson Hine's equity partner, DePalma. *id.* ¶656.

All of the foregoing facts are verified and undisputed.

Defendants' dumbfounded reach to manipulate and circumvent the undisputed facts in the verified complaint to avoid the application of the law only serves to highlight their continuous empty reach to dodge legal accountability. In Defendants' reach for dismissal, they do not cite facts, they make them up. The entirety of Defendants' Motion hangs by the thread of their false proffer that Plaintiff's complaint of sexual harassment and gender discrimination all occurred prior to 2016; Defendants' offer is utterly delusional.

Defendants desperately seek to repaint the canvas to offer that Plaintiff held a hoisted position at the Firm, yet the SAC unequivocally confirms that Plaintiff was simply an employee. SAC ¶26 ("[a]t all times relevant Plaintiff was an employee" of the Firm). To escape the federal, state and city lawful protections that are afforded to employees, Defendants repeatedly refer to Plaintiff as a "partner," as if saying it over and over will alter the universe: "Plaintiff *is a former partner at*

Thompson Hine who worked for the Firm from 2008-2022" *citing* SAC ¶18 for their offer (*emphasis provided*). Yet, paragraph 28 of the SAC has no mention of Plaintiff being a "partner" and it simply pleads that "Plaintiff worked from Thompson Hine's New York City office from 2008-2022." Defendants shamelessly make things up to perpetuate their false narrative.

Defendants likewise offer that the SAC ¶¶187 (quoted above) 215, 229, 232, 353, 366 and 402 support Defendants' obnoxious proffer that Plaintiff "lacked work" because of "her own failure to originate work or declining internal demand for her work" (Motion, p.3). Defendants appear incapable of honesty, providing the Court with citations that completely fail to substantiate their audacious lies. Indeed,

> less than an hour after Read delivered the termination message, Anthony White, an Executive Committee member, an heir apparent to the Managing Partner Role effective May 2024, apparently then having received Read's communique that the call ending Plaintiff's longtime career with the firm had been made, so he urgently approached Plaintiff to complete an extensive Order to Show Cause for a significant case involving his most prominent client. As if Thompson Hine, and Anthony White, now wanted to squeeze every last bit of billable work from Plaintiff before throwing her out of the proverbial building. SAC ¶¶469-470.

The "internal demand" for Plaintiff's work was clearly not declining. Defendants are clearly unhinged by Plaintiff's detailed allegations of enduring over a decade of sexual harassment, a toxic work environment, and gender discrimination. Defendants have and will continue to lie and cheat to escape this lawsuit at any cost, regardless of how low or false their tactics may be. Defendants are not entitled to a pre-answer dismissal of Plaintiff's second amended verified complaint.

## III.    GOVERNING LEGAL STANDARD AND AUTHORITIES

An operative complaint is to subject to dismissal where it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*internal citations and quotations omitted*). The governing standard thus "is one of 'flexible plausibility,' requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge[ ] [her] claims across the line from conceivable to plausible.'" *Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (*quotations omitted*).

"In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept as true all facts alleged in the complaint…The court is to draw all reasonable inferences in favor of the plaintiff." (*Kassner v 2nd Ave. Delicatessen, Inc.*, 496 F3d 229, 237 [2d Cir. 2007]).   Given this requisite standard, there is no basis to dismiss any of the causes of action set forth in the Second Amended Verified Complaint.

Here The SAC pleads, as noted infra, Section II, that DePalma engaged in a decade-long campaign to sexually harass Plaintiff in his created and permeation of a toxic, hostile, and aggressively anti-female environment, under which Plaintiff had to work.  A reasonable person subjected to such humiliating abuse (*e.g.*, SAC  ¶185) for this length of time would certainly perceive such to be an abusive and hostile environment, as Plaintiff did.  Plaintiff has specifically pled that DePalma's unlawful conduct was directed at Plaintiff based upon her gender, coupled with Plaintiff's refusal to acquiesce to DePalma's creepy misogynistic values.  SAC ¶187.  Based upon Plaintiff's undisputed verified factual allegations, "a reasonable fact finder could conclude that the sexual harassment in Plaintiff's work environment… was objectively both severe and pervasive… [and] to show that the hostility and abusiveness she experienced was in part motivated by her gender."  (*Riggs v Akamai Tech.*, 2024 US Dist LEXIS 119502, **9-10 [S.D.N.Y. July 8,

2024, No. 23 CV 06463-LTS]).  Defendants have offered nothing that alters these undisputed verified facts.

Likewise, Defendants bizarre attempt to cauterize their unlawful conduct some time in 2016, is directly controverted by the operative SAC.  In fact, "[h]ostile environment claims are different in kind from discrete acts, in that [t]heir very nature involves repeated conduct." *Id.* (*citations omitted*).

