**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

REBECCA BRAZZANO,

                              **Plaintiff,**

    -against-

THOMPSON HINE LLP, RICHARD
ANTHONY DE PALMA (in his individual and
professional capacities), DEBORAH ZIDER
READ (in her individual and professional
capacities), and THOMAS LAWRENCE
FEHER,

                           **Defendants.**

24-CV-01420 (ALC)(KHP)

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Rebecca Brazzano filed the instant case alleging various claims dealing with sexual harassment and gender discrimination against Defendants Thompson Hine LLP ("Thompson Hine"), Richard De Palma, Deborah Read, and Thomas Feher.  Defendants move to compel arbitration of all of Brazzano's claims in the Second Amended Complaint ("SAC") and to stay the proceedings pending arbitration.  ECF No. 51.  Defendants Feher and Read move to dismiss the SAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  ECF No. 54.  Defendants also move to dismiss the SAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 56.

Defendants' motion to compel arbitration and stay the proceedings pending arbitration is **DENIED**, Defendant Feher and Read's motion to dismiss the SAC for lack of personal jurisdiction is **DENIED** in part and **GRANTED** in part, and Defendants' motion to dismiss the SAC is **DENIED**  in part and **GRANTED** in part.

1

## BACKGROUND

### I.    Factual Background

#### a.    Brazzano's Allegations

The Court assumes the truth of the well-pleaded allegations of the SAC.  ECF No. 50. Brazzano is an attorney domiciled in Florida.  SAC ¶ 25.  From 2008 to 2022, Brazzano was an employee at the New York City office of Thompson Hine, a law firm with a principal office in Cleveland, Ohio.  *Id.* ¶ 26, 28, 30.  De Palma was a resident of New York State and was an equity partner of Thompson Hine during the relevant period.  *Id.* ¶¶ 33–34.  Read was a resident of Ohio and was an equity partner of Thompson Hine during the relevant period.  *Id.* ¶¶ 38, 40. Feher was a resident of Ohio and was an equity partner of Thompson during the relevant period. *Id.* ¶¶ 80–81.

Brazzano began her employment with Thompson Hine as of counsel in September 2008. *Id.* ¶ 134.  At the time, there were no female partners in the New York Business Litigation Group and Brazzano was the only of counsel in the group.  *Id.* ¶ 154.  Sometime after Brazzano joined Thompson Hine, De Palma joined the firm and, by the end of 2010, Brazzano became aware of De Palma's bias against women and of his disturbing conduct directed toward Brazzano.  *Id.* ¶¶ 168–70.  Brazzano alleges that De Palma asked Brazzano to join him on a shopping trip under the pretext of impressing a female client, bragged about marrying a former associate, presented a "boys club" demeanor, failed to protect his secretary from a client's sexual harassment, kissed other female lawyers "hello" at firm meetings, and was overly interested in Brazzano's whereabouts while not being interested in those of anyone else.  *Id.* ¶ 171.

In or around 2010, De Palma was appointed Vice Chair of the New York Business Litigation Group.  *Id.* ¶¶ 175–76.  Brazzano argued against the appointment because she believed

he would destroy her reputation at the firm. *Id.* ¶ 175. Soon after assuming the role, De Palma "enacted his misogynistic and discriminatory agenda, reshaping the cultural landscape into a warped reflection of his exclusive locker room vision" in part by recanting at meetings "tales of his weekend escapades which were off topic and off color." *Id.* ¶¶ 176–77. De Palma also ensured that work coming into the New York office was directed to himself or other male attorneys, specifically excluding Brazzano from work until her termination in 2022. *Id.* ¶¶ 179, 181. Brazzano alleges that she voiced complaints about Brazzano's behavior to Read and others, which fueled De Palma's intent. *Id.* ¶ 182.

Brazzano alleges that after De Palma was appointed Vice Chair, he "targeted and sexually harassed and discriminated against [her] because of her female gender." *Id.* ¶ 183. De Palma continued asking about Brazzano's whereabouts, badmouthed her, excluded her from gatherings, and made comments in the vein of "nice of you to show up" when she arrived at meetings, all of which contributed to a hostile and abusive work environment fostered by De Palma. *Id.* ¶¶ 186–87.

Notably, in May 2012, during a period in which De Palma was Brazzano's direct supervisor, De Palma brought Brazzano into his office and, in describing a new pro bono opportunity, told her that "judges know lawyers who provide legal services are working on a pro bono basis, and it's like getting jerked off by a judge." *Id.* ¶¶ 190–92. The remark was disturbing and disgusting to Brazzano, and she alleges that it was deliberately made to degrade and humiliate her. *Id.* ¶¶ 193, 195. Around this time, De Palma also told Brazzano that he would not recommend her elevation to partnership. *Id.* ¶ 196. Also around this time, Brazzano shared De Palma's comments with equity partners, but no investigation or remedial action was ever taken. *Id.* ¶ 197.