> In the Second Circuit, a court may consider discriminatory incidents that would otherwise be time barred if the untimely incidents are 'sufficiently related' to a discriminatory incident which occurred within the limitations period. A court must make an 'individualized assessment of whether incidents and episodes are [so] related' that the continuing violation doctrine may apply to permit the consideration of time-barred incidents. Although there is no uniform approach, three relevant principles from case law guide the Court's analysis. (*internal citation omitted*). *Id. **12-13.*

### A. Plaintiff Has Stated Claims for Hostile Work Environment, Sexual Harassment, and Gender Discrimination against Thompson Hine in the <u>Eleventh Cause of Action</u>

The SAC sets out in detail in the Eleventh Cause of Action facts that that constitutes sexual harassment, hostile work environment, and discrimination on the basis of gender against DePalma and the Firm.  (SAC ¶¶651-662, which too includes each allegation of the SAC, as though fully set forth therein).

This District Court's most recent analysis of Title VII sexual harassment claims governs here, and it was available to Defendants before they filed this Motion, but not cited or offered to the Court as controlling.  (*Riggs v Akamai Tech.*, 2024 US Dist LEXIS 119502, **8-9 [S.D.N.Y. July 8, 2024, No. 1:23-CV-06463-LTS]).  Plaintiff is entitled to seek relief against Defendants for sexual harassment she suffered at the Firm proceeding under the theory of a hostile work environment, and this is true for each of her claims, whether brought under Title VII or that are set forth as state or city claims brought under the NYSHRL and NYCHRL.  *Delo v Paul Taylor Dance Found., Inc.*,

685 F Supp 3d 173, 182 [S.D.N.Y. 2023]).

In fact, like *Riggs,* Plaintiff here has stated a viable claim for sexual harassment: "To state such a claim, a plaintiff must plead facts that support three elements: (1) the alleged conduct is 'objectively severe or pervasive' such that it 'creates an environment that a reasonable person would find hostile or abusive'; (2) the plaintiff 'subjectively perceives' the environment as 'hostile and abusive'; and (3) such an environment is created because of the plaintiff's sex" *citing  Patane v. Clark*, 508 F.3d 106, 113 [2d Cir. 2007]. The governing law confirms that Plaintiff "only bears the burden of pleading enough facts to show that a reasonable employee would find her 'conditions of [] employment altered for the worse.'" *Id.* *14 *citing  (Terry v Ashcroft, 336 F3d 128, 148 [2d Cir. 2003])*("While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse").* Defendants' effort to minimize the sexual harassment suffered by Plaintiff as not "sever and pervasive" misses the point (Motion, pp. 12-13), and was flatly rejected by the Second Circuit when it opined that the District Court was "mistaken" "to the extent that the district court suggested that conduct must always be both severe *and* pervasive to be actionable under a hostile work environment theory." *Terry v Ashcroft*, 336 F3d at 149.

As Plaintiff has plead sufficient verified facts giving rise to a claim for sexual harassment under Title VII, Defendants' efforts to dismiss Plaintiff's like claims under NYSHRL and NYCHRL plummet as well "[b]ecause Title VII imposes a higher standard than the NYSHRL and NYCHRL [statutes], the Court also denies the motion to dismiss Plaintiff's hostile work environment claims under the state and local human rights laws." *Riggs*, *14. The same is true for Plaintiff's claims

that arise under Title VII NYSHRL and NYCHRL, all should survive Defendants vague efforts at dismissal.

**B. PLAINTIFF'S <u>FIRST AND SECOND CAUSES OF ACTION</u> STATE VIABLE CLAIMS FOR SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT, AND DISCRIMINATION IN VIOLATION OF NYSHRL AND NYCHRL AS AGAINST THE FIRM AND DEPALMA**

The SAC sets out in detail in the First Cause of Action, facts that constitute sexual harassment, hostile work environment, and discrimination on the basis of gender against DePalma and the Firm, based upon violations of NYSHRL §§ 290 *et seq.* (SAC ¶¶549-559, which includes each allegation of the SAC, as though fully set forth therein).  Likewise, Plaintiff pled in the SAC facts that constitute sexual harassment, hostile work environment, and discrimination on the basis of gender as against DePalma and Thompson Hine in violation of NYCHRL, §8-502 *et seq.* SAC ¶¶560-567, which includes each allegation of the SAC, as though fully set forth therein).

In *Delo v Paul Taylor Dance Found., Inc.*, 685 F Supp 3d 173 [S.D.N.Y. 2023]) this District:

> Court focused on Plaintiff's "NYCHRL claim, which has the 'most lenient applicable liability standard.  Under the NYCHRL, a plaintiff alleging a hostile work environment theory of sexual harassment only needs to show that she has been treated less well than other employees because of her gender, or put differently, faced unwanted gender-based conduct. And plaintiffs need not establish that discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment, only that they were treated less well at least in part because of [their] gender. [citing *Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102 [2d Cir. 2013]) (emphasis omitted). While the NYCHRL is not a general civility code,…it should be construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible. (internal quotations and citations omitted).