However, in 2013, Brazzano was elevated to income partner, a title she describes in contrast to other partner titles because she did not share in the firm's profits, among other things.[1] *Id.* ¶¶ 136–41. De Palma was aggressively critical of and outspoken against Brazzano's potential ascension. *Id.* ¶¶ 199–211. Even after she was ultimately named income partner, De Palma continued to exclude Brazzano from work. *Id.* ¶¶ 212–15. Brazzano alleges that Read— who was formerly the firm-wide managing partner—knew of the toxic work environment faced by Brazzano and "did precisely and exactly nothing and allowed it to continue." *Id.* ¶ 226.

In March 2022, while Brazzano served as the firm-wide chair of the pro bono committee, De Palma requested that Brazzano approve a vendor expense in connection with a pro bono matter he was pursuing. *Id.* ¶ 287. Brazzano rejected the request citing firm policy, and she alleges that De Palma then turned to the Business Litigation Practice Group leader to override Brazzano's rejection. *Id.* ¶ 292. The group leader then questioned Brazzano about her declination, and De Palma's expenses were later approved by the group leader. *Id.* ¶¶ 294, 300. Soon afterward, Brazzano and the pro bono committee launched an audit into the firm's pro bono portfolio, which resulted in an April 22, 2022 email from Brazzano to all attorneys in the New York office in which she advised that she would be designated as the billing attorney for all pro bono matters in the office. *Id.* ¶¶ 301–307.

A week later, on April 29, 2022, Read called Brazzano to request her resignation because her billable hours were too low. *Id.* ¶ 310. At that time, no one had ever hinted that Brazzano's job was in jeopardy. *Id.* ¶ 316. Brazzano instead contends that her termination is the result of

---

[1] Importantly for the disposition of the motion to compel arbitration, Brazzano alleges that the 2017 Partnership Agreement is only signed by equity and general partners of the firm. SAC ¶ 144. She also alleges that "Thompson Hine's predispute arbitration clause, which is contained in its partnership agreement, is void and unenforceable for the claims here that are grounded in sexual harassment that arose after the enactment of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ('EFAA')." *Id.* ¶ 23.

her scrutiny of De Palma's pro bono expenses and his decade-long sexual harassment and gender discrimination against her. *Id.* ¶ 317.  Brazzano alleges that after the April 29, 2022 call from Read—while Brazzano was still employed by Thompson Hine—the firm launched a sham investigation into gender issues in the New York office. *Id.* ¶¶ 342–48.  Brazzano was terminated by Thompson Hine in early June 2022. *Id.* ¶ 479.

On July 1, 2022, Brazzano filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Thompson Hine, alleging that the firm had engaged in gender discrimination under federal and New York law. *Id.* ¶ 128.  On February 23, 2023, Thompson Hine submitted a letter in response to those allegations (the "EEOC Response"), which Brazzano alleges was authored by Feher. *Id.* ¶ 129.  Brazzano alleges that certain statements in the EEOC Response, including that "[Brazzano] got herself and the firm fired" and "that she was known as 'heavy biller,'" were defamatory. *Id.* ¶ 597.

### b.  The Mandatory Arbitration Clause

Sometime in 2013, Brazzano was provided a Partnership Agreement dated October 28, 2011.  The agreement was amended in 2017 (the "2017 Partnership Agreement"), but Brazzano was not made aware of it until her termination. *Id.* ¶¶ 512–13, 515; *see also* ECF No. 50-1.  The 2017 Partnership Agreement includes a broad arbitration provision (the "Arbitration Clause") that states:

> Any dispute, claim, or controversy arising out of (a) this Agreement, (b) the relationship of the parties to this Agreement as Partners inter se, or (c) any breach of this Agreement, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration rules. The parties to this Agreement agree that the arbitration will take place in Cleveland, Ohio[.]

ECF No. 50-1 ¶ 17.  Brazzano states that she did not sign the 2011 or 2017 Partnership Agreements and alleges that the annual Letter Agreements that incorporate the Partnership

Agreement by reference expire by their own terms. *Id.* ¶¶ 513–16. Brazzano received and signed a Letter Agreement with Thompson Hine effective January 1, 2021 but signed on March 1, 2021. ECF No. 53-1 (the "2021 Letter Agreement"). This letter agreement states: "Your acceptance and approval of this letter agreement shall evidence the fact that you continue to be a party to the Firm's Partnership Agreement, as amended and restated to date." *Id.* at 2. The 2021 Letter Agreement also stipulates that it "is anticipated that [Brazzano] will continue as an Income Partner pursuant to this letter agreement until at least December 31, 2021," and that the 2021 Letter Agreement "continue[s] to apply" until a new agreement is signed, her employment is terminated, or the Executive Committee otherwise determines. *Id.* ¶ 6. However, Brazzano argues that she did not receive a Letter Agreement in 2022, so she is not bound by any agreement with the firm. SAC ¶¶ 517–18.

## II.    Procedural History

On February 23, 2024, Brazzano filed a Complaint asserting claims against Thompson Hine, De Palma, Read, and Feher. ECF No. 1. On February 27, 2024, Brazzano filed an Amended Complaint against the same Defendants. ECF No. 9.

On May 17, 2024, the Defendants sought a premotion conference with the Court in advance of their anticipated motions to compel arbitration, to dismiss for lack of personal jurisdiction as to Feher and Read, and to dismiss for failure to state a claim, ECF Nos. 39–41, and Brazzano responded in opposition to the requests. ECF Nos. 42–44. On May 31, 2024, the Court granted Defendants leave to file their motions without a conference. ECF No. 45.