There can be no legitimate dispute that Plaintiff, over the course of more than 10 years, was treated less well than other male attorneys based upon her gender, as that is exactly what the verified pleading articulates.  The complaint is rife with references to DePalma's gender driven unlawful conduct, including his relentless efforts to humiliate Plaintiff and to interfere with her professional career at the Firm, and ultimately succeed in his long game of getting Plaintiff shoved out of the building.  *See, supra,* Section II, pp. 3-6.

### C.  Plaintiff Has Stated a Claim for Defamation, that is Unprivileged against Thomas Lawrence Feher and Thompson Hine in the Eighth Cause of Action

Plaintiff's Eighth Cause of Action specifically pleads (SAC ¶¶ 596-611, which includes each

allegation of the SAC, as though fully set forth therein) that:

Thompson Hine and Feher's Defamatory Letter, dated February 23, 2023, as submitted to the EEOC, that contained specific and false statements, including, *inter alia*, that Plaintiff got herself and the firm fired, that she was known as "heavy biller," are statements that impute incompetence, dishonesty and criminality as to the Plaintiff, and are defamatory *per se*, as there is specific reference, direct and indirect, in the words chosen by Thompson Hine and Feher, which connects the charge of incompetence, dishonesty and criminality to the Plaintiff's particular profession as an attorney at law.  The statements contained in the Defamatory Letter are defamatory *per se*.  The Defamatory Statements conveyed to the EEOC that Plaintiff was violating the Rules of Professional Conduct, engaged in some billing practice that was improper, tagging her as a "heavy biller" (which is criminal, akin to a RICO violation), lying about pretextual reasons for unlawfully terminating Plaintiff in an effort to dissuade the EEOC from further investigation the firm, are all actionable words that were included with malevolent intent injure Plaintiff in her profession as an attorney. The Defamatory Letter was not a general reflection upon Plaintiff's character or qualities, the choice of word used were specific and intended to convey to the EEOC that Plaintiff was a poor performer with a reputation of illegal "heavy" billing, statements that are untrue, unsupported, directly contradicted by the contemporaneous evidence, repeat client accolades, and improperly associate Plaintiff with improper conduct (and illegal conduct) in Plaintiff's business as a professional attorney at law… Thompson Hine and Feher's statements have no relevance whatsoever to the heart of the dispute with Plaintiff and that are demonstratively false statements, inherently devoid of truth, and as such can never be deemed relevant, or pertinent, as there very nature precludes any semblance of factual foundation. Thompson Hine and Feher find themselves bereft of the sanctuary of privilege to conceal the untruths they peddled to the EEOC to avoid its investigatory power. Thompson Hine and Feher's falsehoods, had they been truthful, might have found some refuge under the aegis of quasi-judicial proceedings, yet Plaintiff has the documentary evidence, and witnesses (other than Plaintiff) with personal knowledge, all of whom will confirm that Feher lied. Indeed, Thompson Hine and Feher's false statements of fact undeniably expose themselves as egregious falsehoods, devoid of any semblance of truth – a fact that precludes a possibility of invoking the protective veil of privilege. The Thompson Hine Defamatory Letter was issued pursuant to regularly issued process. The content of the Defamatory Letter was stroked with vindictive inked, with an intent to harm Plaintiff, obfuscate Thompson Hine's unlawful conduct, deceive and mislead the EEOC's investigation, attempt to intimidate and humiliate Plaintiff such that Plaintiff would not file this lawsuit, gain an unfair and false advantage in both the EEOC investigation and this lawsuit and each was done without excuse or justification. The Defamatory Letter was intentionally and malevolently concocted with the purpose of achieving a sinister and improper collateral objective, as outlined herein, including a deliberate and strategic evasion of the EEOC investigation with the intent to manipulate and pervert the results in

its favor, coupled with a blatant disregard for professional, ethical, and legal authorities that expressly forbid lawyers from engaging in fraud and treachery upon a tribunal of any kind. Thompson Hine and Feher cannot shield their lies behind any claim of immunity simply because their lies were submitted to the EEOC. As Thompson Hine and Feher's written statements were made with specious malice and with the intention to harm Plaintiff and abuse the administrative process at the EEOC, as such they are not entitled to either qualified immunity nor absolute immunity. Thompson Hine and Feher's Defamatory Letter constitutes defamation *per se.*

For more than 125 years, the law in New York has remained as stated in *Youmans v Smith*, 153 NY 214, 220 [1897]) (as relied upon by Read and Feher, Docket Nos. 40 and 41, in their reliance of *Farzan v Wells Fargo Bank*, 2013 US Dist LEXIS 11121, **11-12 [S.D.N.Y. Jan. 25, 2013, No. 12 CV 1217 (RJS)(JLC)] that confirms that the principles announced in *Youman remain controlling*).  In *Farzen* the Court specifically relies upon *Youmans v. Smith*, 153 N.Y. 214, 47 N.E. 265 (1897):

> If counsel through an excess of zeal to serve their clients, or in order to gratify their own vindictive feelings, go beyond the bounds of reason and by main force bring into a lawsuit matters so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice, they lose their privilege and must take the consequences. In other words, if the privilege is abused, protection is withdrawn.