On June 4, 2024, Brazzano requested permission to file a motion for leave to amend her Amended Complaint. ECF No. 46. Defendants consented to Brazzano's request, noting that Brazzano's Second Amended Complaint should comply with Rule 8 by focusing on factual

allegations rather than unnecessary and inflammatory rhetoric.  ECF No. 48.  The Court so-ordered Defendants' June 6 letter on June 14. ECF No. 49.  On June 21, 2024, Brazzano filed the SAC.  ECF No. 50.  On July 12, 2024, Defendants filed their motions.  ECF Nos. 51, 54, 56.  On July 24, 2024, Brazzano filed oppositions.  ECF Nos. 59, 62, 64.  On August 5, 2024, Defendants filed replies.  ECF Nos. 65, 67, 68.  On September 17, 2024, Brazzano filed a notice of supplemental authority regarding the motion to compel.  ECF No. 69.  On September 23, 2024, Defendants filed a response to Brazzano's notice.  ECF No. 70.  On January 1, 2025, Brazzano filed a subsequent notice of supplemental authority in connection with the motion to compel. ECF No. 71.

On February 18, 2025, the Court ordered the Parties to submit supplemental letter briefing regarding Judge Lewis J. Liman's recent opinion in *Diaz-Roa v. Hermes L., P.C.*, No. 24-CV-2105, 2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024), specifically as to its applicability to the facts in the instant case.  ECF No. 72.  On February 25, 2025, the Parties submitted their letter briefing. ECF Nos. 73–74.

## LEGAL STANDARD

### I.    Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract."  9 U.S.C. §2.  The FAA establishes "a liberal federal policy favoring arbitration agreements."  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Section 4 of the FAA provides, in relevant part, that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  The party seeking to compel arbitration bears the initial burden of

showing that an arbitration agreement was made.  *See, e.g., Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 254 (2d Cir. 2019) (vacating the denial of a motion to compel arbitration for the district court to consider unresolved issues regarding contract formation).

When determining whether the parties have entered a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal citations and quotation marks omitted).  If the existence of the arbitration agreement itself is not at issue and the dispute is within the scope of the arbitration agreement, courts must "direct[ ] the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  In deciding whether claims are subject to arbitration, the Court must determine (1) whether the parties entered into a valid agreement to arbitrate and (2) whether the claim falls within the scope of the agreement.  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)).

Parties may agree to have an arbitrator decide "'gateway' questions of 'arbitrability'" and the merits of their contractual disputes*. Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).  "Such a delegation provision 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce' and is 'valid under § 2 [of the FAA] save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52 (E.D.N.Y. 2017) (citing *Rent-A-Ctr.*, 561 U.S. at 70).

However, "'[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Rent-A-Ctr.*, 561 U.S. at 79.

## II.      Motion to Dismiss for Lack of Personal Jurisdiction

"[T]he plaintiff bears the burden of establishing personal jurisdiction." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks and citations omitted). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks and citations omitted).  "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks and citations omitted).  The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (internal quotation marks and citations omitted).

However, the Court "will not draw argumentative inferences in the plaintiff's favor," nor must it "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citations omitted)

## III.      Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading "need not include detailed factual allegations, but must contain

sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 71 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

When considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the incantation of the elements of a cause of action, "supported by mere conclusory statements," is not enough to show plausibility. *Id.* at 72. Instead, "[f]actual allegations must be enough to raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Last, because a Court resolving a Rule 12(b)(6) motion "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), the Court also considers documents attached to the SAC.

## DISCUSSION

Brazzano's twelve causes of action and Defendants' three dispositive motions—as well as the potential impacts of the Court's disposition on any given motion on that of the others—require the Court to endeavor to efficiently dispose of the motions in this case. The Court first considers the Parties' arguments as to Defendants' motion to compel arbitration, then as to Feher's and Read's motion to dismiss for lack of personal jurisdiction, and finally as to Defendants' motion to dismiss the SAC for failure to state a claim.

## I.    Defendants' Motion to Compel Arbitration is Denied Because the EFAA Invalidates the Arbitration Clause

The Court first turns to Defendants' motion to compel arbitration because if the Arbitration Clause is valid, then all of Brazzano's claims must be referred to an arbitrator. The

Parties dispute whether the Arbitration Clause subjects Brazzano's claims to mandatory arbitration under the FAA.  Defendants argue that Brazzano is beholden to the Arbitration Clause in the 2017 Partnership Agreement which is in turn referenced in the 2021 Letter Agreement.  Brazzano opposes this motion, relying heavily on the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), Pub. L. No. 117-90, 136 Stat. 26, *codified at* 9 U.S.C. §§ 401-02, in order to evade referral of this case to arbitration.  Brazzano argues, *inter alia*, that she did not receive a 2022 Letter Agreement (despite receiving one every year), that "infinite arbitration agreements" contravene public policy, and—most importantly for the viability of her claims—that the EFAA invalidates the Arbitration Clause.

The applicability of the EFAA is fatal even to a signed arbitration agreement, so the Court first considers whether Brazzano's claims trigger its application.  The EFAA amends the FAA as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute.