As this Court has confirmed, with regard to a claim for defamation,

> [a]t this stage, a party may only overcome common interest privilege by pleading specific and plausible allegations of actual malice…Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication. Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication…

(*Editor's Pick Luxury LLC v Red Points Solutions SL*, 2023 US Dist LEXIS 177023, *6 [S.D.N.Y. Sep. 29, 2023, No. 22 CV 07463 (ALC)]).  While the plaintiff there did not allege the requisite "malice," Plaintiff here specifically alleges malice. See, SAC ¶¶ 609, 611; cf. (*Deaton v Napoli*, 2019 US Dist LEXIS 6607 [E.D.N.Y. Jan. 10, 2019, No. 17 CV 04592 (JFB)(GRB)])(malice not relevant).  Of the cases that have opined on the litigation privilege, the collective consensus emerges that the privilege will apply, where it is material, pertinent or relevant to the

litigation/judicial proceeding.  Plaintiff has specifically plead that: "Neither Thompson Hine nor Feher can hide behind the absolute privilege that would otherwise attach to an administrative proceedings and related submissions, as the words they intentionally stroked and used were not pertinent to the EEOC's investigation, and were so needlessly defamatory and warrant the factual inference of express malice, strips away any semblance of protection afforded by absolute privilege, laying bare their liability to the claims advanced herein for defamation and abuse of process;" and that "The law offers no shield for liars like Feher; his defamatory statements will never be material, never be relevant, never be pertinent, as lies just don't qualify." (SAC ¶¶9, 118). Where, as here:

> .…the defendants failed to establish, *prima facie*, that the statements made by the defendants at the sales force meeting attended by brokers and sales agents, and made in the complaint filed with the New York State Division of Licensing, were not false assertions of fact…Additionally, the defendants failed to establish, *prima facie*, that the challenged statements were not defamatory *per se*, since the statements, *inter alia*, charged the plaintiff with stealing clients and taking unauthorized commissions, and would tend to injure the plaintiff in her profession. To the extent that public policy mandates open access to the courts for the redress of wrongs while concomitantly penalizing those who manipulate proper legal process to achieve a collateral advantage, a cause of action for abuse of process lies not for the commencement of an action but for the perversion of the process after it is commenced. (*Li v Navaretta*, 220 AD3d 758, 761 [2d Dept 2023]).

It is unequivocal that the Feher and Thompson Hine's Defamatory letter attributed criminal and unlawful conduct upon Plaintiff and such comments were meant to impugn Plaintiff's unblemished professional record as an attorney.  Thomspon Hine, Feher, and now Read, seek to duck and cover under the guise of claimed privileges; none are available to any of them. There is no basis to dismiss the well pled allegations giving rise to Plaintiff's claim for defamation as against Feher and Thompson Hine.

**D. PLAINTIFF'S <u>THIRD CAUSE OF ACTION</u> SETS FORTH A VIABLE CLAIM AGAINST THOMPSON HINE FOR AIDING AND ABETTING/INCITING/COMPELLING/COERCING VIOLATIVE OF THE NYSHRL**

Plaintiff's Third Cause of Action specifically pleads (SAC ¶¶568-572, which includes each allegation of the SAC, as though fully set forth therein) all of the elements giving rise to this claim.

To clarify the pinball machine approach Defendants take in their scattered effort to dismiss the SAC, with regard to the liability that arises under NYSHRL and NYCHRL, the recent decision, not cited by Defendants, is instructive: (*Nezaj v PS450 Bar & Rest.*, 2024 US Dist LEXIS 33489 [S.D.N.Y. Feb. 27, 2024, No. 24 CV 8494 (PAE)])(confirming that the NYSHRL provides for liability for discrimination on the part of employers only).

In Plaintiff's most recent review of the SAC, the language still offers that the Third Cause of Action is alleged as against "All Defendants," given the controlling law, Plaintiff asks permission to change "All Defendant" to "Thompson Hine." The Third Cause of Action should be alleged as against Thompson Hine, as it is liable for aiding and abetting violations under NYSHRL:

> the NYSHRL does permit an individual (including an employee) to be held liable for aiding and abetting a liable employer. *See, e.g., Baptiste v. City Univ. of N.Y.*, [680 F Supp 3d 415 [S.D.N.Y. 2023])("[Individual defendants] can be held liable under the state statute only on an aider-and-abettor theory."); (*Bueno v Eurostars Hotel Co.*, 2022 WL 4605, at *7 [S.D.N.Y. Jan. 7, 2022, No. 21 CV 535 (JGK)])("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct.

The Fourth Cause of Action properly alleges aiding and abetting as against all Defendants, as such is proper under governing decisional law as set forth in *Nezaj*.

**E. PLAINTIFF'S <u>FOURTH CAUSE OF ACTION</u> SETS FORTH VIABLE CLAIMS AGAINST ALL DEFENDANTS FOR AIDING AND ABETTING/INCITING/COMPELLING/COERCING VIOLATIVE OF THE NYCHRL**

Plaintiff's Fourth Cause of Action specifically pleads (SAC ¶¶573-577, which includes each allegation of the SAC, as though fully set forth therein) the requisite elements of a cause of action

giving rise to a direct violation of NYCHRL's prohibition against aiding and abetting/inciting/compelling/coercing unlawful conduct.