9 U.S.C. § 402(a).  A "[s]exual harassment dispute" is defined by the statute as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).  The EFAA applies to claims that accrued on or after its March 3, 2022 enactment, but it does not apply retroactively.  *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022).

Although Brazzano's April 29, 2022 termination postdates the EFAA, Defendants argue that the conduct alleged in the SAC occurred years before the EFAA was enacted and that the termination arose out of Brazzano's whistleblowing of De Palma's breach of pro bono policies

and not of any sexual harassment.  In response, Brazzano argues that her claims accrued after the EFAA was enacted because the termination was another act in furtherance of a hostile work environment in which she experienced sexual harassment.  Still, Defendants contend that a sexual harassment claim under the EFAA must be sufficiently pled such that it also survives a 12(b)(6) motion.  Weighing the allegations under this standard, Defendants argue that Brazzano has not met her burden of showing that her sexual harassment claims are plausible.

Following the EFAA's enactment, Second Circuit courts frequently employ a plausibility standard when resolving motions to compel arbitration in which a Plaintiff makes an invalidation argument.  In other words, they must decide whether a sexual harassment claim is "sufficiently pled to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 451 (S.D.N.Y. 2024), *reconsideration denied,* No. 23-CV-2879, 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024).  *See, e.g., Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 586 (S.D.N.Y. 2023) ("First, Rule 12(b)(6) is of long standing.  And the plausibility standard used to guide it, which dates to *Twombly* (2007) and *Iqbal* (2009), is as familiar a standard as any used in modern case law"); *Singh v. Meetup LLC* ("*Singh I*"), No. 23-CV-9502, 2024 WL 3904799, at *2 (S.D.N.Y. Aug. 22, 2024) ("The four other EFAA cases decided by judges in this District thus far have applied a 'plausibility' standard for plaintiffs alleging conduct constituting sexual harassment.") (collecting cases), *reconsideration denied Singh v. Meetup LLC* ("*Singh II*"), No. 23-CV-9502, 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).

But Judge Liman's recent decision in *Diaz-Roa v. Hermes Law, P.C.* warrants further discussion here.  *Diaz-Roa v. Hermes Law, P.C.*, 24-CV-2105, 2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024).  In *Diaz-Roa*, Judge Liman grappled with the "reasoning in *Yost* that by

'enacting a statute that expressly refer[s] to allegations of violations of law, it is reasonable to infer that Congress in 2022 was aware that only viably pled (that is, plausible) allegations of sexual harassment law had the capacity to proceed past the pleading stage in federal court.'" *Id.* at *15 (quoting *Yost*, 657 F. Supp. 3d at 585). Judge Liman's view is that the EFAA "speak[s] to 'allegations,' *i.e.* the content of a pleading, and not to the conclusion that those allegations plausibly state a claim for relief if the pleading is challenged under Rule 12(b)(6)." *Id.* Indeed, Judge Liman reasons that "[t]he fact that Congress, which is presumed to legislate against the backdrop of established law, chose not to include a requirement in the EFAA that the complaint state a claim for relief (language Congress used in other statutes) suggests that Congress did not intend for the courts on their own authority to impose such a requirement before a plaintiff was relieved of the obligation to proceed by way of forced arbitration." *Id.* (citing *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233–34 (2020)).

 The Court instructed the Parties to brief the applicability of Judge Liman's view to the instant case. Brazzano agrees with Judge Liman's "[rejection of] the improper imposition of artificial plausibility pleading requirements in the statutory application of the [EFAA]" and cites out-of-circuit cases adopting his view. ECF No. 73 at 1, 3–4. Meanwhile, Defendants argue that "*Yost* and its progeny offer the more persuasive interpretation of the EFAA. . . . [and] applying a different standard than plausibility would lead to the absurd result that a plaintiff including a non-plausible (and subsequently dismissed) sexual harassment claim with her other claims would avoid arbitration as to her other claims, yet a plaintiff who pled the exact same conduct except omitted the non-plausible sexual harassment claim would be required to arbitrate those other claims." ECF No. 74 at 2.

But the question of whether the predominant view or Judge Liman's less stringent threshold is correct is irrelevant here:  at least one of Brazzano's sexual harassment claims are plausible under *Twombly* and *Iqbal*.  Indeed, under the predominant view, the EFAA could apply upon a finding that Brazzano's other claims accrued with the April 29, 2022 termination, but Brazzano must first show that at least one of her sexual harassment claims—which she brought under the New York City Human Rights Law ("NYCHRL"), the New York State Human Rights Law ("NYSHRL"), and Title VII of the Civil Rights Act of 1964—is plausible for the purposes of disposing of this motion to compel arbitration.  The Court thus considers whether Brazzano plausibly pleaded sexual harassment under the NYCHRL because its "standards of liability are lower than, or equal to, those of the NYSHRL" and are in turn much less demanding than the standards under Title VII. [2]  *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 552 (S.D.N.Y. 2023).