In addressing the aiding and abetting claims under the NYCHRL, Defendants' Motion misses the point and the governing law, as the SAC here confirms, and it is undisputed that, DePalma's conduct was known to the remaining Defendants and their collective failure to stop it, despite such knowledge, aided DePalma's further unlawful conduct directed at Plaintiff.

A further review of the *Nezaj* decision confirms that:

> In contrast to the NYSHRL, the NYCHRL extends liability to employees, not just employers, a feature of the statute that *Doe* itself recognizes. *See [Doe v Bloomberg L.P.*, 36 NY3d 450 [2021] (employees may incur liability [under the NYCHRL] [] for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."). Therefore, an individual defendant, although not qualifying as an employer, may be held liable for discrimination either (1) directly, for his own participation in discrimination, or (2) for aiding and abetting other liable persons (including the employer). *See, e.g., Charles v. City of New York*, No. 21 Civ. 5567 (JPC), 2023 U.S. Dist. LEXIS 57078, 2023 WL 2752123, at *7 (S.D.N.Y. Mar. 31, 2023) ("The New York Court of Appeals explained in Bloomberg that, for purposes of the NYCHRL, employees 'may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct' (*quoting Doe*, 143 N.Y.S.3d at 292)); *Sutter v. Dibello*, No. 18 Civ. 817 (SJF) (AKT), 2021 U.S. Dist. LEXIS 46312, 2021 WL 930459, at *30 (E.D.N.Y. Mar. 10, 2021) (language in NYCHRL referring to any 'person' allows individual liability under direct and aiding and abetting theories of discrimination).

*Nezaj v PS450 Bar & Rest.*, 2024 US Dist LEXIS **17-19

The SAC confirms that each of the equity partners, Read, Feher, and DePalma, and through Feher and Read, Thompson Hine knew year after year of unlawful sexual harassment and gender discrimination against Plaintiff, and their failure to do anything enabled it to continue. Such failures gave DePalma the continual green light to persist in his misogynism conduct towards, and discriminatory vendetta against, Plaintiff. Nothing in Defendants' Motion alters these undisputed verified facts and nothing in their over-page-limit memorandum warrants dismissal.

**F. PLAINTIFF'S <u>TENTH CAUSE OF ACTION AGAINST</u> READ FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS STANDS AS DEFENDANTS RELY UPON THE WRONG STANDARD AND THE WRONG LAW**

The SAC (¶¶640-650, which too includes each allegation of the SAC, as though fully set forth therein) states a cause of action against Read for her reckless and negligent infliction of emotional distress.

Apparently, Plaintiff has to educate Defendants and their counsel concerning the governing State of the law in New York.

Defendants cite *Hopper v Banana Republic, LLC*, 2008 US Dist LEXIS 13503 [S.D.N.Y. Feb. 25, 2008]) in their Motion (pp. 24-25) for the proposition that a claim for negligent infliction of emotional distress: "may only proceed where the allegations of conduct are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

That was likely true in 2008. But it is not the state of the law today.

In a 2023 decision, citing the Second Circuit, *Potrzeba v Sherburne-Earlville High Sch.*, 2023 US Dist LEXIS 227159, **32-34 [N.D.N.Y. Dec. 21, 2023, No. 23 CV 191 (BKS)(ML)]), confirmed that: "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." In denying defendant's motion to dismiss a negligent infliction of emotional distress cause of action, the Court stated as follows:

> Defendants' only argument for dismissal with regard to Plaintiffs' claim for negligent infliction of emotional distress claim is that Plaintiffs have not pleaded any extreme or outrageous conduct, but the Court concludes that extreme and outrageous conduct is not an element of a claim for negligent infliction of emotional distress under New York law. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress is denied.

Similarly, the 2024 decision in *Gilmore v Family Dollar*, 2024 US Dist LEXIS 111823 [W.D.N.Y. June 25, 2024, No. 24 CV 6045-FPG]) confirms that pursuant to the "direct duty theory" Plaintiff was not required to demonstrate fear of Read: "a plaintiff may recover for emotional injuries 'caused by a defendants' breach of a duty owed to [him]…a plaintiff may recover for emotional distress where the defendant owed a duty to plaintiff and breached that duty, resulting directly in emotional harm, even if he did not suffer a physical injury." There is no legal basis offered in Defendants Motion that would justify dismissal of the negligent infliction of emotional distress claim, as set forth in the Tenth Cause of Action, particularly where Defendant cited and relied upon the wrong law and the wrong standard.