To plausibly state a claim for sexual harassment under the NYCHRL, "a plaintiff need only simply allege facts showing that she was subject to 'unwanted gender-based conduct.'"  *Id.* at 553 (cleaned up) (citing *McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020)).  To that end, a plaintiff "need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *McHenry*, 510 F. Supp at 66. (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  Although "district courts must be mindful that the NYCHRL is not a general civility code," *McHenry*, 510 F. Supp 3d at 66 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 79 (1st Dep't 2009)), the NYCHRL should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."

---

[2] "State law" under the EFAA also includes the laws of state subdivisions such as the NYCHRL.  *See Johnson v. Everyrealm, Inc*., 657 F.Supp.3d 535, 552 n.14 (S.D.N.Y. Feb. 24, 2023).

*Johnson*, 657 F. Supp 3d at 553 (citing *Caravantes v. 53rd St. Partners, LLC*, No. 09-CV-7821, 2012 WL 3631276, at *13 (S.D.N.Y. Aug. 23, 2012)).

Brazzano's key allegation is that De Palma told her while she was alone with him in his office that "judges know lawyers who provide legal services are working on a *pro bono* basis, and it's like getting jerked off by a judge." *See* SAC ¶¶ 190–97. De Palma's remark is lewd, refers to a sexual act, and was made when Brazzano was alone with De Palma in his office. In determining the plausibility of her claim at this stage, the Court can reasonably construe such conduct as "unwanted gender-based conduct." *McHenry*, 510 F. Supp. 3d at 66.

Moreover, the Second Circuit has held that "sexual harassment" under the NYCHRL can be pleaded as either quid pro quo harassment or the creation of a "hostile work environment." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 91–92 (2d Cir. 2024); *see also Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 181–82 (S.D.N.Y. 2023) (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998)). Indeed, Brazzano pleads that "she was subjected to an objectively hostile and abusive work environment and that she was treated less well than Plaintiff's male colleagues by De Palma for more than a decade, that De Palma singled Plaintiff out because of her gender (because [Brazzano] would not subordinate herself to De Palma's misogynistic values) and rallied his discriminatory efforts against her." SAC ¶ 187. Therefore, the Court can consider whether Brazzano was subjected to sexual harassment by De Palma in the form of a hostile work environment. *See Singh I*, 2024 WL 3904799, at *4.

Still, Brazzano must plausibly allege a connection between De Palma's sexual harassment and Brazzano's April 29, 2022 termination, a linkage necessary for Brazzano to avail herself of the EFAA. Defendants argue that Brazzano was terminated for whistleblowing against De Palma's flouting of Thompson Hine's pro bono policies, arguing that "[holding] otherwise

would dramatically expand the potential scope of the EFAA and frustrate the legislation's clear intention not to negate arbitration agreements based on years-old sexual harassment allegations." ECF No. 52 at 12.

"Hostile work environment claims are different in kind from discrete acts . . . [s]uch claims are based on the cumulative effect of individual acts[,]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The Second Circuit held recently that the EFAA applied to a plaintiff's claims for a hostile work environment where post-EFAA retaliation "[resulted] from a report of sexual harassment" that predated the statute's enactment because the retaliation "[was] 'relat[ed] to conduct that is alleged to constitute sexual harassment.'"*Olivieri*, 112 F.4th at 92 (citing 9 U.S.C. § 401(4); *Johnson*, 657 F. Supp. 3d at 551 n.13, 559 (reaching same conclusion)).

Similarly here, the Court concludes that there is a plausible connection between Brazzano's termination and the hostile work environment predicated on sex discrimination and sexual harassment. It is true that Brazzano states that her termination "aligns with [her] complaints regarding [De Palma's] dubious fraud on the firm in his fake *pro bono* case, just a week before [she] was terminated." SAC ¶ 467 However, she also pleads that "[De Palma] specifically and intentionally retaliates against any female attorney (including [Brazzano]) who did not embrace his misogynistic culture or agree to his sexist submissive behavior by engaging in a campaign to end their employment, by freezing them out of billable litigation firm work, his pattern is unmistakenly pervasive." *Id.* ¶ 224. Even if the last triggering event was Brazzano's the *pro bono* audit focused on De Palma, it is reasonable to infer that her termination was part of the hostile work environment allegedly fostered by De Palma.

At this stage, the Court concludes that Brazzano has sufficiently alleged a hostile work environment claim that avails her of the EFAA. The Court thereby concludes that any applicable arbitration agreement is unenforceable and denies the Defendants' motion to compel arbitration.

## II.    Brazzano Has Established Specific Jurisdiction as to Some Claims Against Feher and Read

Each surviving claim as to Feher and Read could still be dismissed if Brazzano cannot establish personal jurisdiction for each of those claims. *See Sunward Elecs., Inc v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (holding that a plaintiff must establish the court's jurisdiction with respect to each claim asserted). Under the New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") § 301, a defendant is only subject to general jurisdiction if they are "domiciled in New York, served with process in New York, or continuously and systematically does business in New York." *Giuliano v. Barch*, No. 16-CV-0859, 2017 WL 1234042, at *4 (S.D.N.Y. Mar. 31, 2017). However, a New York court may exercise personal jurisdiction over an out-of-state defendant if "New York law would confer upon its courts the jurisdiction to reach the defendant" and, so finding, if "extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2003).