**G. Plaintiff's Fifth, Sixth and Seventh Causes of Action Properly Plead Claims Against all Defendants for Post-Employment Retaliation in Violation of NYSHRL and NYCHRL, Whistleblower Retaliation and Post Employment Retaliation in Violation of NYLL § 740**

Plaintiff's Fifth, Sixth and Seventh Causes of Action specifically plead (SAC ¶¶578-583, ¶¶584-590, and ¶¶591-595, respectively, which also includes each allegation of the SAC, as though fully set forth therein) the requisite elements of post-employment retaliation against Plaintiff in violation of NYSHRL, NYCHRL and Violation of New York Labor Law §740.

The SAC confirms that after April 29, 2022, each of the Defendants retaliated against Plaintiff based upon Plaintiff's outgoing demand that the Firm once and for all conduct a proper investigation of DePalma's sexual harassment and gender discrimination. (SAC ¶332). Thompson Hine, Feher, and Read failed to conduct any reasonable investigation into Plaintiff's claims of sexual harassment and gender discrimination as raised while Plaintiff was still employed at the Firm (*id.* ¶333-334) and purposely excluded Plaintiff from their *faux* investigation (*id.* ¶360), DePalma lied during the investigation during the period Plaintiff was still at the Firm (*id.* ¶362) (based upon the revisionist history he and Kozkco had concocted during their fishing troupe (*id.*

¶¶16, 362, 365)).  The post-employment retaliation against Plaintiff included Feher and Thompson Hine, with Read's involvement, directly and/or indirectly, false and defamatory lies to the EEOC in the Defamatory Letter. The Defamatory Letter was per se defamatory, an abuse of process, and was both about Plaintiff and interposed by these defendants to avoid any preying eyes from the EEOC knocking on the Firm's door.

It appears, although inartfully, that Defendants argue that Plaintiff's calling DePalma out for defrauding the Firm, in using its lawyers for his own personal improper purposes on the faux pro bono matter and violating Firm policy and governing ethical rules is, according to Defendants, not a protected activity.  Having scoured legal resources, Plaintiff has not found a case that opines one way or the other, as to whether reporting fraud of this type, which is sapped in ethical violations rolled into fraud, is a protected activity.  NYLL § 740(2) prohibits an employer from taking retaliatory action against an employee when that employee "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety." NYLL § 740(2)(a). Plaintiff has pleaded exactly that.

Defendants cite nothing to support that such conduct is *not* protected activity.  However, even if the Court were to determine that the obligatory reporting of DePalma's fraud was not a "protected activity" under governing authority, the SAC is not so limited.

Plaintiff specifically pled that Feher and the Firm's settlement offers were purposefully ludicrous in their demands for Plaintiff's silence, demands that Plaintiff submit to the jurisdiction of Ohio and continue billing for the profit of the Firm (*id.* ¶¶367-371), Plaintiff's SAC confirms that Feher/Thompson Hine retaliated against Plaintiff in their interactions while Plaintiff was still

at the Firm, *supra,* and after her departure, including retaliation for Plaintiff's filing of the EEOC complaint, that is in fact protected activity; Thompson Hine, Feher and Read all retaliated against Plaintiff in the Defamatory Letter to the EEOC seeking to instill the fear of their Ivory Tower and signaling that nothing was off limits in their defense to Plaintiff's claims, including big fat lies. As Defendants fail to address any of the associated caselaw that covers retaliation premised upon an EEOC filing, as Plaintiff has alleged here, or per-employment settlement demand retaliation, there is no basis to dismiss this claim. (*Calise v Casa Redimix Concrete Corp.*, 2022 US Dist LEXIS 20962, **12-14 [S.D.N.Y. Feb. 4, 2022, No. 20 CV 7164 (PAE)]):

> To allege a prima facie case of retaliation under the…NYSHRL, a plaintiff must allege that: (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.
>
> [T]he NYCHRL's definition of retaliation is broader than that of federal law or the NYSHRL. [T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action *citing Mihalik v. Credit Agricole Cheuvreux N Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)).

Plaintiff's pre-departure complaints of gender discrimination and sexual harassment by DePalma, the failure to investigate the Plaintiff's claims, as well as the retaliation Feher engaged in the ludicrous settlement documents he proposed,   all of which constitute retaliation under both NYSHRL and NYCHRL.  Likewise, Feher, Thompson Hine, and Read knew that the Defamatory Letter would interfere with future employment opportunities presented to Plaintiff, rendering it an adverse employment retaliatory action as well as Feher's and the Firm's unauthorized use of Plaintiff's bar licenses (SAC ¶542) both fall squarely into the definitions of retaliatory conduct. Defendants have failed to articulate any viable factual or legal basis to dismiss Plaintiff's Fifth and Sithx Causes of Action, and their Motion seeking such should be rejected.

### H. THE SAC SUFFICIENTLY DETAILS PLAINTIFF'S <u>NINTH CAUSE OF ACTION</u> IN ABUSE OF PROCESS AS AGAINST READ, FEHER AND THE FIRM

The governing law confirms that Plaintiff has properly pled a viable abuse of process claim, and Defendants relied on outdated decision law does not salvage their effort to dismiss here.