To establish personal jurisdiction over a foreign defendant under New York law, a plaintiff must "demonstrate either that the defendant was 'present' and 'doing business' in New York within the meaning of [N.Y. C.P.L.R.] § 301, or that the defendant committed acts within the scope of New York's long-arm statute, [N.Y. C.P.L.R.] § 302." *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010). As a threshold matter, Brazzano does not respond to the argument that the Court lacks general jurisdiction over Read and Feher. Rather,

her position appears to be that the Court can exercise specific jurisdiction due to their contacts with New York.

Indeed, New York law permits a court to exercise specific personal jurisdiction over a nondomiciliary if a party (1) transacts business in New York, (2) commits a tortious act (except defamation) in New York, (3) commits a tortious act (except defamation) outside of New York that causes injury within New York, or (4) owns, uses, or possesses real property in New York. *See* N.Y. C.P.L.R. § 302(a)). A cause of action against that party must "aris[e] from" the aforementioned acts. *See id.*

It is axiomatic that N.Y. C.P.L.R. § 302 provides only specific jurisdiction over a nondomiciliary defendant arising out of particular acts. *See Roe v. Arnold*, 502 F.Supp.2d 346, 350 (E.D.N.Y. 2007). Therefore, for the Court to find specific jurisdiction, Brazzano must allege that her specific causes of action arise from Feher's and Read's acts as specified in N.Y. C.P.L.R. § 302. For the avoidance of doubt, the analyses in the subsections below are for jurisdictional purposes only. The Court addresses the plausibility of each stated claim in the next section.

### a. The Court Has Specific Jurisdiction Over All Claims Against Feher

Feher argues that the claims against him "arise[] from a single factual allegation: that [he] authored Thompson Hine's allegedly defamatory response to Plaintiff's EEOC Charge." ECF No. 55 at 12. Brazzano brings claims against Feher for (1) employment retaliation and aiding and abetting under New York state and local law; (2) abuse of process; and (3) defamation.

Applying C.P.L.R. § 302(a)(1), "New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state" and claims on this basis

require "something more" to be actionable.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248–

49 (2d Cir. 2007).  But New York courts have found that this "something more" can include the

drafting of a defamatory letter and its distribution (or authorization of the distribution) in the

state.  *See Sovik v. Healing Network*, 244 A.D.2d 985 (4th Dep't 1997).  Here, where Brazzano

has put forth sufficient allegations that Feher drafted the EEOC Charge response and sent it to

New York, she has made a prima facie showing that the Court has specific jurisdiction over the

defamation claim.  Additionally, because the remaining claims against Feher arise from the same

act, the Court also has specific jurisdiction over them.

### b.  The Court Has Specific Jurisdiction Over Some Claims Against Read

Read argues that the claims against her "are primarily focused on what Plaintiff contends

Ms. Read *failed* to do; the SAC does not identify almost anything Ms. Read actually *did* in New

York (or anywhere else).  ECF No. 55 at 15 (emphasis in original).  Brazzano brings claims

against Read for (1) employment retaliation and aiding and abetting under New York state and

local law; (2) abuse of process; and (3) NIED.

For the same reasons that the Court accepted jurisdiction over the abuse of process claim

as to Feher, the Court accepts jurisdiction over the same claim as to Read because Brazzano

alleged that Read endorsed the EEOC Response, which was sent to New York.  *See* SAC ¶ 635.

Moreover, the Court also has jurisdiction over the post-employment retaliation claims, to the

extent they are limited to Read's endorsement of the EEOC Response, and claims regarding

Read's failure to act despite knowing about the hostile work environment faced by Brazzano.

With respect to the NIED claim, the Court notes Read's argument that (1) Read was not

physically present in New York when she called Brazzano on April 29, 2022 to terminate

Brazzano and (2) Brazzano was not in New York when she received the call.  ECF No. 55 at 16.

Plaintiff contends that Read traveled to New York during the week of April 25, 2022 with the intent to fire Plaintiff, but the act did not occur during Read's earlier travel to New York. *See* SAC ¶ 60. NIED—a tort—therefore could not have been brought under the strictures of either § 302(a)(2) or (3). Similarly, under § 302(a)(1), business was transacted in Ohio and Florida, not New York. Therefore, the Court cannot hold jurisdiction over the NIED claim as to Read and thus dismisses the claim.

### III. Some of Brazzano's Remaining Claims Survive

Having determined jurisdiction for certain claims alleged by Brazzano, the Court now turns to whether Brazzano has adequately alleged them. For clarity, the Court adopts a chart similar to the chart Defendants included in their brief.

| Claim Category | Count(s) | Defendant(s) |
|---|---|---|
| Hostile Work Environment/Sexual Harassment | 1, 2, 11 | De Palma and Thompson Hine under the NYSHRL and NYCHRL; Thompson Hine only under Title VII |
| Sex Discrimination | 2, 11 | De Palma and Thompson Hine under the NYSHRL and NYCHRL; Thompson Hine only under Title VII |
| Defamation | 8 | Feher and Thompson Hine under NY common law |
| Abuse of Process | 9 | Read, Feher, and Thompson Hine under NY common law |
| Retaliation | 5, 6, 7, 12 | All Defendants under the NYSHRL, NYCHRL, and NYLL Section 40; Thompson Hine only under Title VII |
| Aiding and Abetting | 3, 4 | All Defendants for aiding and abetting violations of the NYCHRL and the NYSHRL |
| NIED | 10 | Thompson Hine (the Court has no jurisdiction over the NIED claim as to Read) under NY common law |

*See* ECF No. 57 at 5.  The Court considers in turn each category of claims in the SAC and whether Brazzano has adequately alleged each claim against each Defendant.