In this Circuit, the sister District Court of Connecticut conducted an analysis of an abuse of process claim. (*Getachew v L&S Invs., LLC*, 2024 US Dist LEXIS 62857 [D Conn Apr. 5, 2024, No. 3:23-CV-01381 (JCH)]). In denying a motion to dismiss an abuse of process claim, the Court noted that use "of a judicial process for an improper purpose occurs when a party uses that process for something for which it was not designed…and [s]uch improper purpose must be the primary, rather than the incidental, reason the tortfeasor engages in the process in question…Accordingly, a plaintiff must point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." The allegations of *Getachew* are most similar to those alleged here by Plaintiff in the SAC: That the Firm, Feher and Read's issuance of the response to the EEOC was intentionally littered with false statements, defamatory statements and lies in an effort to sway the EEOC not to investigate the Firm for its sexual harassment and gender discrimination abuses. Defendants cannot argue intent on a motion to dismiss, and there attempt to limit Plaintiff's abuse of process claim solely to the defamatory statements in the EEOC falls flat by simply reviewing the cause of action itself. Plaintiff pleads:

> The *post hoc* justifications proffered in Thompson Hine's Defamatory Letter to rationalize the demand for Plaintiff's resignation, reveal a desperate reach for a nondiscriminatory or non-retaliatory after the fact basis, all of which form a deluge of false factual assertions, including: (A) the false statement of fact that Plaintiff and the firm were fired as a result of Plaintiff's billings to a particular client; (B) the statement that Plaintiff's remote work/relocation to Florida was unknown and unauthorized by Thompson Hine and such impacted and/or hastened the decision to demand Plaintiff's resignation; (C) false statement that Plaintiff was known as a "heavy biller." Each of the foregoing false fabrications constitutes an abuse of process under New York law, as each was made pursuant to normal process, but with the specific improper purpose of misdirecting and committing fraud upon the EEOC investigation and to derail Plaintiff's stated intention to sue Thompson Hine under the protections afforded by Title VII and other statutes that

protect employees from unlawful discrimination. If Thompson Hine, Read or Feher actually believed in their disparagement of Plaintiff's legal work, ethical obligations would require filing an official complaint and informing firm top tier clients, along with all of the additional clients that Plaintiff worked, that Thompson Hine believed that a lawyer under its authority had billed for legal services that were not provided, under its term "heavy biller."… Thompson Hine, Read and Feher's endeavor to trash Plaintiff legal performance in the eyes of the EEOC and beyond, which is an improper and unprotected perverted purpose and abuse of process, at the expense of their own clients, in stating (not opining) that Plaintiff was a "heavy biller" is a total mission failure, and the epitome of Thompson Hine, Read and Feher's rancid deceit and abuse of process. Indeed, Thompson Hine's sits in purgatory, alleging on the one hand, after the EEOC complaint was filed, that Plaintiff was a "heavy biller," and on the other hand, at the same time claims Plaintiff's billable hours were to low: if Thompson Hine is intent on continuing to lie, it should at least lie consistently. Thompson Hine, Read and Feher, mired in their own web of deceit and evasion, fail to provide any valid attestation to false statements to the EEOC and instead offer cryptic accounts of events that never happened or allude to words that were never spoken. Thompson Hine, Read and Feher's very fabric of fraud on the EEOC and abuse of process is interwoven with verifiably false information and deflections, that are nothing short of disgraceful. While Thompson Hine fosters an environment rife with systemic discriminatory and disparate treatment, it is a whole new level of deception and fraud to blatantly lie in response to an EEOC investigation to conceal Thompson Hine's discriminatory and other unlawful conduct. Thompson Hine's pretentious act of defiance, ineptly scribed by Feher, seeks to conceal the true nature of the unlawful conduct, but their dismal effort to cover their tracks crumble in the face of the unwavering truth and is equally demonstrative of the length and lies Thompson Hine will spin to deflect attention of a legitimate and fulsome investigation by the EEOC or claims like the ones alleged here. If the Firm had actually engaged counsel to conduct a proper investigation of Plaintiff's claims of unlawful conduct, and provided a truthful response to the EEOC, it would not have to spin the story so hard that it boomerangs to reveal its subversion. Thompson Hine, and Feher, with upon information and belief, Read's blessing and knowledge, submitted a falsified position statement to the EEOC that contained malevolent, and malice laced false statements, for an improper purpose, that being to gain an unfair advantage in their effort to dissuade the EEOC from its investigatory powers to fairly evaluate Plaintiff's charge. Thompson Hine, and Feher, upon information and belief, with Read's blessing and knowledge, intentionally tried to harm Plaintiff without excuse or justification. Thompson Hine, and Feher, upon information and belief, with Read's blessing and knowledge used the EEOC process in a perverted manner to obtain a collateral objective, to interfere with the administrative process, intimidate Plaintiff from pursuing her EEOC charge, by including false statements and defamatory statements therein…Thompson Hine, Feher and Read stooped to despicable depths in their desperate and improper purpose of distracting the EEOC's inquiring eyes, by intentionally and with malice branding Plaintiff as a "heavy biller," akin to leveling criminal accusations against plaintiff, all of which are demonstrably false and defamatory.… Liars are not protected…(SAC ¶¶ 613-638).