> ### a.  Brazzano's Sexual Harassment and Hostile Work Environment Claims Survive

Defendants argue that under any standard—Title VII, the NYSHRL, or the NYCHRL—Brazzano's sexual harassment and hostile work environment claims fail.  In considering Defendants' motion to compel arbitration, the Court previously analyzed whether Brazzano plausibly stated a claim for sexual harassment and a hostile work environment under the NYCHRL.  The Court concluded that she had done so and now readopts its position here as to De Palma.  It also concludes that Brazzano has adequately alleged her NYCHRL claims against Thompson Hine given that the claims center on Brazzano's employment at Thompson Hine.

As for sexual harassment and hostile work environment claims under the NYSHRL, Brazzano must plead that she was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories." *Mitura*, 712 F. Supp. at 453.  Brazzano alleged "she was subjected to an objectively hostile and abusive work environment and that she was treated less well than Plaintiff's male colleagues by De Palma for more than a decade, that De Palma singled Plaintiff out because of her gender (because [Brazzano] would not subordinate herself to De Palma's misogynistic values) and rallied his discriminatory efforts against her."  SAC ¶ 187.  The Court concludes that, under those facts, the NYSHRL claims survive as to both De Palma and Thompson Hine.

As for Thompson Hine's Title VII liability, Brazzano must allege that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted).  Here, the Court similarly concludes that Brazzano adequately pleaded

years-long treatment and a hostile work environment fostered by De Palma in his employment by

Thompson Hine.  Therefore, all of the sexual harassment and hostile work environment claims

survive.

### b.  Brazzano's Sex Discrimination Claims Survive

As to sex discrimination, the NYSHRL and NYCHRL set forth that "[i]t shall be an

unlawful discriminatory practice . . . [f]or an employer" to discriminate against an individual

because of their sex or gender.  *See* N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-

107(1)(a)(3).  To survive a motion to dismiss a NYCHRL discrimination claim, a plaintiff must

plead that "she was treated . . . less well, at least in part for a discriminatory reason."  *Verne v.*

*New York City Dep't of Educ.*, No. 21-CV-5427, 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30,

2022).  The same analysis undergirding the Court's determinations as to sexual harassment under

the NYCHRL applies to sex discrimination under the NYCHRL.

In 2019, the NYSHRL was amended "to direct courts to construe the NYSHRL, like the

NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of

whether federal civil rights laws including those laws with provisions worded comparably to the

provisions of [the NYSHRL] have been so construed.'"  *Nezaj v. PS450 Bar & Rest.*, 719 F.

Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (quoting N.Y. Exec. Law § 300).  "[I]t is as of yet unclear

whether these two standards are co-extensive, or whether the NYSHRL requires something in

between federal and local law for discrimination claims."  *Id.* (citation omitted).

Courts have nonetheless "'assume[d]' for purposes of a Rule 12(b)(6) motion 'that the

amended NYSHRL aligns with the NYCHRL.'"  *Kulick v. Gordon Prop. Grp., LLC*, No. 23-CV-

9928, 2025 WL 448333, at *8 (S.D.N.Y. Feb. 7, 2025) (citing *Wright v. City of New York*, No.

23-CV-3149, 2024 WL 3952722, at *6 (S.D.N.Y. Aug. 27, 2024)).  Under the post-amendment

NYSHRL standard, Brazzano's claim also survives, so the Court also declines to dismiss the NYSHRL sex discrimination claims against De Palma and Thompson Hine.

As to Title VII, which makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[,]" 42 U.S.C. § 2000e-2(a)(1), Brazzano must show that "that [i] the employer took adverse action against [her] and [ii] [her] sex] was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).. A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* For similar reasons explained earlier in this opinion, the Court concludes that Brazzano has also plausibly stated a Title VII sex discrimination claim against Thompson Hine.

### c. Brazzano's Defamation Claims Fail

The basis of Brazzano's defamation claims is the EEOC Response. Under New York law, to state a claim for defamation, a plaintiff must allege: "(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). However, "in order to encourage open communication both in the judicial process and in quasi-judicial proceedings (such as those before the EEOC), any statements made during such proceedings become privileged and will not support a defamation claim." *Farzan v. Wells Fargo Bank*, No. 12-CV-1217, 2013 WL 474346, at *4 (S.D.N.Y. Jan. 25, 2013) (citing *Hinds v. Magna Fabrics, Inc.*, No. 96-cv-1383 (DC), 1997 WL 309378, at *5 (S.D.N.Y. June 9, 1997)), *report and recommendation adopted sub nom. Farzan v.*

*Wells Fargo Bank*, N.A., No. 12-CV-1217, 2013 WL 2641643 (S.D.N.Y. June 11, 2013)).  As such, Brazzano's defamation claim fails.  Moreover, because Brazzano's claims against Feher are all based on his involvement with the EEOC Response, all claims against Feher fail.