Defendants effort to recast the facts to fit their false narrative is futile.  The SAC propery plead

each and every element on a claim sounding in abuse of process.  Too, the decisional law Defednatn

place reliance is deficient, defective and does not support dismissal of Plaintiff's claim here.

Although relevant abuse of process decisional law is space, (*Lundgren v Margini*, 30 AD3d

476 [2d Dept 2006]) is spot on.  There, the New York Appellate Division confirmed that the lower

Court had properly:

> denied the cross motion of the defendants Leslie Margini and Steven Margini for summary
> judgment dismissing the abuse of process causes of action, based upon triable issues of fact
> concerning whether they intended to do harm to the plaintiff without excuse or justification
> and whether they sought a collateral advantage or corresponding detriment to the plaintiff
> outside the legitimate ends of the process

(*Lundgren v Margini*, 30 AD3d 476, 477 [2d Dept 2006]); see also, (*Li v Navaretta*, 220 AD3d

758 [2d Dept 2023]) ("with regard to abuse of process, the defendants failed to eliminate triable

issues of fact as to whether they intended to do harm to the plaintiff without excuse or

justification").

Court's in New York are increasingly embracing the abuse of process cause of action

to remedy the misuse of the judicial system.  The same is true here, as Plaintiff has specifically

alleged that the Firm, Feher, and Read specifically meant to harm Plaintiff by their unlawful

conduct.  Defendants have failed to satisfy the burden on their quest for dismissal and the Court

should deny their reach for relief to which they are not entitled.

## IV.    THE FED. R. CIV. P.  ALLOW ONE MOTION TO DISMISS – NOT THREE

Defendants may move to dismiss some or all Plaintiff's claims, but can only make one motion

to dismiss, asserting all available defenses.

> Rule 12 is meant to enact a consolidation principle such that, while a defendant is at no
> time required to file a pre-answer Rule 12(b) motion, if it does choose to do so before
> answering the complaint, then the defendant is bound by the consolidation principle in Rule
> 12(g), which contemplates a single pre-answer motion in which the defendant asserts all of
> the Rule 12 defenses and objections then available to [it]. *citing* 5C Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022)

(*Easton Rae, LLC v Violet Grey, Inc.*, 2023 US Dist LEXIS 54321 [S.D.N.Y. Mar. 29, 2023, No. 21 CV 6234 (JPO)]). In complete disregard, Defendants have filed three separate notices of Rule 12 motions (Docket Nos.: 51 compel arbitration, 54 personal jurisdiction Read/Feher, 56 to dismiss). This is not permitted under governing Rule and Defendants proceeded at their peril in their concerted effort to make their seriatim trifecta motions practice more onerous on the Plaintiff, and upon the Court. The Court should not reward their gamesmanship.

## V.    DEFENDANTS EFFORT TO CHEAT AND "INCORPORATE" OTHER MEMORANDA IS IMPROPER

Contrary to Defendants' attempt, they are not "permitted to incorporate arguments by reference in [a] memorandum of law…Such a practice (1) violates the District's rule on page limitations, and (2) confuses the Court as to which particular 'incorporated' arguments are actually being relied upon." (*Knight v Fannie Mae*, 2014 US Dist LEXIS 138037, *33 [N.D.N.Y. Sep. 30, 2014, No. 13 CV 0183(GTS)(RFT)]); *In re Axa Equit. Life Ins. Co. Coi Litig.*, 595 F Supp 3d 196 [S.D.N.Y. 2022] *citing Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 2012 WL 2522651, at *2 n.2 [N.D.N.Y. June 27, 2012, No. 09 CV 0196 (GTS) (ATB)]. Defendants further efforts to cheat and manipulate the margins to cram their legal arguments beyond the page limits violates this Court's Rule, 2.B. which permits "A memorandum of law, in support of or in opposition to any motion, is limited to 25 pages." Likewise, Defendants seek shade in the fact that Plaintiff's domicile was in Florida at the time of her separation and that somehow eviscerates the New York City conduct that she was subjected to as not being within the protections of New York State and New York City statutory laws. Defendants' "nonresident" theory was flatly and categorically rejected in *Syeed v Bloomberg L.P.*, 41 NY3d 446 [2024]) and thus reliance on such is without merit.

## VII. CONCLUSION

Based upon the foregoing Plaintiff respectfully requests that the Court deny Defendants' Motion

to Dismiss and grant Plaintiff with such other and further relief that may be just and proper.

Dated: July 26, 2024                    Brazzano Law PLLC
      New York, New York          /s/ *Rebecca Brazzano*
                                 Rebecca Brazzano
                                 43 West 43rd Street, Ste. 264, NY, NY 10036
                               rbrazzano@brazzanolaw.com 561.685.3812

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2024, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' EMPTY MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification to all parties' counsel of record herein.

*/s/ Rebecca Brazzano*
Rebecca Brazzano