### d.  Brazzano's Abuse of Process Claims Fail

Under New York law, the "submission of a position statement to the EEOC does not establish a sufficient basis for a claim."  *See Chavez v. Suburban Bus Transportation*, No. 12-CV-2371, 2014 WL 12843902, at *1 (E.D.N.Y. May 19, 2014).  Brazzano's abuse of process claims—which are predicated on the allegedly defamatory EEOC Response—also fail.

### e.  Some of Brazzano's Retaliation Claims Survive

Defendants argue that "Brazzano still fails to allege that her gender played any role, no matter how insignificant, in the Firm's employment actions."  ECF No. 57 at 13–14.  As a threshold matter, Defendants did not brief Brazzano's claims under NYLL Section 740, so those claims proceed.

As to Brazzano's other retaliation claims, the Court begins with a Title VII analysis, which sets a bar more stringent than that of the NYSHRL and NYCHRL.  To demonstrate a prima facie federal case of retaliation, a plaintiff must establish:  "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).  Previously in this opinion, the Court credited Brazzano's allegation that her decades-long harassment at the law firm was connected to her eventual termination.  Therefore, the Court reapplies its conclusions to Brazzano's retaliatory termination claims and sustains the claims under NYLL Section 740, the

NYSHRL, and the NYCHRL against Thompson Hine, De Palma, and Read.  It also sustains the Title VII against Thompson Hine.

However, having dismissed the abuse of process and defamation claims, the Court dismisses the retaliation claims as to all Defendants to the extent they deal with post-employment actions.

### f.  Some of Brazzano's Aiding and Abetting Claims Survive

As for the remaining aiding and abetting claims against Thompson Hine, De Palma, and Read, the NYSHRL permits an employee to be held liable for aiding and abetting a liable employer.  *See, e.g., Baptiste v. City Univ. of N.Y.*, No. 22-CV-2785, 680 F.Supp.3d 415 (S.D.N.Y. June 29, 2023) ("[Individual defendants] can be held liable under the state statute only on an aider-and-abettor theory."); *Bueno v. Eurostars Hotel Co., S.L.*, No. 21-CV-535, 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct.").

Here, Brazzano brings aiding and abetting claims in relation to unlawful employment practices, discrimination, sexual harassment, and retaliation.  SAC ¶ 569.  The Court readopts its conclusions as to these claims against De Palma or Thompson Hine in light of its prior conclusions.  As to Read, the Court concludes that Brazzano has stated claims for aiding and abetting sexual harassment and discrimination because Brazzano alleged Read allowed the harassing work environment to continue.  *See* SAC ¶ 226.  The aiding and abetting in retaliation claim against Read also stands, except to the extent it deals with post-employment actions.

Because the NYCHRL standard is either less stringent, or coextensive with, the NYSHRL standard, the Court renders the same conclusions with respect to the NYSHRL aiding and abetting claims.

### g. Brazzano's NIED Claim Fails

Last, having declined jurisdiction over Brazzano's NIED claim as to Read, the Court considers Brazzano's sole NIED claim against Thompson Hine. "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021); see also *Lea v. McNulty*, 227 A.D.3d 971, 973, 212 N.Y.S.3d 152, 156 (2d Dep't 2024) ("A cause of action to recover damages for negligent infliction of emotional distress generally must be premised upon the breach of a duty owed to [the] plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety"). The facts do not support a conclusion that Thompson Hine committed any infliction of emotional distress, so this claim is dismissed.

## CONCLUSION

For the reasons set forth by the Court, Defendants' motion to compel arbitration is hereby **DENIED,** Defendants Feher and Read's motion to dismiss the SAC for lack of personal jurisdiction is **DENIED** in part and **GRANTED** in part as to the NIED claim against Read, and Defendants' motion to dismiss the SAC for failure to state a claim is **DENIED** in part and **GRANTED** in part. The remaining claims are:

| Claim Category | Count(s) | Defendant(s) |
|---|---|---|
| Hostile Work Environment/Sexual Harassment | 1, 2, 11 | De Palma and Thompson Hine under the NYSHRL and NYCHRL; Thompson Hine only under Title VII |
| Sex Discrimination | 2, 11 | De Palma and Thompson Hine under the NYSHRL and NYCHRL; Thompson Hine only under Title VII |
| Retaliation (not including post-employment retaliation) | 5, 6, 7, 12 | De Palma, Read, and Thompson Hine under the NYSHRL, NYCHRL, and NYLL Section 40; Thompson Hine only under Title VII |
| Aiding and Abetting (not including post-employment retaliation) | 3, 4 | De Palma, Read, and Thompson Hine for aiding and abetting violations of the NYCHRL and the NYSHRL |

Further, the Court **GRANTS** Brazzano leave to file a Third Amended Complaint curing the deficiencies laid out in this opinion.  If she wishes to file, Brazzano must file the Third Amended Complaint in thirty (30) days.  The Clerk of Court is respectfully directed to terminate ECF Nos. 51, 54, 56.

**SO ORDERED.**

Dated: March 31, 2025
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**